ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRAIG M. HOWARD                     :
                                    :
    **Plaintiff,**                  :
                                    :       **Case No. 1:CV-01-0797**
    v.                              :       **(Judge Yvette Kane)**
                                    :
LIBERTY LIFE ASSURANCE             :                              **FILED**
COMPANY OF BOSTON,                 :                         HARRISBURG. PA
LIBERTY MUTUAL GROUP               :
                                    :                          JUN 1 9 2002
    **Defendant.**                  :
                                    :                    MARY E. D'ANDREA, CLERK
_____ :                    Per _____

### PRETRIAL MEMORANDUM OF DEFENDANTS

Date conference was held by counsel:        June 17, 2002

A.     **A brief statement as to federal court jurisdiction.**

The Court's jurisdiction is based upon the provisions of the Employee Retirement Income Security

Act of 1974, 29 U.S.C. § 1001 et. seq. ("ERISA")

B.     **A summary statement of facts and contentions as to liability.**

Defendant's statement and contentions:

1)     Defendant Liberty Mutual Group is not an entity which is subject to suit. It is a name used

by a number of companies, including Liberty Life Assurance Company of Boston.

2)     Liberty Life Assurance Company of Boston ("Liberty Life") is an insurance carrier which

Provided a Long Term Disability Policy to the Geisinger Health System.

3)     Craig M. Howard was an employee of Geisinger Health System.

4)     On May 5, 2000, Mr. Howard made a claim upon the policy issued by Liberty Life.

5)     Liberty Life carefully considered Mr. Howard's claim and all medical documentation

submitted in support of it.

6)     The reports provided by Steven K. Powers, M.D., the Plaintiff's treating physician, initially

indicated that Mr. Howard had recovered from surgery and that he would be capable of returning to work on a part-time basis on March 6, 2000 and that he could return to work on a full-time basis on March 27, 2000.

7)    A subsequent report from the doctor indicated that it was the doctor's opinion that Mr. Howard was disabled from any type of work activity.

8)    As a result of this discrepancy, Liberty Life requested a Functional Capacity Evaluation and a pharmacy check.

9)    Mr. Howard initially stated that no Functional Capacity Evaluation would be needed as he had undergone such an evaluation and he would provide a report of it.

10)    After numerous requests, this report was not provided and a Functional Capacity Evaluation took place during November of 2000.

11)    As a result of the Functional Capacity Evaluation, it was determined that Mr. Howard was capable of working in a sedentary or light capacity.

12)    A copy of this Function Capacity Evaluation report was sent to Dr. Powers and attempts were made to discuss it with him.  Dr. Powers never responded to these requests.

13)    Liberty Life determined that Mr. Howard did not meet the definition of disability from his own occupation set forth in the policy issued by Liberty Life and it therefore denied his claim for benefits.

14)    Mr. Howard appealed this denial and the denial was upheld.

15)    The appropriate standard of review of a decision by a claims administrator to deny benefits is to determined by referring to the language of the Plan itself.  Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 109 S. Ct. 948 (1989)

16)    The Plan pursuant to which this claim was made included the following language: "We shall possess the authority, in our sole discretion, to construe the terms of this Plan and to determine benefit eligibility hereunder.  Our decision regarding construction of the terms of this Plan and benefit eligibility

shall be conclusive and binding. "We" as used in this policy refers to Liberty Life Assurance Company of Boston

17)    Based upon the aforementioned language of this policy, Liberty Life was provided the express discretionary authority to determine a participant's entitlement to benefits.

18)    In Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377 (3rd Cir. 2000), the Court adopted "sliding scale" approach which could require a heightened arbitrary and capricious standard where the insurance carrier both insures the Plan and administers benefits under it.

19)    The application of the Pinto "sliding scale" requires proof that the alleged conflict of interest of the administrator affected its decision-making process.

20)    There is no evidence that the decisions made in the handling of the claim were affected by the alleged conflict of interest.  To the contrary, this file indicates that the carrier fairly and objectively evaluated this claim.

