

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG M. HOWARD | : | FILED |
| Plaintiff | : | HARRISBURG, PA |
| | : | |
| v. | : CASE NO: 1:CV-01-797 | JUN 2 5 2002 |
| | : | MARY E. D'ANDREA, CLERK |
| LIBERTY LIFE ASSURANCE | : JUDGE YVETTE KANE Per_____ | |
| COMPANY OF BOSTON, | : | Deputy Clerk |
| LIBERTY MUTUAL GROUP, | : | |
| Defendant | : JURY TRIAL DEMANDED | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Craig M. Howard, hereby submits his Proposed Findings of Fact:

1. Defendant failed in numerous and material matters to comply with its claim procedure manual as noted *inter alia* in the following references.[1]:

    a. Defendant claims that its definition of "disability" is not as strict as the definition Social Security uses for disability.

---

[1] All references are to the claims procedure manual, portions of which Defendant's counsel provided to Plaintiff's counsel under date of June 14, 2002

434986.1

Defendant admits that Plaintiff is receiving payments for total disability from Social Security and, in fact, is asserting these benefits as a set off to any of its liability.

Defendant advised Plaintiff that it would accept the Social Security's finding on his total disability. Report of this determination was forwarded to Defendant and is in its claims file. Despite this, Defendant has refused to accept the Social Security determination and, in fact, advised Plaintiff's counsel in a letter of February 28, 2001 that "these provisions are not contingent on decisions made by the Social Security Administration". (Page 15, LTD Policy) Contract overview.

b. The claim analyst responsible for ensuring or approving LTD benefits is to determine that the employee is "disabled" as defined by the policy and under the regular attendance of a physician. Plaintiff's regular treating physicians all reported that he was disabled according to the terms required in the Defendant's policy. (Page 20, LTD Policy Contract Overview).

c. The procedure manual requires that a claim should be thoroughly and completely investigated. Defendant did not follow up with Plaintiff's treating physicians as to their conclusions of total disability, did not

attempt to correlate the findings of its functional capacity therapist with the Plaintiff's work requirements and failed in many other respects to thoroughly and completely investigate the claim.

   d. None of the "red flag" indicators set forth in claimant's manual were present so as to question the validity of Plaintiff's claim.  (p.24 Claim Investigation).

   e. The employer's statement required was not obtained.  (p.25 Claim Investigation).

   f. Claimant was not asked to describe what he did at work as required by the Claim Procedure Manual.  (p.42 Claim Investigation).

   g. Claimant's physicians were not questioned along the lines required.  (p.44 Claim Investigation).

   h. No independent medical examination was requested or performed by Defendant as required in the claim's manual.  (p.50 Claim Investigation).

i. An exhaustive and expensive surveillance was made upon Plaintiff which demonstrated he was neither employed nor employable. (p.61, et seq. Claim Investigation).

j. The disability determination required by the Claim's Analysis was not done. (b10 Determine Disability).

k. No summary plan description (PD) was given to the insured as noted in Defendant's manual and as being required by ERISA. (b43 Legal/Legislative Issues).

2. Plaintiff's treating physicians informed Defendant that Plaintiff was totally disabled and unable to engage in any type of work activity.

3. Plaintiff's Neurosurgeon, Dr. Steven F. Powers, Chief of Neurosurgery at Hershey Medical Center, stated in his letter of July 24, 2000 to Plaintiff:

> "Craig has significant spinal disease which is responsible for his chronic low back pain. He is unable to sit for extended periods of time (more than five or so minutes at a stretch), and as such, is incapable of working even a clerical or sedentary type job which requires his staying at a single work station. I would consider him entirely disabled at this time from returning to any type of work activity. I do not expect his condition to improve,

and in fact, I expect it to worsen as he gets older due to the degenerative nature of his condition."

4. Defendant did not follow up with Dr. Powers.

5. The Defendant's only test of Plaintiff was a functional capacity test, which has concluded that Plaintiff's work effort "required frequent positional changes".

6. Plaintiff's employer, through Mary Kay Bednar, Chief Financial Officer, advised Defendant, under date of October 18, 2000 that such accommodations were not possible.

7. Defendant did not have Plaintiff examined by any medical physician.

8. Plaintiff did not have an independent medical examination (IME) of Plaintiff as required by its claims procedure.

9. While Defendant had a exhaustive surveillance of Plaintiff, it produced no evidence that he was employed or employable.

10. Defendant in making its determination ignored the Social Security Administration's determination that Plaintiff was totally disabled.

## CONCLUSIONS OF LAW

Plaintiff hereby requests that the Court enter the following conclusions of law:

1. Defendant did not follow the procedures detailed in its claims procedure manual for investigating and making the determination as to Plaintiff's qualifications for LTD payments.

2. Defendant relied only on a functional capacity test by a physical therapist, which, in itself, qualified Plaintiff's sedentary duties as requiring frequent positional changes.

3. Defendant never discussed the functional capacity findings with Plaintiff's employer.

4. Defendant failed to have Plaintiff examined by a physician or to have an IME conducted relying solely on a functional capacity test by a physical therapist.

5. Defendant ignored Plaintiff's employer's statement that Plaintiff could not work as indicated by the functional capacity test.

6. Defendant admittedly both funds and administers the plan.

7. The scope of review set forth in <u>Firestone Tire and Rubber v. Bruch</u>, 489 U.S. 101, 109 S.Ct. 948 (1989), as modified by <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377 (3rd Cir. 2000), requires that the Court take into account the obvious conflict of interest enjoyed by Defendant, which both funds and administers benefits.

8. The arbitrary and discretionary standard of review is hence modified by Defendant's conflict of interest and as such Defendant acted in an arbitrary and capricious manner in denying Plaintiff STD benefits.

9. The weight of the evidence demonstrates that the Plaintiff meets the definition of total disability as set forth in Defendant's policy and is entitled to benefits thereunder.

10. As admitted in Defendant's conclusions of law relating to damages, Plaintiff's monthly salary was $2,266.33 and his maximum benefits would, therefore, be $1,510.96.

11. Plaintiff's Social Security benefits of $1,024.00 per month cannot be used as an offset since Defendant, by failing to plead a setoff or otherwise so advise Plaintiff until the counsel conference of June 17, 2002, has waived this factor.

12. Plaintiff, Craig B. Howard, is entitled to benefits for total disability at the rate of $1,510.96 per month from July 3, 2000 to date, and future payments in a like amount unless and until it is determined that Mr. Howard is no longer totally disabled.

RHOADS & SINON

By: _____
John C. Dowling
One South Market Square
Twelfth Floor
P.O. Box 1146
Harrisburg, PA  17108-1146
(717) 233-5731

Attorneys for Plaintiff

Dated: June 25, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>25th</u> day of June, 2002, a true and correct copy of the foregoing "Pretrial Memorandum of Plaintiff " was served by means of U.S. First Class Mail, postage prepaid upon the following:

    William C. Foster, Esquire
    Kelly, McLaughlin & Foster, LLP
    1617 J.F.K. Boulevard, Suite 1690
    Philadelphia, PA 19103

_Cynthia L. Zaccaro_