2 Ct

**ORIGINAL**

FILED
HARRISBURG, PA

JUL 17 2002

MARY E. D'ANDREA, CL
Per ___ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG M. HOWARD, | : | |
| Plaintiff | : | Case No. 1:CV-01-797 |
| v. | : | Judge Kane |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, LIBERTY MUTUAL GROUP, | : | |
| Defendant | : | |

**PLAINTIFF'S TRIAL BRIEF**

I.  **Procedural History and Factual Stipulations**

This is an action for breach of obligations under the Employee Retirement Security Income Act of 1974, 29 U.S.C. §1000, et.seq. ("ERISA").

Although there has been limited discovery, the basic situation can be gleaned from the pleadings, Defendant's Motion in Limine and Plaintiff's Response, the Pretrial Memorandum and Suggested Findings of Fact and Conclusions of Law by both parties.

436721.1

The point at issue is the "Geisinger Health System Welfare Plan", which Plan is both funded and administered by Defendant Liberty Life and which Plan was in existence on August 1, 1998. Policy Number GF3-810-252761-01 was issued by Liberty Life. This policy provided certain disability coverages for individuals who met the definition of disability set forth in the policy.

Plaintiff, Craig M. Howard, was an employee of Geisinger Health System, and on May 5, 2000, made a claim for disability benefits under the policy issued by Liberty Life asserting that he last worked on January 2, 2000. There is an elimination period for persons entitled to disability benefits, 180 days. Thus, Mr. Howard became entitled to benefits on July 2, 2000. The Plan for which he paid a premium provides for two/thirds of his basic monthly earnings but could not exceed a maximum monthly benefit of $15,000.00. Plaintiff contends that he has been totally and continuously disabled from his own occupation or any other occupation since January 2, 2000.

The underlying issue in the case is whether Plaintiff meets the criteria of long term disability as defined in Defendant's policy, which defines disability as the inability to perform the material and substantial duties of one's occupation or any other occupation for which one is reasonably fitted.

Plaintiff contends that he is unable to perform the duties of his prior position or any other like position. He is supported by his treating physicians who have attested to his complete disability from returning to any type of work activity.

Defendant conducted no medical examination of Plaintiff but relies chiefly on a Functional Capacity Test performed by a physical therapist. This test indicated that Plaintiff could perform sedentary work with frequent positional changes. His

employer has notified Defendant that it would not be possible for a clerk, such as Mr. Howard, to remove themselves from the workspace for five or ten minutes hourly and that Mr. Howard was unable to serve in his previous position.

Plaintiff contends in summary that Defendant, by ignoring the testimony of his treatment physicians and his employer and relying on a Functional Capacity Test by a physical therapist, arbitrarily and capriciously denied the Plaintiff disability benefits too under the policy.

Defendant has admitted in its Pretrial Memorandum that "Liberty Life does not intend to call witnesses regarding the claim decision reached in this case as it contends that the only evidence that should be received regarding that issue is set forth in the claim file, Plan documents and other documents identified as Exhibits". Liberty Life has listed as its Exhibits 1) Claim file; 2) Booklet entitled "Group Benefits Plan"; and 3) Letter of Social Security Administration to Craig M. Howard dated August 18, 2002. Plaintiff has no objection to these Exhibits.

Plaintiff's contention of total disability and inability to perform his or any other occupation will be evidenced by the contents of Plaintiff's claim file, which contain, *inter alia*, letters from Plaintiff's treating physicians attesting to his total disability and inability to work, results of Defendant's Functional Capacity Test indicating that his ability to perform sedentary work is conditioned upon frequent position changes. There is a communication in Defendant's claim file from Mary K. Bednar, Chief Financial Officer at Hershey Medical Center, that such adjustments are not possible for Mr. Howard's position as a billing clerk, and that "he is unable to serve in his previous position at the Hershey Medical Center". Defendant has produced a copy of its claims

procedure manual, whose authenticity and admissibility Defendant agreed to at the Pretrial Conference on June 28, 2002. Plaintiff will call as witnesses Craig M. Howard, who will testify to numerous procedures; safeguards as called for in the claims procedure manual were not done in his case further attesting to the arbitrariness of Defendant's denial. Assuming as has been said that both the claims file and the claims procedure manual will be placed into evidence, the only other witness will be a representative of Plaintiff's employer, Mrs. Bednar.

Plaintiff is aware of Defendant's position that the focus is on the information available to Liberty Life at the time it made its decision to deny Mr. Howard disability benefits. Plaintiff's testimony will not deviate beyond this orbit.

## II.  ISSUES

    A.    What is the extent of the Court's scope of review?

    B.    Is Plaintiff disabled within the meaning of the disability provision and the Defendant's insurance policy?

    C.    Has a claim setoff for Social Security benefits received by Mr. Howard been waived by failure of the Defendant to plead this affirmative defense or otherwise asserted until the Attorney's Conference of June 17, 2002?

