# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG M. HOWARD | : | |
| Plaintiff, | : | |
| | : | Case No. 1:CV-01-0797 |
| v. | : | (Judge Yvette Kane) |
| LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON, | : | |
| LIBERTY MUTUAL GROUP | : | |
| Defendant | : | |

**FILED**
**HARRISBURG**

JUL 2 2 2002

MARY E. D'ANDREA, CLERK
Per
DEPUTY CLERK

### TRIAL BRIEF OF DEFENDANT

Defendant, Liberty Life Assurance Company of Boston (referred to herein as "Liberty Life") hereby submits the following Trial Brief for consideration by the Court.

## I.    COUNTER STATEMENT OF THE FACTS:

Plaintiff has made a claim for long-term disability benefits upon an insurance policy written by Liberty Life. This policy was part of a plan established by Geisinger Health System. It included the following provisions.

> If you are eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability, you are unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an injury or sickness; and

Interpretation of the Policy

> We shall possess the authority, in our sole discretion, to construe the terms of this plan and to determine benefit eligibility hereunder. Our decisions regarding construction of the terms of this plan and benefit eligibility shall be conclusive and binding. (D-2, p. 6,7, 42) [ The policy also states that" we," as used in the policy, referred to Liberty Life (D-2 ,p 1)]

Mr. Howard made a claim for long-term disability benefits. Liberty Life properly considered this claim and all of the evidence submitted in connection with it. It determined that Mr. Howard was not entitled to these benefits as he did not meet the definition of disability set forth in the policy. This decision was made in accordance with the provisions of the policy and the requirements of the Employee Retirement Income Security Act of 1974 (ERISA).

This determination was appealed to Liberty Life's appeals unit and it was determined that the decision would be upheld. Plaintiff subsequently filed this action.

Though Plaintiff contends that the reports of Mr. Howard's treating physicians were ignored, this assertion is contradicted by the factual information contained in the claim file. To the contrary, documents in this file will establish that Liberty Life contacted Dr. Powers, the doctor who had provided an Attending Physician's Statement with Mr. Howard's application, requesting copies of the doctor's office notes, treatment notes, consultation reports and operative reports relating to Mr. Howard from January 1, 2000 to the date of the request. The requested documents were provided by Dr. Powers by letter of June 7, 2000 and they were carefully reviewed by Liberty Life. These documents described Mr. Howard's medical conditions and stated that he had undergone surgery and achieved an excellent result. In the report of February 25, 2000, Dr. Powers stated that he had seen Mr. Howard on that date and that Mr. Howard was doing 100% better. In this report, Dr. Powers stated that he was going to allow Mr. Howard to return to work part-time (4 hours a day) beginning March 6, 2000 for three weeks and that he may return to full-time work after March 27, 2000.

Mr. Howard returned to Dr. Powers on March 24, 2000 and advised the doctor that he was planning to apply for disability and asked if the doctor would support this. The doctor stated that he would support some limited disability because of continued pain. On May 5, 2000, Mr. Howard visited Dr. Powers. The doctor wrote a report following that visit stating that Mr. Howard could return to work where he can sit and stand frequently. Dr. Powers released Mr. Howard from his care at that time. Up to this point, Dr. Powers had consistently stated that Mr. Howard was capable of working.

Mr. Howard's claim was denied by Liberty Life by letter of July 25, 2000. This letter detailed all of the medical information which had been provided by Mr. Howard in support of his claim and advised him that, based upon the company's review of the medical information in the file, Mr. Howard did not meet the definition of disability as defined in the Group Disability Plan and, therefore, his claim for Long-Term Benefits had been denied. On July 26, 2000, Liberty Life received a letter from Dr. Powers stating that, *inter alia*, Mr. Howard was incapable of working at even a clerical or sedentary type job which

2

required his staying at a single work station.  He said that he would consider him to be entirely disabled at that time from returning to any type of work activity and that he did not expect this condition to improve.

