**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD : | |
| Plaintiff, : | |
| v. : | Case No. 1:CV-01-0797 |
| : | (Judge Yvette Kane) |
| LIBERTY LIFE ASSURANCE : | |
| COMPANY OF BOSTON, : | |
| LIBERTY MUTUAL GROUP : | |
| Defendant. : | |

FILED
HARRISBURG, PA

JUL 31 2002

MARY E. D'ANDREA, CLERK
Per_____

### SUPPLEMENTAL PROPOSED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

Defendant, Liberty Life Assurance Company of Boston (referred to herein as "Liberty Life") hereby submits its Supplemental Proposed Findings of Fact:

49.    Though Plaintiff referred to the Claim Procedures Manual of Liberty Life in his Pre-Trial documents, this Manual was not introduced into evidence at the trial of this action.

50.    No evidence was introduced to establish the claim that Liberty Life failed to follow its Claim Procedures Manual.

51.    No evidence was introduced to establish that there was any irregularity or procedural defect in the handling of this claim by Liberty Life.

52.    No evidence was introduced which would justify a conclusion that any potential conflict Of interest had any effect upon the handling of this case.

53.    The evidence which was admitted in this case included the claim file of Liberty Life, the Employee Booklet provided to employees of Geisinger Health System, documents which were contained in the claim file and the testimony of Craig Howard.

54.    Mr. Howard testified that he had undergone surgery during February of 2000 and that this

surgery had been performed by Dr. Powers. Mr. Howard further testified that he had seen Dr. Powers following this surgery and that the doctor had discharged him from his care during May of 2000. Mr. Howard did not see Dr. Powers again until the Spring of 2001.

55. Dr. Powers' letter dated July 24, 2000 stated an opinion that was different from the opinions that had been stated by him in all of his prior letters. Dr. Powers did not re-examine Mr. Howard prior to writing this letter.

56. At the trial, Mr. Howard testified that there was a discussion with representatives of Liberty Life relating to a Functional Capacity Evaluation.

57. The claim file states that, when representatives of Liberty Mutual advised Mr. Howard that the company was going to request a Functional Capacity Evaluation, Mr. Howard advised the Company that it would not be necessary to conduct such an evaluation as a Functional Capacity Evaluation had been conducted in connection with his Social Security claim. (Exhibit D-1, p. 129)

58. The claims file indicates that Mr. Howard did send Social Security information to Liberty Life. The information sent by him included a copy of Social Security's Notice of Award and a medical report of Stuart A. Hartman, D.O. dated May 11, 2000. (D-1, pp. 104-107, 113) Though Mr. Howard, based upon his trial testimony, believed this report to be the report of a Functional Capacity Evaluation (FCE), it was not such a report and an FCE was therefore requested on the carrier's behalf.

59. This Functional Capacity Evaluation (FCE) was performed at Health South Sports Medicine in Harrisburg, Pennsylvania on November 9, 2000 by a licensed Physical Therapist.

60. The trial testimony established that the FCE consisted of numerous tests and activities which included an evaluation of Mr. Howard's posture, gait, range of motion, strength and flexibility. In addition, a stepping test was performed, isometric lift testing was done, progressive lift testing took place and grip tests were performed. Furthermore, tests were performed regarding Mr. Howard's positional tolerance.

61. Mr. Howard testified that many of the tests performed during this FCE involved the use of equipment which included monitoring devices and that the individuals who conducted the evaluations observed these devices during the testing.

62. The evidence establishes that the Functional Capacity Evaluation conducted by Health South was performed in an objective and thorough. manner.

63. Though Plaintiff testified at the trial that he was not asked questions regarding his duties at work by the FCE evaluators, this testimony is contradicted by the FCE report where the following statement is made. "Mr. Howard worked for Hershey Medical Center as a billing clerk for the past thirteen years. He states there is no formal lifting required for this job, mostly everything is sedentary work. Craig states he had not worked since December 24, 1999." (Exhibit D-1, p. 80)

64. The results of the FCE were set forth in the FCE report in the following language:
" the results of this evaluation indicate that Craig M. Howard is best suited for sedentary and/or light work category (8 hour day) (U.S. Department of Labor) His maximum occasional lifts were thirty-one and twenty-one pounds. His sitting tolerance was demonstrated on an occasional basis & required frequent positional changes. He tolerated standing and walking on a frequent basis. Mr. Howard presents himself as deconditioned as for the Kaach Steping testing results. Finally, Mr. Howard, demonstrated several inconsistencies with today's testing: Two of three tasks had inappropriate horizontal strength changes and one of five tasks was rated at minimal effort (less than 16 pounds). Grip strength testing was invalid and inconsistent with three of ten trials exceeding 20% for coefficients of variation, and two of two positive R & G scores. (D-1 p. 79)

65. The definition of sedentary work is set forth in the United States Department Labor's Dictionary of Occupational Titles. That type of work is defined as exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise

move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." (Westlaw Citation DICOT 132.367-010)

66. At the trial, Mr. Howard testified that his work with Hershey Medical Center involved sitting at a computer terminal and that he could make frequent positional changes.

