2 *G*

46
8/6/02

# RHOADS & SINON LLP

ROBERT H. LONG, JR.[2]
SHERILL T. MOYER
JAN P. PADEN
RICHARD B. WOOD
LAWRENCE B. ABRAMS III[2]
J. BRUCE WALTER
JOHN P. MANBECK
FRANK J. LEBER
PAUL A. LUNDEEN
JACK F. HURLEY, JR.
DAVID B. DOWLING
DAVID F. O'LEARY
DAVID O. TWADDELL
CHARLES J. FERRY
STANLEY A. SMITH
JENS H. DAMGAARD[2]
DRAKE D. NICHOLAS
THOMAS A. FRENCH
DEAN H. DUSINBERRE
DONNA M.J. CLARK
CHARLES E. GUTSHALL
PAUL F. WESSELL
SHAWN D. LOCHINGER

JAMES H. CAWLEY
DEAN F. PIERMATTEI
KENNETH L. JOEL[1]
DEBRA M. KRIETE
TODD J. SHILL
DAVID M. BARASCH
LORI J. McELROY
THOMAS J. NEHILLA
KEVIN M. GOLD
CARL D. LUNDBLAD
JAMES E. ELLISON
RICHARD E. ARTELL
ROBERT J. TRIBECK
TIMOTHY J. NIEMAN
PAUL J. BRUDER, JR.[4]
JOANNE BOOK CHRISTINE
AMY J. MENDELSOHN[2]
MICHAEL W. WINFIELD[3]
KATHRYN G. SOPHY[3]
STEPHANIE E. DIVITTORE
KATHLEEN D. BRUDER[4,5]
CHRISTYLEE L. PECK
JOHN M. COLES

1 ALSO ADMITTED TO THE DISTRICT OF COLUMBIA BAR
2 ALSO ADMITTED TO THE FLORIDA BAR
3 ALSO ADMITTED TO THE MARYLAND BAR
4 ALSO ADMITTED TO THE NEW JERSEY BAR
5 ALSO ADMITTED TO THE NEW YORK BAR

ATTORNEYS AT LAW
TWELFTH FLOOR
ONE SOUTH MARKET SQUARE
P.O. BOX 1146
HARRISBURG, PA 17108-1146

TELEPHONE (717) 233-5731

FAX (717) 231-6637
EMAIL jdowling@rhoads-sinon.com
WEBSITE: www.rhoads-sinon.com

OF COUNSEL
HENRY W. RHOADS
JOHN C. DOWLING

RETIRED
FRANK A. SINON

PAUL H. RHOADS
1907-1984
JOHN M. MUSSELMAN
1919-1980
CLYLE R. HENDERSHOT
1922-1980

DIRECT DIAL NO.
231-6647

FILE NO.
7583/01

August 5, 2002

Re:  **Craig M. Howard v. Liberty Life Assurance Company of Boston**
**USDC, Middle District, PA  Civil Action No. 1:CV-01-797**

Honorable Yvette Kane
Judge, Middle District of PA
Federal Building, Room 830
228 Walnut Street
Harrisburg, PA  17108

**HAND-DELIVERED**

FILED
HARRISBURG, PA
AUG 6 2002
MARY E. D'ANDREA CLERK
Per _____ Deputy Clerk

Dear Judge Kane:

I received Mr. Foster's Supplemental Proposed Findings of Fact and Conclusions of Law.  As noted in our letter of July 24, 2002, we do not propose to file any additional suggested Findings of Fact or Conclusions of Law.  I would note, however, that there are certain factual inaccuracies in what is otherwise but a restatement and reargument of Defendant's previous position.  Suggested Finding of Fact Number 49 is incorrect as the Claim Procedure Manual was introduced into evidence and as detailed in our Proposed Findings of Fact (filed June 25, 2002) it failed to follow its own procedure in numerous respects.  We would also note that Supplemental Suggested Finding of Fact Number 65 was not placed in evidence.

Plaintiff would like to take this opportunity to call the Court's attention to a very recent decision from the Eastern District, July 17, 2002, from Senior Judge Newcomer, which is strikingly similar to the instant case.  A courtesy copy of the Opinion in Holzschuh v. UNUM Life Insurance Company of America, Civil Action, No. 02-1035, filed July 18, 2002, is attached for the Court's convenience.