21)    The decision of Liberty Life is entitled to a high degree of deference and it is submitted that it should be affirmed by this Court.

C.    **Comprehensive statement of undisputed facts:**

1)    Craig M. Howard is an adult individual who resides at 25 South Lingle Avenue, Palmyra, Lebanon County, Pennsylvania.

2)    Liberty Life Assurance Company of Boston is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02117.

3)    Liberty Life regularly conducts business in Dauphin County.

4)    Liberty Life sells Group Long Term Disability Insurance in the Commonwealth of Pennsylvania.

5)    This action arises under the Employee Retirement Income Security Act of 1974, as amended

("ERISA")

6)     A Plan identified as the "Geisinger Health System Welfare Plan" was in existence

on August 1, 1998.

7)     Policy Number GF3-810-252761-01 was issued by Liberty Life.  This policy provided

certain disability coverages for individuals met the definition of disability set forth in the policy.

8)     This policy provided as follows with regard to the definition of disability.  "disability" or

"disabled" means     i.) if you are eligible for the 24 month own occupation benefit, "disability" or

"disabled"  means during the Elimination Period and the next 24 months Disability you are unable to

perform all of the material and substantial duties of your occupation on an active employment basis

because of an injury or sickness; ...

9)     Plaintiff has made a claim for disability benefits, asserting that he last worked on January 2

2000.

10)     The Elimination Period for persons entitled to disability benefits in accordance

with the terms of the Plan Certificate of Coverage is 180 days.

11)      The policy issued by Liberty Life stated as follows with regard to the amount of insurance

Benefits available:

- Plan 3:  66 2/3% (Benefit Percentage) of Basic Monthly Earnings not to exceed a

Maximum Monthly Benefit of  ($15,000.00) less your benefits from other income as outlined in Section 4

Section 4 of the policy states as follows:

**Benefits from Other Income:**

What Are Your Benefits From Other Income?

Your Benefits from Other Income means those benefits shown below: ...

The amount of Disability and/or Retirement Benefits under the United States Social Security

Act...

12)    Beginning in August of 2000, Mr. Howard has received social security benefits in the amount of $1,024.00 per month.

**D.    A Brief description of damages, including, where applicable:**

1)    Defendant contends that Plaintiff does not meet the definition of disability set forth in the applicable policy and that he is not entitled to benefits under that policy.

2)    Alternatively, if the Court finds that Mr. Howard is entitled to benefits, Liberty Life is entitled to an offset from those benefits in the amount of $1,024.00 per month.

3)    Plaintiff alleges that his monthly salary was $2,266.33.  The maximum benefit which would be applicable, assuming that salary to be accurate, is $1,510.96.

4)    If the Court finds that Mr. Howard is entitled to the maximum gross benefit under this policy of $1,510.96, that benefit should be offset by the applicable amount of social security and the remaining benefit would therefore be in the amount of $486.96 per month.  If the Court finds that Mr. Howard is entitled to damages, the Court should award benefits only up to February 28, 2001 the date when this claim was denied.

5)  If the Court finds that Mr. Howard is entitled to benefits, it may not award future benefits but it Is submitted that it should remand the case to Liberty Life for further handling in accordance with the terms of the applicable policy.

**E. Witnesses**

Liberty Life may call a witness to authenticate documents, if stipulations cannot be reached regarding authenticity of those documents.  Liberty Life does not intend to call witnesses regarding the claim decision reached in this case as it contends that the only evidence that should re received regarding that issue is set forth in the claim file, Plan documents and other documents identified as Exhibits. If the Plaintiff is permitted to call

any of the witnesses referred to his PreTrial Memorandum, however, it may also call those

witnesses.

F.    **Summary of testimony of each expert witness**.

No expert witnesses have been identified as of the present time.

G.    **Special comment about pleadings and discovery, including depositions and the exchange of medical reports:**

None at this time.