## III.  LEGAL ARGUMENT

    A.    SCOPE OF REVIEW

**The naked "arbitratry and capricious" standard is not applicable in this case since the defendant insurance company both funds and administers the plan**

**and thus the sliding scale modification adopted by the third circuit in <u>Pinto v. Reliance Standard Life Insurance Company</u> is applicable.**

The Supreme Court in <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L.Ed.2nd 80 (1989) decided that where the administrator has discretionary authority to determine eligibility for benefits, as in the instance case, the Court must apply the abuse of discretion standard. However, <u>Pinto v. Reliance Life Insurance Company</u>, 3rd Cir. Ct. of App. (May 31, 2000), 214 Fed. 3rd 377, clearly indicates the Court's dissatisfaction with the arbitrary and capricious standard and their awareness of its inherent unfairness. (A copy of <u>Pinto</u> is attached as Exhibit "A"). Chief Judge Becker in noting that in the insurance company- as- funder-and-administrator context, the fund from which monies are paid is the same fund from which the insurance company reaps its profits, stated

> "Following the lead of five other such courts, we hold that when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review."

Further enunciating the form of discovery permitted by <u>Pinto</u> is <u>Friess v. Reliance Standard Life Insurance</u>, 122 F.Supp.2d 566, 575 (E.D.Pa. November 29, 2000) which stated:

> "Rather, the intensity of review should increase in proportion to the intensity of the conflict. See <u>Pinto, 214 F.3d at 393</u>. The Third Circuit instructed district courts to 'consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious

- 5 -

review....'

(A copy of Friess is attached hereto as Exhibit "B").

In a Middle District's recent decision on ERISA, Davies v. The Paul Revere Life Insurance Company, No. 3:CV-99-0370, 2001 U.S. Dist. LEXIS 7940 (M.D. Pa. June 13, 2001), Chief Judge Thomas I. Vanaskie granted partial summary judgment for plaintiff, finding that the insurance company erred in finding the plaintiff was not eligible for long-term disability care. (A copy of Davies is attached hereto and marked as Exhibit "C"). Paul Revere Life denied benefits, somewhat in-part on the review of their in-house medical examiner, who determined, without ever examining plaintiff, that plaintiff did not suffer from hypertension. In reviewing the decision of Paul Revere Life, the district court began by noting that "where an administrator is burdened by a conflict of interest . . . that conflict must be weighed as a factor in determining whether there is an abuse of discretion." See id. at 19. Here, court noted a conflict existed because Paul Revere Life both determined eligibility and funded the benefits.

In its overall review, the district court noted several additional facts that it considered pertinent to its review of Paul Revere Life's decision to deny benefits to plaintiff: (1) Paul Revere Life made no attempt to speak with plaintiff's physician's who determined plaintiff should no longer work; (2) Paul Revere Life never requested plaintiff undergo an evaluation by an independent physician; and (3) Paul Revere Life primarily relied upon the recommendations of a doctor who never personally saw or examined plaintiff. See id. at *28-*30. When added up, the district court concluded that, based on the above information, Paul Revere Life abused its discretion when denying benefits to plaintiff. See id. at *42.

On the same day the Middle District decided this case, the District Court for the District of New Jersey ruled on an ERISA claim in <u>Lasser v. Reliance Standard Life Insurance Co.</u>, No. 99-4131, 2001 U.S. Dist. LEXIS 8141 (D. N.J. June 13, 2001). (See copy of <u>Lasser</u> attached hereto and marked as Exhibit "D"). As in <u>Davies</u>, the district court began its review by noting a "conflict of interest" existed with Reliance Standard because they had the authority to administer and fund benefits. Based on its understanding of <u>Pinto</u>, the district court found it was not bound to apply the "heightened arbitrary and capricious" standard but that only a "moderate degree of deference" was to be awarded to the insurance company. <u>See id.</u> at *13.

In <u>Cohen v. Standard Insurance Co.</u>, No. 00-5971, 2001 U.S. Dist. LEXIS 6604 (May 17, 2001), the District Court for the Eastern District of Pennsylvania found that an insurance company improperly denied benefits to plaintiff. (A copy of <u>Cohen</u> is attached hereto and marked as Exhibit "E").

As in the previous cases, <u>Cohen</u> began its review by citing <u>Pinto</u>, noting that when a "conflict of interest" exists, the courts of the Third Circuit should apply the "sliding scale" approach. <u>See id.</u> at *13. In assessing what standard of review to apply, the court focused on the conflict that existed, and how the conflict affected the insurer's decision to denied plaintiff benefits. Also, the court took exception with the insurer decision to rely upon the medical opinions of its own, non-treating physicians, over the doctors that had examined and evaluated plaintiff's condition. <u>See id.</u>

Thus, view the arbitrary and discretionary standards with lens tinted by Defendant's obvious self-interest. It profits by every dollar it withholds from Mr. Howard.