This letter was letter was a complete reversal of the opinions previously stated by Dr. Powers. This letter was reviewed by the claims analyst handling the case with a registered nurse employed with Liberty Mutual's Managed Disability Services and the discrepancy in the opinions of Dr. Powers was noted.  As a result of this discrepancy, it was determined that a pharmacy check would be obtained and a Functional Capacity Evaluation (FCE) would be conducted.  The pharmacy check was completed promptly and the Functional Capacity Evaluation took place during November of 2000. This test was delayed at the request of Mr. Howard, who advised Liberty Life that he did not  wish to have another FCE done because the Social Security Administration had already conducted such an evaluation and the report of that evaluation would be provided to Liberty Life. This report was never provided and further delays resulted from the unavailablity of  Dr. Powers to authorize the test and requests by Mr. Howard that the evaluation be delayed.

A Functional Capacity Evaluation is an objective test which is administered by physical therapists using exercise equipment and other means to evaluate an individual's abilities and limitations as they pertain to their abilities to perform activities in a work environment.  The report of Health South, the independent organization which conducted Mr. Howard's FCE, stated that Mr. Howard was best suited for a sedentary and/or light work category for an 8-hour day.

The Health South report was sent to Dr. Powers with a request that he review it and provide any comments which he wished to make.  The report was sent to him during November of 2000 and, despite continued requests to his office, he provided no comments and wrote no reports relating to the FCE. Efforts  to contact him were made by a claims analyst and by Edward T. Crouch, M.D., Liberty Life Medical Director.  Dr. Powers did not respond to these communications.

Plaintiff's contentions that medical evidence was ignored that are without merit. Far from ignoring the opinion of Dr. Powers, Liberty Life gave careful consideration to the doctor's opinions.  The opinions were contradicted by his own reports, however, and testing by an independent, objective organization contradicted the

3

doctor's findings.  The doctor declined many opportunities to explain the bases of his opinion.  Liberty Life submits that this claim was handled properly and reasonably by it.

Plaintiff has stated that he intends to introduce into evidence sections of Liberty Life's Claims Procedure Manual and to assert that it did not follow that Manual in the handling of this case.  References to that Manual and the evidence set forth in Liberty Life's claims manual, however, will establish the contrary.

Plaintiff contends that Liberty Life advised Mr. Howard that it would accept the findings of the Social Security Administration regarding his Social Security claim. No such statement appears in the record. The claims file does show that certain Social Security documents were provided to Liberty Life. They included the the Social Security Administration's determination Notice of Award dated August 18, 2000 and the report of Dr. Hartman (D-1 , pp.104-107, 116).  The report of Dr. Hartman, however,  does not establish total disability of Mr. Howard.  It states that Mr. Howard is functionally limited due to poor mobility but it also states that his strength is functional (D-1 p. 106).  No opinion of the Social Security Administration setting forth its rationale in granting disability to Mr. Howard was provided to Liberty Life.

Mr. Howard advised Liberty Life that a Functional Capacity Evaluation had been performed at the request of the Social Security Administration and he agreed to provide a copy of that report to Liberty Life   This report was never provided.  Liberty Life's Claims Manual indicates that there are differences in the standards used by Liberty Life and the standards used by the Social Security Administration.

Liberty Life followed its Procedures Manual relating to the investigation of this claim.  The claim was completely and thoroughly investigated, the Company acted properly, maintained its claim file properly,  sought expert opinions when necessary and properly communicated its activities.

Plaintiff's claim that  no "Red Flags", as that term is used in the Claims Manual of Liberty Life, were presented by this case is not accurate. Potential "Red Flags" referred to in this Manual included inconsistent or inconclusive medical or psychiatric test results.The inconsistent medical reports were the reports of Dr. Powers which had initially stated that Mr. Howard was capable of returning to part-time work as of March 14, 2000 and that he could return to full-time work as of March 27, 2000.   All reports rendered through July 25, 2000 indicated that Mr. Howard was working but, following the denial of disability on July 25,

2000, Dr. Powers provided a report which contradicted the prior reports stating that Mr. Howard was unable to work. The Functional Capacity Evaluation which was conducted by an independent organization on November 9, 2000 also indicated that Mr. Howard was capable of working.

Plaintiff's assertion that Liberty Life failed to obtain an "Employer's Statement" is not accurate. The reference to an "Employer's Statement in Liberty Life's claim file relates to the written document which was submitted by the employer in connection with the claim. Such a statement was obtained in this case. A copy of it is Bates-Stamped number 241 in plaintiff's exhibit D-1.