67. Plaintiff has referred to a letter written by Mary K. Bednar, Chief Financial Officer of the Hershey Medical Center, dated October 18, 2000. A copy of this letter was provided to Liberty Life. (Exhibit D-1, pp. 112)

68. Ms. Bednar's letter states that it would not be possible for a billing clerk to remove themselves from the work space for five to ten minutes hourly and that the absence of a staff person from their cubicle multiple times throughout the day would not meet the requirements for productive employment. The FCE report, however, did not state that it would be necessary for Mr. Howard remove himself from the work space for five to ten minutes hourly or to be absent from his cubicle multiple times throughout the day.

69. Though Plaintiff claimed that there had been no contacts with Ms. Bednar or other representatives of Hershey Medical Center relating to Mr. Howard's claim, the evidence is to the contrary. Exhibit D-1 shows that Geisinger Health System, the Plaintiff's employer submitted an employer's statement to Liberty Life. (Exhibit D-1, p. 241) The claim file further indicates that there were discussions with representatives of the Plaintiff's employer regarding this claim on July 21, 2000. (Exhibit D-1, p. 179); July 25, 2000 (Exhibit D-1, p. 169) and February 14, 2001 (Exhibit D-1, p. 2.)

70. Liberty Life followed up with Dr. Powers on numerous occasions but the doctor would not speak to its claim representatives or to Edward T. Crouch, M.D., its Medical Director.

71. Plaintiff's claim that Liberty Life would not spend $200.00 to have Dr. Powers comment on the Functional Capacity results is an unfounded assertion. Though a note dated January 23, 2001 states that the

doctor "wanted $250.00 for comments on the FCE", this report also states that Liberty Life was waiting to hear from Mr. Howard's attorney. Counsel for Mr. Howard had advised Liberty Life of his representation during December of 2000 and Liberty Life had written to this attorney requesting additional information. By letter of January 17, 2001, Plaintiff's counsel was advised of the request for any further medical information which Mr. Dowling intended to submit in support of the claim. Plaintiff's counsel was also advised in this letter that a copy of the Functional Capacity Evaluation had been faxed to Dr. Powers and that a response from him had been requested by January 31, 2001. There was no response by the Plaintiff's attorney to this letter. There were, however, numerous subsequent contacts by Liberty Life with Dr. Powers' office. Unfortunately, the doctor did not respond to these communications.

## CORRECTION OF ORIGINAL PROPOSED FINDINGS OF FACT

In its original Proposed Findings of Fact paragraph number 42, Liberty Life referred to a note dated February 23, 2001, the date of that reference was incorrect. Liberty Life was referring to a document which has been designated as page 6 of Exhibit D-1. The correct date of that document is January 23, 2001. (Exhibit D-1, p. 6)

## CONCLUSIONS OF LAW

Defendant, Liberty Life Assurance Company of Boston (referred to herein as "Liberty Life") hereby requests that the Court enter the following Conclusions of Law:

36. The Court has considered the evidence introduced by all of the parties and the testimony taken at the trial of this action.

37. The Court finds from this evidence that any alleged conflict of interest of Liberty Life is <u>de minimis</u> and that there was no evidence that this alleged conflict had any effect upon the claims decisions made in this case.

38. Accordingly, this Court finds that a deferential standard of review is to be applied. The question before the Court is whether a reasonable fact-finder could conclude that the decision of Liberty Life to deny Mr. Howard's claim for long-term disability benefits is without reason, unsupported by the evidence, erroneous as a matter of law, irrational, arbitrary or capricious. <u>Cimino v. Reliance Standard Life Insurance Company</u>, 2001 WL 253791 (E.D. Pa.) at p. 6.

39. The Court finds that the decision of Liberty Life was supported by reason and by substantial evidence and that it is not erroneous as of a matter law, irrational, arbitrary or capricious.

40. The Court finds no basis to change the decision of Liberty Life and this decision will be affirmed.

41. The Court therefore finds in favor of Liberty Life Assurance Company of Boston.

Respectfully submitted,

KELLY, MCLAUGHLIN, FOSTER,
BRACAGLIA, DALY, TRABUCCO & WHITE,
LLP

By: _____
William C. Foster, Esq.
Attorneys for Defendant
Liberty Life Assurance Company of Boston

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD | : |
| Plaintiff, | : |
| v. | : Case No. 1:CV-01-0797 |
| | : (Judge Yvette Kane) |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, LIBERTY MUTUAL GROUP | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, William C. Foster, Esquire, hereby certify that a true and correct copy of Defendant's Supplemental Proposed Findings of Fact and Conclusions of Law was served on the 31st day of July, 2002 via United States Mail, First Class, postage pre-paid, upon the following individual:

John C. Dowling, Esquire
Rhoads & Sinon, LLP
1 South Market Square, 12th Floor
P.O. Box 1146
Harrisburg, PA  17108-1146

KELLY, MCLAUGHLIN, FOSTER,
BRACAGLIA, DALY, TRABUCCO & WHITE, LLP

By: _____
William C. Foster, Esquire
Attorney for Defendant,
Liberty Life Assurance Company of Boston.

Date: 7/31/02