Very truly yours,

RHOADS & SINON LLP

By: _____
John C. Dowling
Robert J. Tribeck

Enclosure
cc:    William C. Foster, Esquire
JCD/clz

439453.1

YORK:
TELEPHONE (717) 843-1718, FAX (717) 232-1459

AFFILIATED OFFICE:
STE. 203, 1700 S. DIXIE HWY, BOCA RATON, FL 33432
TELEPHONE (561) 395-5595, FAX (561) 395-9492

LANCASTER:
TELEPHONE (717) 397-4431, FAX (717) 232-1459

$02$-$1138$

(24)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| R. JOHN HOLZSCHUH | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY | : | |
| OF AMERICA | : | NO.  02-1035 |
| Defendant. | : | |

FILED JUL 1 8 2002

## O P I N I O N

July 17, 2002

Newcomer, S.J.

This is an action to collect benefits under an insurance plan pursuant to the Employee Retirement Income Security Act ("ERISA") section 502(a)(1)(b), 29 U.S.C. 1132(a)(1)(B).[1]  Defendant's motion for summary judgment, Plaintiff's response and Defendant's reply are now before the Court.

I.    **BACKGROUND**

Plaintiff, R. John Holzschuh ("Plaintiff"), resides in Chadds Ford, Pennsylvania and is a former employee of Forgent Corporation, formerly known as VTELL Corporation ("VTELL").

---

[1]Section 502 provides that:

A civil action may be brought--
(1) by a participant or beneficiary--
    (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. 1132(a)(1)(B).

1

Defendant, UNUM Life Insurance Company of America ("UNUM" or "Defendant"), provided a long-term disability policy (the "Policy") to VTELL at all relevant times.

As a result of certain injuries, including cervical and lumbar pain, fibromyalgia,[2] and psychological illness, UNUM paid Plaintiff long term disability benefits from March 10, 1999 until October 2000.  At that time, UNUM terminated Plaintiff's benefits after it found that Plaintiff's back condition was not disabling and his fibromyalgia and psychiatric illness were covered by a 12 month limitation contained in the Policy.  After UNUM discontinued Plaintiff's benefits, Plaintiff sought benefits from UNUM through an appeal process, but UNUM ultimately denied Plaintiff benefits in a March 13, 2001 letter.

**A.    The Policy**

When defining total disability, the Policy states that:

[An individual] is disabled when UNUM determines that:

– you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and

– you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by

---

[2]The term firbromyalgia refers generally to pain in fibromuscular tissue.  <u>Cini v. Paul Revere Life Ins. Co.</u>, 50 F. Supp.2d 419, 420 n.1 (E.D.Pa. 1999).

2002-01-00   05:51 AM   Client Ref: 758381          From: PICS          To:     717 231 6837+   Page   5

education, training or experience.[3]

(Defendant's App. at 700).

Additionally, the Policy explains that "when making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Defendant's App. at 694).

For certain types of disabilities, the Policy limits benefits to a 12 month period:

> Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 12 months. . .
>
> SELF-REPORTED SYMPTOMS means the manifestations of your condition which you tell your doctor, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. . .
>
> MENTAL ILLNESS means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions.  These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

(Defendant's App. at 709-10).

### B.    Plaintiff's Claim and UNUM's Review

When Plaintiff applied for benefits, he claimed that he

---

[3]Plaintiff did not receive 24 months of payments.

was disabled as of December 9, 1998.  Plaintiff further stated
that his "occupation" was a "purchasing manager".  (<u>Defendant's
App.</u> at 664).  A later vocational review indicated that the
purchasing manager position is classified as sedentary.  The
review also said that the duties of purchasing manager
occasionally involved lifting, but was primarily a seated
position.  The duties further allowed for alternatively sitting
and standing.  (<u>Defendant's App.</u> at 629–31).

Along with Plaintiff's application, Plaintiff's
physician, Dr. Lawrence Schmitzer, submitted an Attending
Physician Statement ("APS") which stated that Plaintiff suffered
from "severe cervical and lumbar pain."  (<u>Defendant's App.</u> at
666)  The APS further stated that Plaintiff should not lift and
pull, and should not sit or stand for prolonged periods.
(<u>Defendant's App.</u> at 667).

On April 16, 1999, Defendant reviewed Plaintiff's then
available medical records and concluded that "CT and MRI studies
well document multiple level changes in the cervical and lumbar
spines."  (<u>Defendant's App.</u> at 655).  Defendant further concluded
that Plaintiff's restrictions and limitations were reasonable and
appropriate for 12 months based upon the APS and diagnostics and
that "surgery may give a more favorable long term outcome."  <u>Id.</u>
Accordingly, Defendant approved Plaintiff's request for
disability benefits in an April 20, 1999 letter, and began paying

06-01-2002   09:51 AM   Client Ref: 758301          From: PICS          To:      717 231 6637+   Page   7

benefits effective March 9, 1999.  (<u>Defendant's App.</u> at 643).