H.    **A summary of legal issues involved and legal authorities relied upon.**

1)    Applicable legal issues relate to the scope of review of the decision of Liberty Life.  Liberty

Life relies upon the decisions of the Court in Firestone v. Bruch, 489 U.S. 101, 109 S. Ct. 948 (1989)

and Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377 (3rd Cir. 2000) and cases which

have interpreted those opinions.

2)    Plaintiff has raised an issue regarding the applicability of the Social Security offset.

Defendant relies upon the language of ERISA, the applicable policy language in support of this offset.

Section 1054 of ERISA (29 U.S.C.A. §1054) clearly allows for benefits payable to a plan participant

pursuant to ERISA may be offset by social security benefits received by the participant.  This section states,

inter alia, as follows:

(a) Satisfaction of requirements by pension plans

Each pension plan shall satisfy the requirements of subsection (b)(3) of this section,
and—
 (1) in the case of a defined benefit plan, shall satisfy the requirements of subsection
(b)(1) of this section; and
 (2) in the case of a defined contribution plan, shall satisfy the requirements of
subsection (b)(2) of this section.
(b) Enumeration of plan requirements

 (1)(A) A defined benefit plan satisfies the requirements of this paragraph if the
accrued benefit to which each participant is entitled upon his separation from the
service is not less than—
 (i) 3 percent of the normal retirement benefit to which he would be entitled at the
normal retirement age if he commenced participation at the earliest possible entry

age under the plan and served continuously until the earlier of age 65 or the normal
retirement age specified under the plan, multiplied by
(ii) the number of years (not in excess of 33 1/3 ) of his participation in the plan.

In the case of a plan providing retirement benefits based on compensation during any
period, the normal retirement benefit to which a participant would be entitled shall
be determined as if he continued to earn annually the average rate of compensation
which he earned during consecutive years of service, not in excess of 10, for which
his compensation was the highest. For purposes of this subparagraph, social security
benefits and all other relevant factors used to compute benefits shall be treated as
remaining constant as of the current year for all years after such current year.

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular
plan year if under the plan the accrued benefit payable at the normal retirement age is
equal to the normal retirement benefit and the annual rate at which any individual
who is or could be a participant can accrue the retirement benefits payable at normal
retirement age under the plan for any later plan year is not more than 133 1/3 percent
of the annual rate at which he can accrue benefits for any plan year beginning on or
after such particular plan year and before such later plan year. For purposes of this
subparagraph--
(iv) social security benefits and all other relevant factors used to compute benefits
shall be treated as remaining constant as of the current year for all years after the
current year.

29 U.S.C.A. §1054.[1]

In the case of Buczynski v. General Motors Corp., 616 F.2d 1238 (3rd Cir. 1980), aff'd, 415 U.S.

504, 101 S.Ct. 1895 (1981), the Third Circuit addressed the issue of whether benefits payable pursuant to

ERISA may be offset by the amount of worker's compensation benefits received by a plan participant.[2] In

addressing this issue, the Court stated in dicta that benefits payable pursuant to ERISA may be offset by

social security benefits received by a plan participant.

The Court stated, inter alia, as follows:

> That provision was the offset of Social Security benefits against pension
> benefits. In its interpretation of the clause excerpted above from 26 U.S.C.
> §401(a)(5), the IRS had long permitted pension plans to offset pension

---

[1] See Holliday v. Xerox Corporation, 732 F.2d 548, 551 (6th Cir. 1984) (stating "Erisa itself establishes that it is permissible for a pension plan to provide for the offset of social security benefits. See 29 U.S.C. 1054(b)(1)(B)(iv)(1976)").