The following <u>uncontradicted facts</u> convincingly establish that Defendant's actions were arbitrary and an abuse of discretion particularly when viewed through the lens of clear self-interest.

1. Defendant failed in numerous and material matters to comply with its claim procedure manual as more fully noted in Plaintiff's Proposed Findings of Fact and Conclusions of Law.

2. Plaintiff's treating physicians informed Defendant that Plaintiff was totally disabled and unable to engage in any type of work activity.

3. Plaintiff's Neurosurgeon, Dr. Steven F. Powers, Chief of Neurosurgery at Hershey Medical Center, stated in his letter of July 24, 2000 to Plaintiff:

> "Craig has significant spinal disease which is responsible for his chronic low back pain. He is unable to sit for extended periods of time (more than five or so minutes at a stretch), and as such, is incapable of working even a clerical or sedentary type job which requires his staying at a single work station. I would consider him entirely disabled at this time from returning to any type of work activity. I do not expect his condition to improve, and in fact, I expect it to worsen as he gets older due to the degenerative nature of his condition."

4. Defendant did not follow up with Dr. Powers. It spent $2,100.00 in surveillance but would not spend $200.00 to have Dr. Powers comment on the Functional Capacity results.

5. The Defendant's only test of Plaintiff was a functional capacity test, which

has concluded that Plaintiff's work effort "required frequent positional changes".

6. Plaintiff's employer, through Mary K. Bednar, Chief Financial Officer, advised Defendant, under date of October 18, 2000 that such accommodations were not possible.

7. Defendant did not have Plaintiff examined by any medical physician.

8. Plaintiff did not have an independent medical examination (IME) of Plaintiff as required by its claims procedure.

9. While Defendant had a exhaustive surveillance of Plaintiff, it produced no evidence that he was employed or employable.

10. Defendant in making its determination ignored the Social Security Administration's determination that Plaintiff was totally disabled.

It is submitted that even through the clear lens of <u>Firestone</u>, Defendant's actions were capricious and an abuse of discretion.

B. CRAIG M. HOWARD'S DISABILITY

Plaintiff is unable to perform all of the material and substantial duties of his occupation or of any other occupation for which he is reasonably fitted.

Defendant's claim file, on which it relies exclusively for its denial of benefits, while unorganized and somewhat repetitious is replete with medical confirmation of Plaintiff's disability.

Extracted from Defendant's claim file and attached as Exhibits are the following:

1. Letter of October 13, 1999 from Plaintiff's treating physician, Dr. Donald E. Gelb, attesting to his permanent and complete disability. (See Exhibit "F").

2. Letter of July 24, 2000 from Dr. Stephen K. Powers, Plaintiff's surgeon, attesting to his continuing and worsening disability. (See Exhibit "G").

3. Report of May 11, 2000 from Dr. Stuart A. Hartman of the Pennsylvania Bureau of Disability Determination attesting to his qualifying disability for Social Security benefits. (See Exhibit "H").

4. Concluding comments from the Functional Capacity Test performed by Defendant and relied upon as its only contra-medical evidence, which indicates that "poor sitting tolerance…required frequent positional changes". (See Exhibit "I").

5. Communication from Mary K. Bednar of Hershey Medical Center to Defendant advising that Mr. Howard cannot perform his duties at Hershey Medical Center with the required positional changes. (See Exhibit "J").

6. Letter from Dr. Powers, dated May 5, 2000, stating that while Mr. Howard my return to work, he would have to sit and stand frequently and this does not fit in with his current job. (See Exhibit "K").

7. Note, dated 7/21/2000, from Nurse Debra Redfern stating that Mr. Howard's release for work is conditioned on the situation where he can sit and stand frequently. (See Exhibit "L").

8. Record of Conversation Memo, dated 7-25-00, from claimant advising that he has spoken with his manager and they will not allow him to return to work if they had to be flexible and change positions. (See Exhibit "M").

9. Conclusion of surveillance and bills, totaling $2,124.00. (See Exhibit "N").

10. File notation, dated 1-23-01 that Dr. (Powers) wants $250.00 for comments on the Functional Capacity Test. (See Exhibit "O"). Which fee was never paid, although it is noted that over $2,000.00 was paid for an unfruitful surveillance.

The Defendant's claim file also contains the complete operative notes from the various surgeries undergone by Mr. Howard. All of the medical evidence attests to his disability but Defendant performed no medical examination on Plaintiff, nor did it have an IME examination. It relied solely on a Functional Capacity Test which concluded that while Mr. Howard was employable in a sedentary job, it had to be one where he could change positions frequently. The file also contains various reports from the employer and the doctor said such positional changes are not possible in his job, thus nullifying its own reliance on the Functional Capacity Test. It is also interesting to note that Defendant did not want to expend $250.00 to have Dr. Powers review the Functional Capacity Test, but did not hesitate to spend over $2,000.00 on video surveillance of Mr. Howard, which surveillance did not in any way detract from the evidence of his total disability and general unemployability.