Plaintiff was asked questions regarding work activities. By letter dated May 12, 2000, he was asked when he expected to return to work and what type of work activity he felt he was capable of resuming. (D-1, p. 236)

A telephone interview with a physician, referred to in Liberty Life's Claims Manual, is one method of communication with a physician which may be used. In this case, the claims analyst initially determined that she would send a letter to the doctor requesting all records relating to his treatment of Mr. Howard. This is a proper means of communication and it is in compliance with Liberty Life's Claims Manual. Furthermore, as demonstrated by the record, later attempts to conduct telephone discussions with Dr. Powers were made but the doctor would not accept these calls.

An Independent Medical Examination is a case management tool which can be used by a claims analyst. Liberty Life's Claims Manual does not require that an Independent Medical Examination be conducted and there is no legal requirement that such an examination be conducted. Following review of this file with a registered nurse, a determination was made that an FCE would be the appropriate type of evaluation for use in this case. Such a determination does not in any manner show that the Claims Manual was not being followed.

Surveillance was conducted by Liberty Life in this case. It showed that Mr. Howard was not employed. Liberty Life was permitted to conduct this surveillance and there is no indication that there was any improper conduct which took place relating to it.

Contrary to the Plaintiff's assertions, a Summary Plan Description was provided to Mr. Howard, as part of the booklet entitled "Group Benefits Plan." It is clearly marked "Summary Plan Description" and it is set forth at pages 50 through 56 of the employee booklet. (D-2, pp. 50-56). Moreover, as Liberty Life was not the Plan

5

Administrator, it was not responsible to provide a Summary Plan Description. Such a document was nonetheless provided. There was no failure of Liberty Life to follow its Claims Procedures Manual.

Furthermore, Plaintiff asserts that a number of alleged "uncontradicted facts" establish improper conduct of the Defendant Liberty Life and . A review of these "uncontradicted facts" shows that many of them are arguments, not facts, and that many of them are contradicted. Plaintiff's references will be considered **seriatim.**

1.    Plaintiff's contention that Defendant did not comply with this Claims Procedure Manual is inaccurate and is contradicted by the actual facts of the case. Please see the aforementioned paragraphs.

2-3.    When focusing on Dr. Powers' report of July 24, 2000, Plaintiff makes no reference to the statements set forth by Dr. Powers in his prior reports. In fact, the position set forth in the letter of July 24, 2000 was a complete contradiction of the doctor's earlier reports.

4.    Liberty Life followed up with Dr. Powers on numerous occasions but the doctor would not speak to its claim representatives or to Edward T. Crouch, M.D., its Medical Director. Plaintiff's claim that the company would not spend $200.00 to have Dr. Powers comment on the Functional Capacity results is an unfounded assertion. Though a note dated January 23, 2001 states that the doctor wanted $250.00 for comments on the FCE, this report also states that Liberty Life was waiting to hear from Mr. Howard's attorney. Counsel for Mr. Howard had advised Liberty Life of his representation during December of 2000 and Liberty Life had written to this attorney requesting additional information. By letter of January 17, 2001, Mr. Dowling was advised of the request for any further medical information which Mr. Dowling intended to submit in support of the claim. Mr. Dowling was also advised in this letter that a copy of the Functional Capacity Evaluation had been faxed to Dr. Powers and that a response from him had been requested by January 31, 2001. There was no response by Mr. Dowling to this letter. There were, however, numerous subsequent contacts by Liberty Life with Dr. Powers' office. Unfortunately, the doctor did not respond to these communications.