However, that letter also indicated that Defendant would request

periodic medical evidence and vocational information from

Plaintiff to support his claim for continued disability

benefits.[4]  (<u>Defendant's App.</u> at 643).

    After UNUM approved Plaintiff's claim, it continued to

monitor his condition by requesting and reviewing additional

medical records.  For example, in June 1999, UNUM received Dr.

Parvis Kambin's March 23, 1999 report.  When reporting on his

review of the x-rays and imaging studies, Dr. Kambin stated that

he did not see "a clear disc herniation in the cervical or lumbar

spine which would be responsible for [Plaintiff's] signs and

symptoms."  (<u>Defendant's App.</u> at 610).

    However, UNUM also received a March 15, 1999 report

from Dr. Hilibrand, an Assistant Professor of Orthopedic Surgery

at Thomas Jefferson University.  In that report, Dr. Hilibrand

found a "small residual disc on the right side at C5-6 in

combination with a spur which does narrow the right neural

foramen at C5-6 but does not cause spinal cord compression."

(<u>Defendant's App.</u> at 609).  He further found that "[t]he lumbar

study is negative except for some degenerative changes, and the

_____

    [4]Also on April 20, 1999, Defendant learned that
Plaintiff may be suffering from fibromyalgia, and that Plaintiff
was receiving treatment from a rheumatologist, Dr. Getzoff, who
had diagnosed him with fibromyalgia.

remainder of the cervical study is also basically normal.  Of
note, there is a little bit of deformity in the right side of the
spinal cord at the C5-6 level. . ."  Id.

In addition, Defendant received a March 11, 1999 report
from Dr. Louis Pearlstein which found that Plaintiff had
"cervical and lumbosacral radiculopathies."  (Defendant's App. at
604).  However, he also concluded that "these would not explain
his paresthesias[5] from the elbows down and knees down."  Id.

In his June 1999 APS, Dr. Schmitzer again concluded
that Plaintiff should not do anything that requires prolonged
sitting or standing.  Accordingly, Dr. Schmitzer stated that in
an 8 hour work day, Plaintiff could sit for 4 hours, stand for 4
hours, walk for 1 hour, drive for 30-45 minutes, and perform 1
hour of sedentary activity,[6] but would need a break every 30
minutes.  (Defendant's App. at 599-601).  Later, in September
1999, Dr. Schmitzer submitted an additional APS which indicated
that Plaintiff suffered from severe lower back and neck pain, and
that his objective findings were "CT - mylogram."  (Defendant's
App. at 562).  It further indicated that fibromyalgia was a
secondary condition contributing to Plaintiff's disability.  He

--------

[5]Defined as: abnormal sensation, as of burning,
pricking, etc. on the skin.  WEBSTER'S NEW WORLD DICTIONARY 1063
(College ed. 1968).

[6]The APS defines sedentary as: "10 lbs. maximum lifting
or carrying articles.  Walking/standing on occasion.  Sitting 6/8
hours."  (Defendant's App. at 601)

6

also concluded that in an 8 hour workday, Plaintiff could sit for
3 hours, stand for 1 or 2 hours, and could perform sedentary
activity for 3 hours a day.  (Defendant's App. at 564).

Then, UNUM received a November 15, 1999 MRI which
concluded that "a tiny central disc herniation is again seen at
C4-5, and there are degenerative changes at the other levels.
This has not significantly changed as compared to the prior
study."  (Defendant's App. at 519).

In December 1999, UNUM requested records from Dr. Barry
Getzoff, Plaintiff's rheumatologist, and Defendant received those
records in late December 1999 or early January 2000.  Among those
records was an April 1999 treatment report where Dr. Getzoff
found that "[Plaintiff's] complaint of chronic pain is out of
proportion to the findings on the x-rays."  (Defendant's App. at
498).  However, Dr. Getzoff did state that Plaintiff's "workup
has shown that he had a CT of his cervical spine and a myelogram
showing disc bulges and spondylitic[7] disc herniation at C5 and
C6."  (Defendant's App. at 497).  Dr. Getzoff also commented that
"I do think he may be depressed."  (Defendant's App. at 498).
Later, on November 29, 1999, Dr. Getzoff stated that Plaintiff is
"still complaining of the same back and neck discomfort also,
which is a combination of his fibromyalgia and his radicular

---

[7]Defined as: "Relating to spondylitis."  STEDMANS MEDICAL
DICTIONARY (27th ed. 2000).  Spondylitis is defined as:
"[i]nflammation of one or more of the vertebrae."  Id.