[2] The Court held that such benefits may be offset by worker's compensation benefits. See also Leheny v. City of Pittsburgh, 183 F.3d 220 (3rd Cir. 1999).

benefits by the amount of Social Security benefits that a plan participant received. The first such regulation was issued in 1943, and it simply reiterated the statutory language quoted above. The current version of this regulation, issued in 1960, provides as follows:

> (b) A plan . . . under which the contributions or benefits differ because of any retirement benefit created under State or Federal law, will not be discriminatory because of such exclusion or difference, provided the total benefits resulting under the plan and under such law establish an integrated and correlated retirement system satisfying the tests of section 401(a).

26 C.F.R. §1.401-4(b)(1979).[3]

> The parties do not dispute that this regulation permits offset of pension benefits by the amount of Social Security benefits received.

Id. at 1244.[4]

In the present matter, it is clear that any benefits allegedly due to Plaintiff pursuant to ERISA may be offset by any social security benefits received by Plaintiff.

I.      **Stipulations desired.**

None other than as set forth in Section C, supra.

J.      **Estimated number of trial days.**

2

K.      **Any other matter pertinent to the case to be tried.**

Not Applicable.

L       **Pursuant to Local Rule 16.3 append to this memorandum a prenumber schedule of exhibits, with brief identification of each, on the clerk's Exhibit Form.**

See attached Exhibit Form

M.      **Append any special verdict questions which counsel desires to submit.**

---

[3] Similar language is contained in the April 2001 edition of this section of the CFR.

[4] The Court also found that, pursuant to 26 U.S.C. §401(a)(15)(1976), "Congress chose not to bar the Social Security offset entirely but merely to prohibit increases in the amount of the offset based on increases in the amount of the Social Security benefits." Buczynski, 616 F.2d at 1246.

Not Applicable.

**N.** **Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2**

The person or committee with settlement authority has been notified of the requirements of

and possible sanctions under Local Rule 16.2

**O.** **Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.**

Counsel have met. No depositions have been taken and no videotapes have been prepared in

connection with this matter.

**P.** **In all trials without a jury, requests for findings of both fact and law shall be submitted with this Memorandum as required under Locual Rule 48.2**

Requests for Findings of Fact and Conclusions of Law are being submitted with this

Memorandum.

Respectfully Submitted,

**KELLY, McLAUGHLIN , FOSTER**
**BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By:_____
      William C. Foster, Esquire
      Identification No. 03511
      Attorneys for Defendant
      Liberty Life Assurance Company
      of Boston

# LIST OF EXHIBITS

**CASE CAPTION:** Howard v. Liberty Life Assurance Company
of Boston, Liberty Mutual Group
**MIDDLE DISTRICT OF PENNSYLVANIA**

**CASE NUMBER:** 1:CV-01-0797

**JUDGE:** Yvette Kane

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 1 | | Claim file (Bates-Stamped 1-289 and additional documents marked a-d) | | | | |
| 2 | | Booklet entitled "Group Benefits Plan" (pp. 1-56) | | | | |
| 3 | | Letter of Social Security Administration to Craig M. Howard dated August 18, 2000 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CRAIG M. HOWARD** | : |
| | : |
| **Plaintiff,** | : |
| | :      **Case No. 1:CV-01-0797** |
| | : |
| **v.** | : |
| | : |
| **LIBERTY LIFE ASSURANCE** | : |
| **COMPANY OF BOSTON,** | : |
| **LIBERTY MUTUAL GROUP** | : |
| | : |
| **Defendant.** | : |
| | : |

## CERTIFICATE OF SERVICE

I, William C. Foster, Esquire, hereby certify that a true and correct copy of Defendant Liberty Life

Assurance Company of Boston's Pretrial Memorandum was served this 19th day of June, 20021, via U.S. Mail,

postage pre-paid, upon the following individual:

John C. Dowling, Esquire
Rhoads & Sinon, LLP
1 South Market Square
P.O. Box 1146
Harrisburg, PA  17108-1146

**KELLY, McLAUGHLIN, FOSTER,
BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: _____
     **WILLIAM C. FOSTER, ESQUIRE**
     Attorney for Defendant
     Liberty Life Assurance Company of Boston

Dated: _____