C. SOCIAL SECURITY BENEFITS SETOFF

The claim for Social Security benefits setoff was not properly pleaded and hence is waived. Belatedly, Defendant raised at the Attorney Conference on June 18, 2002 that Mr. Howard's monthly Social Security benefits would be deducted from any weekly indemnity that Liberty Life might be required to pay him. This was the first time Plaintiff was aware of Defendant's claim of setoff. The answer to the complaint

denies Plaintiff's entitlement "because he does not meet the definition of disability as set forth in the Policy".[1]

The answer to the complaint merely denies liability on the sole basis that Plaintiff does not meet the definition of disability within the policy. There is no mention of any Social Security setoff in an affirmative defense or otherwise in the complaint nor was the matter in any way referenced until the Attorney Conference of June 18, 2002.

One can only speculate as to Defendant's tactics and/or strategy in withholding this trump card until the eve of trial. Interestingly, Defendant's claim file contains a communication to Attorney Foster concerning the answer to be filed, which states that there should be an eleventh affirmative defense to the effect that "Liberty never paid benefits in this case, but we would want to offset for Social Security benefits in the event Howard is found entitle to LTD". The eleventh affirmative defense was never filed. (See correspondence dated May 12, 2001 and marked as Exhibit "P").

In any event, it is Plaintiff's position that Defendant has waived this defense. As noted in 27 Fed. Proc, L Ed. § 62:79:

> "The matters enumerated in FRCP 8(c) are illustrative rather than exhaustive; any other, unlisted matter constituting an affirmative defense must also be pled as such. A defense is affirmative where it does not tend to controvert an element of the plaintiff's prima facie case, where it tends to annul the plaintiff's cause of action and not merely prove a different legal standard, and where failure to plead the

---

[1] See paragraphs 9 and 10 of Complaint and Defendant's Answers thereto.

defense would tend to surprise the plaintiff. Thus, affirmative defenses generally admit the matters asserted in the complaint but assert other facts that would defeat recovery.

The courts often look to federal or state substantive law to determine what constitutes an affirmative defense under FRCP 8(c), and in a diversity case state substantive law determines whether a defense not listed in FRCP 8(c) must be pled as an affirmative defense.

"If a matter is not expressly enumerated in FRCP 8(c) and there is no state or federal law deciding whether the matter should be pled as an affirmative defense, the court will consider the logical relationship between the defense and the plaintiff's cause of action. This involves consideration of several general factors, such as (1) whether the matter to be pleaded can be said to constitute a necessary ingredient of the plaintiff's cause of action or is, on the contrary, extrinsic to that cause of action, a new matter which will bar an otherwise meritorious claim for relief; (2) fairness as to problems of proof – that is, whether the plaintiff or the defendant has more ready access to evidence relevant to the matter to be pleaded; and (3) policy – that is, whether the matter to be asserted is one which is treated indulgently or with disfavor by the courts."

Hence, it is permissible to examine state law on this issue. Pennsylvania Superior Court decisions are further supportive. In Bender's Floor Covering Co. v

Gardner, 387 Pa. Super. 531 (1989), wherein the Court stated:

> "Unlike counterclaims, affirmative defenses are *compulsory*, and therefore must be timely pleaded, or they are forever lost. *Zarnecki v. Shepegi*, supra, 532 A.2d at 875, *citing Posternack v. American Casualty Co. of Reading*, 421 Pa. 21, 218 A.2d 350 (1966); *see also* Pa.R.C.P. 1030, 1032.

And in the recent decision of Coldren v. Peterman, 763 A.2d 905 (Pa. Super. 2000), the Court stated:

> "[7] ¶ 16 Affirmative defenses are compulsory and therefore must be timely pled or they are forever lost. *Bender's Floor Covering Co. v Gardner*, 387 Pa.Super. 531, 564 A.2d 518 (1989). Because the assertion that the 1936 Order is void is an affirmative defense and it was not properly pled, this defense is waived.

Respectfully submitted,

Date: July 17, 2002

John C. Dowling
RHOADS & SINON LLP
One South Market Square, 12th Floor
Harrisburg, PA 17108
(717) 233-5731

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2002, a true and correct copy of the foregoing "Trial Brief" was served by United States Mail, upon the following:

William C. Foster, Esquire
Kelly, McLaughlin & Foster, LLP
1617 J.F.K. Boulevard, Suite 1690
Philadelphia, PA 19103

*Cynthia L. Zucaro*
Cynthia L. Zucaro