5.    The only Functional Capacity Evaluation which was available to Liberty Life was the evaluation which was performed on November 9, 2000. That report stated that the results of this evaluation indicated that Mr. Howard was best suited for sedentary and/or light work during an 8-hour day. It furthermore stated as follows:

6

"The results of this evaluation indicate that Craig M. Howard is best suited for a sedentary and/or light work category (8 hour day) (U.S. Department of Labor) His maximum occasional lifts were thirty-one and twenty-one pounds. His sitting tolerance was demonstrated on an occasional basis & required frequent positional changes. He tolerated standing and walking on a frequent basis. Mr. Howard presents himself as deconditioned as per the Kasch Step testing results. Finally, Mr. Howard, Mr. Howard demonstrated several inconsistencies with today's testing: Two of three tasks had inappropriate horizontal strength changes and one of five tasks was rated as minimal effort (less than 16 pounds). Grip strength testing was invalid and inconsistent with three of ten trials exceeding 20% for coefficients of variation, and two of two positive REG scores. (D-1 p. 79) It is the opinion of this evaluation team that these results represent Mr. Howard's minimal capabilities and not his maximal capabilities. (D-1 p. 79 [entire FCE report is set forth at D-1 pp. 67-80]" [The Kasch Step test procedure is found in the report. See D-1, p. 68; REG is defined in the report as "rapid exchange grip" See D-1, p. 79]

6.       It is admitted that Ms. Bednar sent a letter dated October 18, 2000. What she actually stated in this letter, however was not that such accommodations were not possible but that it was not possible for billing clerks to remove themselves from a work space for five to ten minutes hourly. This letter does not establish that Mr. Howard is entitled to disability benefits under this policy. As Mr. Howard was advised during discussions relating to this claim, the term "own occupation" is not limited to his own job but to a determination of disability from one's own occupation based upon the national economy.

The FCE evaluators found Mr. Howard to be suitable for sedentary to light work. These terms are defined in the United Stated Department of Labor's Dictionary of Occupational Titles and these definitions are set forth in Liberty Life's Claim Procedures Manual. Sedentary work is defined as:

Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects , including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

There was no information prior to July 25, 2000 that Mr. Howard was incapable of engaging in sedentary work and the initial denial on July 25, 2000 was therefore proper. Though Dr. Powers' report subsequent to that date

states that Mr. Howard was able to perform any work objective testing by FCE indicated otherwise, that Mr. Howard was capable of sedentary to light work.. In fact, the persons who conducted the FCE concluded that he was capable of sedentary to light work and that this was his minimum capability.

      7-8.     Liberty Life did not request an Independent Medical Examination of Mr. Howard.  Claims procedures do not require an Independent Medical Examination and there is no legal requirement but it conduct such an examination.   Reviews of the entire file with an in-house consulting nurse in this case were conducted and it was determined that a pharmacy check and a Functional Capacity Evaluation would be obtained.  These were the procedures which were utilized by Liberty Life.

      9.     Surveillance was conducted.  Liberty Life was permitted to conduct this surveillance. It was brief and it confirmed that Mr. Howard was not employed.

      10.     Liberty Life received limited information regarding the Social Security Administration's determination.  Though Mr. Howard had advised the company's representatives that a Functional Capacity Evaluation of him had been conducted by the Social Security Administration and that he would provide a copy of this evaluation report, he never provided this report.  Furthermore, the only documents provided to Liberty Life relating to the Social Security Administration's determination were copies of its Notice of Award and the report of Dr. Hartman. The basis for the award was not set forth in this notice and the report of Dr. Hartman showed that Mr. Howard was functionally limited due to limited mobility but that his strength was functional.  He does not state that Mr. Howard is totally disabled from working.  Furthermore,

the Social Security Administration uses different standards in making its determinations and carriers such as Liberty Life are not bound by the determinations of the Social Security Administration.

## II.    COUNTER STATEMENT OF THE ISSUES:

      **A.**     **What is the proper Scope of Review to be used by the Court in its consideration of the determination by Liberty Life that Mr. Howard is not entitled to disability benefits under this policy?**

      **B.**     **Should the determination of Liberty Life be affirmed by this Court ?**

      **C.**     **If the Court determines that Mr. Howard is entitled to benefits, what is the applicable measure of damages?**

      **D.**      **Is the Social Security off set applicable to this case?**

**III**     **ARGUMENT:**

      **A-B.**     **Liberty Life's decision in this case should be reviewed under the arbitrary and capricious standard and it should be given a high degree of deference.  This review will show that the process used was proper and that its decision was proper.  This decision should be affirmed by this Court.**

      Liberty Life contends that the appropriate standard of review of a decision by a Claims Administrator denying benefits is determined by referring to the language of the Plan itself.  This Plan provides express discretionary authority to Liberty Life to determine a participant's entitlement to benefits and its decision to deny Long-Term Disability Benefits must be reviewed under the arbitrary and capricious standard.