7

symptoms."  (<u>Defendant's App.</u> at 503).

In January of 2000, and again in February 2000, an UNUM nurse named Thabi M. Mathebula requested more information from Dr. Getzoff.  Dr. Getzoff supplied additional records that indicated that Plaintiff had been undergoing psychiatric treatment.  He also supplied physical therapy records that noted that Plaintiff had experienced some improvement in his cervical and lumbar spine.  On March 23, 2000, Dr. Getzoff responded to questions Ms. Mathebula asked him in January and February 2000. In those responses, Dr. Getzoff stated that Plaintiff could not perform sedentary duties because of fibromyalgia.  (<u>Defendant's App.</u> at 358).  However, Dr. Getzoff did not indicate any other cause for the disability.

After again receiving updated information on July 5, 2000, an UNUM nurse reviewed those records, including a new APS from Dr. Schmitzer.  The nurse concluded that his prescribed restrictions and limitations may be excessive, but that additional records were needed before that could be decided. (<u>Defendant's App.</u> at 319).  UNUM received additional records, including an MRI report that indicated that Plaintiff suffered from mild disc degeneration, but that Plaintiff did not suffer from disc herniation.  (<u>Defendant's App.</u> at 306).

After UNUM received these records, Kay O'Reilly, an UNUM registered nurse, reviewed all of the medical records in

UNUM's file pertaining to Plaintiff.  She then issued a report which was reviewed and approved by Dr. Kanovsky, one of UNUM's physicians.  Based upon this review, UNUM decided that the objective findings regarding Plaintiff's cervical and lumbar problems would not preclude sedentary work.  Instead, UNUM concluded that Plaintiff's restrictions and limitations were based only on self reported conditions and subjective complaints.  Further, UNUM noted that Plaintiff had not submitted records of a psychiatric condition that appeared in Plaintiff's records.  (Defendant's App. at 285-86).  Accordingly, UNUM wrote to Plaintiff on October 11, 2000, and asked him to provide evidence of a physical disability by November 13, 2000.  (Defendant's App. at 280-82).

In early November, Dr. Getzoff spoke to an UNUM doctor named Dr. Gritton.  Based on that discussion, Dr. Gritton understood that Dr. Getzoff believed that Plaintiff had full time sedentary capacity.  However, Defendant concedes that Dr. Getzoff may dispute this interpretation of the discussion.  Indeed, UNUM's records indicate that Dr. Getzoff may not have felt that "he was heard" and that a person he spoke to at UNUM was, according to Dr. Getzoff, "rude" and "pushy."  (Defendant's App. at 265).

Then, on November 13, 2000, UNUM received MRI reports from Plaintiff.  They revealed small disc herniations at C3-4 and

C5-6, and a small bulge at L4-5.   (<u>Defendant's App.</u> at 261-63).

The next day, UNUM received Plaintiff's psychiatric treatment

records dating back to 1998 for depression and anxiety.

(<u>Defendant's App.</u> at 259).

On November 29, 2000, UNUM received x-rays of

Plaintiff's cervical, thoracic and lumbar spines from September

2000.  As to these x-rays, Dr. Getzoff explained that they "show

some mild cervical disc changes at C5-6.  Otherwise these are

normal."  (<u>Defendant's App.</u> at 208).  On November 2, 2000, Dr.

Getzoff noted that Plaintiff "has chronic pain consistent with

myofascial and fibromyalgia type pain."  (<u>Defendant's App.</u> at

206).  Nevertheless, in a November 20, 2000 letter to UNUM, Dr.

Getzoff explained that Plaintiff was under his care for both

fibromyalgia and degenerative disc disease in the cervical and

lumbar spine.  (<u>Defendant's App.</u> at 205).  Dr. Getzoff further

concluded that Plaintiff could not return to work, and that he

was disabled due to both the fibromyalgia and degenerative disc

disease.  <u>Id.</u>  Also included with the November 29, 2000

submissions was a November 28, 2000 letter from Dr. Javed

Mohsenian confirming that Plaintiff was undergoing treatment for

bipolar disorder and depression.  (<u>Defendant's App.</u> at 204).

After another review of Plaintiff's file on December

11, 2000 an UNUM nurse found, and Dr. Gritton agreed, that the

existence of a psychiatric disability was not substantiated and

concluded that "no objective findings preclude [Plaintiff] from

F/T [full time] sedentary capacity in regards to musculoskeletal

issues." (<u>Defendant's App.</u> at 186).