      The Court in <u>Pinto v. Reliance Standard Life Insurance Company</u>, 214 F.3d 377 (3 Cir. 2000) adopted the "sliding scale" approach which requires a heightened arbitrary and capricious standard.  This heightened standard would take into account conflicts of interest which may exist when an insurance company both insures and administers benefits.  The Court in <u>Pinto</u> stated that:

> In its determination of whether a conflict of interest exists, a Court
> may take into account the sophistication of the parties, the information
> accessible to the parties, and the exact financial arrangement between the insurer
> and the company.  For example, a court can consider whether the insurance
> contract is fixed for a term of years or changes annually, and whether the fee
> paid by the company is modified if there are especially large outlays of capital
> by the insurer.  Another factor to be considered is the current status of the
> fiduciary.  Our previous cases, . . . which hold that an employer fiduciary is not
> conflicted, generally assume that the company is stable and will act as a repeat
> player: The presumed desire to maintain employee satisfaction is based in this
> premise.  <u>Id.</u>

      In the present case, there is no evidence  which would justify the assertion that any alleged conflict of interest affected any claim decision made in this case.  Under these circumstances, a deferential standard of review should be applied by the Court in reviewing the decision of Liberty Life denying benefits to Mr. Howard.   The evidence will establish that this claim was handled in a proper and reasonable manner  and that the Liberty Life's decision should be upheld by this Court.

A review of the process used to handle this claim will show that it was handled in a proper manner. Liberty Life will offer into evidence its entire claim file in support of this position. This file has been marked Exhibit D-1, Bates-Stamped pages 1 through 289 and (a)-(d). This file will show that at the time of Plaintiff's claim, the question was whether he was unable to perform all of the material and substantial duties of his own occupation on an Active Employment basis because of an injury or sickness. The question was not, as stated by Plaintiff, whether he could perform the substantial duties of his occupation or any other occupation. The definition of disability under this policy changed to the performance of the material and substantial duties of Mr. Howard's own occupation or any other occupation on July 1, 2002. That issue was not, however, presented to Liberty Life and it did not have the opportunity to conduct the additional investigation which would be required to make a determination regarding disability relating to any occupation.

C.    **If the Court should find that Plaintiff is entitled to benefits, the amount awarded should be limited to amounts through the date of denial of this claim and the matter should then be remanded to Liberty Life for further consideration of future benefits.**

The maximum monthly benefit under this Policy, with the Social Security offset, would be in the amount of $486.96 per month. If the Court finds that Mr. Howard is entitled to benefits, it should award benefits only up to February 28, 2001, the date when this claim was denied. If the Court finds that Mr. Howard is entitled to benefits, the case should be remanded to Liberty Life for handling in accordance with the terms of applicable policy. See Halphin v. W.W. Grainger, Inc., 962 F.2d 685 (7th Cir. 1992) The particularly important in this case because of the definition changed on July 1, 2002 and Liberty Life is entitled to conduct further investigation to determine eligibility for benefits at the present time. If the Court were to find that Mr. Howard is entitled to benefits through June 30, 2002, the applicable amount of benefits would be $11,687.04.

It is submitted that there would be no basis for the Court to award future benefits in this case. See Summers v. Prudential Ins. Co. of America, 319 Pa. 270, 179 A. 78 (1935); Doe v. Provident Life and Accident Ins. Co., 936 F.Supp. 302 (E.D.Pa. 1996); Brosnan, M.D. v. Provident Life and Accident Ins. Co., 1999 WL 165684 (E.D.Pa.).