The next day, UNUM received a report from Dr.

Schmitzer. Dr. Schmitzer concluded that Plaintiff was totally

disabled based upon "significant neck and back pain, as well as

inappropriate jerky movements of his extremities, coupled with

significant MRI findings of the cervical and lumbar spine as well

as the diagnosis of fibromyalgia." (<u>Defendant's App.</u> at 192).

After receiving Dr. Schmitzer's report, UNUM's nurse

reviewed it and concluded that the MRI findings were not

significant enough to warrant total incapacity, and Dr. Gritton

agreed. (<u>Defendant's App.</u> at 184).

### C.    <u>UNUM's Decision to Deny Further Benefits and Plaintiff's Appeal</u>

UNUM denied Plaintiff's claim for continued benefits in

a January 2, 2001 letter explaining that the medical records did

not support a finding of disability. (<u>Defendant's App.</u> at 174-

177). Plaintiff sent UNUM a letter appealing its decision, but

UNUM denied Plaintiff's appeal in a March 13, 2001 letter.

(<u>Defendant's App.</u> at 81-82). In that letter, UNUM once again

concluded that Plaintiff's disability was covered by the Policy's

self-reported symptoms limitation. <u>Id.</u>

With these facts as background, the Court turns to

Defendant's Motion for Summary Judgment.

II.    **DISCUSSION**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A.    **Scope of Judicial Review**

When a federal court decides whether an administrator wrongfully denied disability benefits to a claimant, and the disability plan grants the administrator discretionary authority to determine eligibility benefits, or to construe terms of the plan, that review is limited as federal courts may only decide whether the denial was arbitrary or capricious.  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  Thus, in those cases, the district court may overturn a decision of an administrator only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  <u>Abnathya v. Hoffmann-LaRoche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993) (quoting <u>Adamo v. Anchor Hocking Corp.</u>, 720 F. Supp. 491, 500 (WD.Pa. 1989).

On the other hand, when an administrator operates under a conflict of interest, the Court must weigh that conflict as a factor in determining whether the administrator has abused its discretion.  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S.

12

101, 115 (1989).  The Third Circuit has held that a conflict of
interest exists when an insurance company both funds and
administers a plan, and courts must apply a heightened form of
arbitrary and capricious review.  <u>Pinto v. Reliance Standard Life
Ins. Co.</u>, 214 F.3d 377, 387 (3d Cir. 2000).  In <u>Pinto</u>, the Third
Circuit held that review under such a heightened standard should
be made using a "sliding scale," in which the intensity of review
increases proportionately with the intensity of the conflict of
interest.  <u>Pinto</u>, 214 F.3d at 393.

 Here, there is no dispute that Defendant had
discretionary authority under the Policy, nor do the parties
dispute that Defendant both funded and administered the Policy.
They do dispute what standard of review the Court should apply,
and whether Defendant wrongfully denied Plaintiff's benefits.

 Because Defendant has a conflict of interest, there is
no question that heightened scrutiny is required here.  <u>See</u>
<u>Pinto</u>, 214 F.3d at 392 ("heightened scrutiny is required when an
insurance company is both plan administrator and funder").
However, the Court must decide where this case falls on <u>Pinto</u>'s
sliding scale.  When applying the heightened form of the
arbitrary and capricious standard, courts should be deferential,
but not absolutely deferential, and "'[t]he greater the evidence
of conflict on the part of the administrator, the less
deferential [the] abuse of discretion standard.'"  <u>Id.</u> (quoting

13

08-01-2002    09:51 AM    Client Ref: 758301    From: PICS    To:    717 231 6637✦    Page 16

<u>Vega v. National Life Ins. Services, Inc.</u>, 188 F.3d 287, 297 (5th Cir. 1999).  Thus, evidence of a significant conflict of interest places a case at the far end of the sliding scale where the court reviews the administrator's decision with a "high degree of skepticism." <u>Pinto</u>, 214 F.3d at 395.

Evidence of procedural anomalies warrants application of more weight to the conflict along the sliding scale under the "heightened" abuse of discretion standard.  For example, in <u>Pinto</u>, the Court of Appeals for the Third Circuit found various procedural anomalies, such as when the insurance company reversed its initial decision to award benefits and ignored a staff worker's recommendation to reinstate benefits.  <u>Pinto</u>, 214 F.3d at 393-94.