10

IV.    **THE SOCIAL SECURITY OFFSET IS APPLICABLE TO THIS CASE:**

At the attorney conference to prepare the Pre-Trial Memoranda in this matter there was a discussion relating to the Social Security offset.  The topic was raised by counsel for Plaintiff who stated that he could not find the offset in the policy.  After reviewing the policy, it was pointed out to counsel for Plaintiff that the offset appeared at pages 3 and 29 of the Policy Booklet.  A copy of that booklet has been marked Exhibit "D-2."  The policy provisions set forth in the booklet define the applicable benefits based on a percentage of basic monthly earnings less the participant's "Benefits from Other Income" (Section 4, Exhibit D-2, p. 3 )  Benefits from Other Income, include the amount of disability and/or Retirement Benefits under the United States Social Security Act.  (Exhibit "D-2, pp. 28, 29)   Counsel had been provided with a copy of this booklet, together with a complete copy of Defendant's Claims File on July 23, 2001. Counsel for Plaintiff was, therefore, in possession of this booklet for at least eleven months prior to the Pre-Trial Conference.  He certainly had an opportunity to review it and consider the provisions of the Policy.

Furthermore, in its Fourth Affirmative Defense raised in response to the Plaintiff's Amended Complaint, the Defendant asserted that "Plaintiff's claim does not fall within the scope of coverage of the Policy referred to in this Answer and it is barred by terms, conditions, definitions, exclusions and limitations set forth in that policy."  This defense clearly incorporates all of the terms of the Policy into the Defendant's Answer.  The Social Security offset was part of the Policy. There was no waiver of the Social Security offset.

It is questionable whether this offset is an affirmative defense. An affirmative defense has been defined as a defense that admits the truth of the Complaint's allegations but states New Matter that exculpates the Defendant.  U.S. Home Corporation v. George W. Kennedy Construction Company, 6110 F. Supp. 759 (N.O., Ill. 1985.  This is not the situation here. Rather, the Social Security offset is one of the Policy's terms which is used to determine the amount of benefits which may be available under the Policy. It is an integral part of the Plaintiff's case to establish the amount allegedly due and all of the provisions of the Policy must be considered in establishing this amount.

Coldren v. Peterman, 763 A.2d 905 (Pa. Super. 2000) dealt with the need to plead a Court Order vacating a public road.  The facts of that case are entirely different from the facts of the case at bar.  Bender's Floor

11

covering Co. v. Garden, 387 Pa. Super 531 (1989) dealt with the pleading of counterclaims.  The only reference to affirmative defenses is a general statement that appears in a footnote.

Plaintiff contends that determinations relating to affirmative defenses are to be determined by reference to state law but the state law cases cited by him do not support his position.  Under FRCP 8 (b), certain affirmative defenses are specifically referred to. The matter asserted here is not included within those defenses and this matter is not an affirmative defense. Even if it were to be considered an affirmative defense, the test under Federal principles is whether prejudice has resulted to the other party and it is submitted that no such prejudice has been alleged or demonstrated here.

Finally, Plaintiff has referred to a document that was inadvertently produced with the copy of the claim file provided to him during the attorney conference regarding the Pre-Trial Memorandum.  The document is clearly privileged and it states that it is a document which is subject to the attorney-client privilege.  It was produced with a group of Bates-Stamped documents and its production was clearly unintended.  Counsel for Defendant has requested the return of this document but counsel for Plaintiff has

refused to return it.  It is submitted that this document should not be considered by the court in its evaluation of this case.

Respectfully submitted,

**KELLY, MCLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: _____
William C. Foster, Esquire
Attorney for Defendant
Liberty Life Assurance Company of Boston

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG M. HOWARD | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Case No.  1:CV-01-0797 |
| v. | : | (Judge Yvette Kane) |
| | : | |
| LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON, | : | |
| LIBERTY MUTUAL GROUP | : | |
| | : | |
| **Defendant** | : | |

## CERTIFICATE OF SERVICE

I, William C. Foster, Esquire, hereby certify that a true and correct copy of Defendant's Trial Brief was served on 22nd day of July, 2002 via hand delivery upon the following individual:

John C. Dowling, Esquire
Rhoads & Sinon, LLP
1 South Market Square, 12th Floor
P.O. Box 1146
Harrisburg, PA  17108-1146

KELLY, MCLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP

By: _____

Date: 7/21/02

William C. Foster, Esquire
Attorney for Defendant,
Liberty Life Assurance Company of Boston.

13