In this case, the Court finds that it should view Defendant's decision to deny Plaintiff's claim with significant skepticism.  First, like the Defendant in <u>Pinto</u>, UNUM reversed its initial decision to award Plaintiff benefits, although the <u>Pinto</u> Court did so without receiving additional medical information, whereas UNUM did receive such information.  However, when Defendant reviewed those records, it concluded that "no objective findings preclude [Plaintiff] from F/T [full time] sedentary capacity in regards to musculoskeletal issues." (<u>Defendant's App.</u> at 186).  This is simply wrong.  As discussed at length above, Plaintiff's disability claim was supported by

14

objective evidence such as MRI and CT reports, Plaintiff's doctors' observations, and x-rays. UNUM even admitted that such evidence existed when, on April 16, 1999, Defendant reviewed Plaintiff's then available medical records and concluded that "CT and MRI studies well document multiple level changes in [Plaintiff's] cervical and lumbar spines." (Defendant's App. at 655). The administrative record's evidence of Plaintiff's disability certainly contains more than "no objective findings."

Other procedural anomalies exist here. After UNUM issued its October 11, 2000 letter, three of Plaintiff's physicians submitted reports. For example, in the November 20, 2000 letter to UNUM, Dr. Getzoff concluded that Plaintiff could not return to work, and that he was disabled due to both the fibromyalgia and degenerative disc disease. (Defendant's App. at 205). UNUM dismissed Dr. Getzoff's report without confronting it squarely, and denied Plaintiff's claim on January 2, 2001.

Also very troubling to this Court, is Defendants' use of nurses and non-treating/examining physicians to deny Plaintiff's claim after sustaining it for over a year. This court and others have found that use of non-treating physicians in this way is suspect. See Cohen v. Standard Insurance Company, 155 F. Supp.2d 346, 352 (E.D.Pa. 2001); Palmer v. University Med. Group, 994 F. Supp. 1221, 1235 (D.Or. 1998); see also Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1134,

15

08-01-2002        09:51 AM    Client Ref: 758301        From: PICS        To:        717 231 6637+    Page 18

1147 (9th Cir. 2001) (noting that failure to give special weight to a treating physician's opinion is evidence of conflict).  On November 30, 2000, Dr. Schmitzer reported to UNUM that Plaintiff was totally disabled due to "significant neck and back pain, as well as inappropriate jerky movements of his extremities, coupled with significant MRI findings of the cervical and lumbar spine as well as the diagnosis of fibromyalgia."  (<u>Defendant's App.</u> at 192).  He further found that Plaintiff suffered from small disc herniation at C3-4, narrowing of both neural foramina,[8] small right paramedian disc herniation at C5-6, narrowing of the right neural foramen, and central disc bulge at C4-5.  (<u>Defendant's App.</u> at 191).  He also stated that a lumbar MRI "showed early degenerative disease with a small central disc bulge at L4-5", and that "his examination revealed cervical and trapezius spasm, as well as lumbar spasm and tenderness with restriction of motion in all areas."  <u>Id.</u>

After only reviewing Dr. Schmitzer's letter, and not Plaintiff himself, an UNUM nurse concluded that Dr. Schmitzer's letter "does not provide any new objective medical data to substantiate a deterioration of clmnt's [sic] condition to warrant permanent disability."  It is difficult to accept the nurse's conclusion because UNUM never examined Plaintiff.

_____

[8] Foramina is defined as: "[a]n aperture or perforation through a bone or a membranous structure."  STEDMANS MEDICAL DICTIONARY (27th ed. 2000).

16

Further, under the Policy, Plaintiff is not required to provide "new objective medical data" to demonstrate a "deterioration" of his condition.  Thus, rejecting Dr. Schmitzer's conclusions on these grounds was arbitrary.

The record reveals more evidence of procedural anomalies and that Defendant's conflict improperly influenced its decision, but the evidence the Court has reviewed above warrants a standard of review that does not afford substantial deference to UNUM's decision to deny Plaintiff's claim for benefits.

**B.    Review of UNUM's Decision Under a Heightened Arbitrary and Capricious Standard**

The parties dispute whether, under the Policy, Plaintiff is "limited from performing the material and substantial duties of your regular occupation due to sickness or injury" and is therefore disabled.  (<u>Defendant's App.</u> at 700). Plaintiff's regular occupation under the Policy was a "purchasing manager".  (<u>Defendant's App.</u> at 664).  As explained earlier, that position is classified as sedentary and occasionally involved lifting, but was primarily a seated position allowing for alternatively sitting and standing.  However, Dr. Schmitzer concluded that Plaintiff could only sit for 4 hours out of an 8 hour work day, and perform only 1 hour of sedentary work in June 1999.  Then, in September 1999, Dr. Schmitzer concluded that Plaintiff could sit for 3 hours, and perform 3 hours of sedentary work.  Further, throughout the claim process, Dr. Schmitzer

17

maintained that Plaintiff was disabled.  As highlighted above, on

November 20, 2000, Dr. Schmitzer concluded that Plaintiff was

totally disabled based upon "significant neck and back pain, as

well as inappropriate jerky movements of his extremities, coupled

with significant MRI findings of the cervical and lumbar spine as

well as the diagnosis of fibromyalgia."  (Defendant's App. at

192).

     Similarly, after treating him throughout the claim

process, Dr. Getzoff stated on November 20, 2000 that "in

reviewing the most recent studies and examining him, I find that

he is still disabled and unable to return to work at this time"

because of his "fibromyalgia and degenerative disc disease in the

cervical and lumbar spine."  (Defendant's App. at 205).

     Despite the unwavering conclusions of Plaintiff's

treating physicians, UNUM's nurses and reviewing doctors

repeatedly referred only to those parts of Plaintiff's medical

records that were adverse to Plaintiff's claim when justifying

the denial of Plaintiff's claim.  For example, in a January 16,

2001 letter to Plaintiff, UNUM wrote that in his April 12, 1999

evaluation of Plaintiff's condition, Dr. Getzoff noted that

Plaintiff did not "appear to be chronically ill", that Plaintiff

had a "fairly good range of motion of [his] neck without pain or

loss of range of motion" and that "'[t]he patient's complaint of

chronic pain is out of proportion to the findings on the x-

rays.'" (<u>Defendant's App.</u> at 147). However, in that letter
UNUM ignores Dr. Getzoff's statement that Plaintiff's "workup has
shown that he had a CT of his cervical spine and a myelogram
showing disc bulges and spondylitic disc herniation at C5 and
C6." (<u>Defendant's App.</u> at 497). But more importantly, UNUM
ignores Dr. Getzoff's November 20, 2000 conclusion that Plaintiff
is totally disabled. Thus, even though Dr. Getzoff may have made
some findings in April 1999 that could be construed as adverse to
Plaintiff's claim, his ultimate conclusion was that Plaintiff is
disabled. Other courts have overturned adverse benefits
decisions based upon such selective reading of medical records.
<u>E.g.</u>, <u>Davies v. Paul Revere Life Ins. Co.</u>, 147 F. Supp.2d 347,
361 (M.D.Pa., 2001); <u>Rosenthal v. Long-Term Disability Plan of
Epstein, Becker & Green, P.C.</u>, No. CIV-98-4246, 1999 WL 1567863
at *13 (C.D.Cal. Dec. 21, 1999).

The record further reveals that UNUM acted more like
Plaintiff's adversary than an impartial judge of his claim for
benefits. Courts have admonished such behavior, and have
considered such behavior as grounds for overturning a benefits
decision. <u>E.g.</u>, <u>Davies</u>, 147 F. Supp.2d at 360; <u>Rosenthal</u>, 1999
WL 1567863, at *14. Not only did UNUM selectively read the
medical records, it offered conclusory findings in the face of
objective medical evidence and well reasoned opinions by
Plaintiff's treating doctors. For example, and as discussed

19

earlier, UNUM's finding that "no objective findings preclude
[Plaintiff] from F/T [full time] sedentary capacity in regards to
musculoskeletal issues" (<u>Defendant's App.</u> at 186) is without
basis.  Plaintiff's disability claim was supported by objective
evidence such as MRI and CT reports, Plaintiff's doctors'
observations, and x-rays.  Likewise, after reviewing Plaintiff's
file on December 11, 2000, an UNUM nurse found in a report, and
Dr. Gritton agreed, that Plaintiff's medical records "do not
substantiate a sudden deterioration of clmnt's [sic] condition."
(<u>Defendant's App.</u> at 186).  However, that report fails to explain
the reasoning supporting that conclusion, and the Policy does not
require that Plaintiff "substantiate a sudden deterioration" of
his condition.  The Third Circuit has held that it is arbitrary
and capricious for an administrator to require a claimant to
satisfy conditions that are not part of a policy.  <u>E.g.</u>, <u>Mitchell
v. Eastman Kodak Co.</u>, 113 F.3d 433, 44 (3d Cir. 1997) (finding it
arbitrary and capricious to require the claimant to submit
clinical evidence of the etiology of his allegedly disabling
symptoms when the Plan did not impose such a requirement); <u>cf.</u>
<u>Dewitt v. Penn-Del Directory Corp.</u>, 106 F.3d 514, 520 (3d Cir.
1997) (administrator's discretionary interpretation of plan "may
not controvert the plain language of the [plan] document").

The Court has fully reviewed the administrative record,
and giving UNUM's decision limited deference, finds that

Defendant arbitrarily and capriciously denied Plaintiff's claim
for benefits. Indeed, objective medical evidence supports his
claim that degenerative disc disease disabled the Plaintiff, and
the record further indicates that fibromyalgia was a secondary
condition contributing to the disability.[9] Further, because the
Court finds that the administrative record is complete, UNUM
reached an arbitrary and capricious result, and that the evidence
points only to a finding of disability, the Court will enter
judgment in favor of the Plaintiff.[10] See Cohen, 155 F. Supp.2d

_____

[9]Defendant argues that Plaintiff's claim of disability
is based solely on self-reported symptoms, and therefore that
UNUM was only required to pay Plaintiff disability benefits for
12 months. However, as discussed throughout today's opinion,
Plaintiff's claim of disability is also supported by objective
medical evidence. To the extent Defendant argues that
Plaintiff's claims of psychiatric illness and fibromyalgia are
insufficient alone to find Plaintiff disabled, the Court need not
address that issue. The record indicates that Plaintiff is
disabled because of degenerative disc disease and that
fibromyaligia is merely a secondary condition contributing to
Plaintiff's disability. E.g., (Defendant's App. at 186).

[10]A district court may grant summary judgment in favor
of a non-movant where it believes that the movant has had
adequate notice of grounds for that judgment, and where there is
clear support for such judgment. See, e.g., Banks v. Lackawanna
County Com'rs, 931 F. Supp. 359, 363 n.7 (M.D.Pa. 1996); Peiffer
v. Lebanon School Dist., 673 F. Supp. 147, 152 (M.D.Pa. 1987);
affirmed, 848 F.2d 44 (3d Cir. 1988); 10A Charles Alan Wright,
Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure,
§ 2720 at 29-35 (1983). Here, the parties have been given ample
opportunity to present evidence and argument on the issue of
summary judgment. Although the Plaintiff argues that there are
issues of material fact here, Plaintiff points to evidence
outside the administrative record to support that argument. As
Defendant correctly argues, the Court may not consider such
evidence. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439
(3d Cir. 1997). Moreover, the Defendant concedes that "summary

21

at 355 (entering judgment for the Plaintiff); <u>Davies</u>, 147 F.

Supp.2d at 360 (same); <u>Levinson v. Reliance Standard Life Ins.</u>

<u>Co.</u>, 245 F.3d 1321, 1327-28 (11th Cir. 2001).

     An appropriate order will follow.

Clarence C. Newcomer, S.J.

---

judgment is appropriate because there is no genuine issue of
material fact." (<u>Defendant's brief in support of its Motion for
Summary Judgment</u>, at 15). In this case, the record is complete,
the parties may not supplement it, and the only competent
evidence in this matter, namely the opinions of Plaintiff's
treating physicians, requires a finding of disability.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R. JOHN HOLZSCHUH          :          CIVIL ACTION
       Plaintiff,          :
                   :
       v.          :
                   :
UNUM LIFE INSURANCE COMPANY          :
OF AMERICA          :
       Defendant.          :          NO.  02-1035

**O R D E R**

AND NOW, this /7 day of July, 2002, the Court hereby
ORDERS as follows:

    1.   Defendant's Motion for Summary Judgment is DENIED.

    2.   Summary Judgment is GRANTED in favor of the
Plaintiff.  The Court will enter its judgment after the parties
comply with the procedure in paragraph 3.

    3.   The parties shall make every effort to stipulate
to a proposed Order awarding Plaintiff relief that conforms to
the Court's opinion accompanying this Order, and submit said
proposed Order by Tuesday, July 23, 2002.  If the parties cannot
so stipulate, the parties shall submit proposed Orders and a
brief not to exceed three (3) pages addressing the propriety of
their proposed Orders by Tuesday, July 23, 2002.  The conference

08-01-2002    09:51 AM    Client Ref: 758301    From: PICS    To:    717 231 6637+    Page 26

presently scheduled for July 23, 2002 is hereby CONTINUED pending final resolution of this matter.

AND IT IS SO ORDERED

Clarence C. Newcomer, S.J.

ENTERED

JUL 1 2002

CLERK OF COURT