# KELLY, MCLAUGHLIN, FOSTER,
# BRACAGLIA, DALY, TRABUCCO & WHITE, LLP

ATTORNEYS AT LAW
1617 JFK BOULEVARD
SUITE 1690
PHILADELPHIA, PA 19103-1815

TELEPHONE (215) 790-7900
FAX (215) 985-0675

620 W. GERMANTOWN PIKE
SUITE 350
PLYMOUTH MEETING, PA 19462-1056
TELEPHONE (610) 941-7900
FAX: (610) 941-8133

900 HADDON AVENUE
SUITE 332
COLLINGSWOOD, NJ 08108-1903
TELEPHONE: (856) 869-3100
FAX: (856) 854-4233

OUR FILE: LIBH17307

August 9, 2002

The Honorable Yvette Kane
United States District Court
Middle District of Pennsylvania
Federal Building, Room 830
222 Walnut Street
Harrisburg, PA 17108

**FILED**
**HARRISBURG**

AUG 21 2002

MARY E. D'ANDREA, CLERK
Per:_____
DEPUTY CLERK

Re: Howard v. Liberty Life Assurance Company of Boston
Docket No.: 1-CV-01-797

Dear Judge Kane:

We are in receipt of the Plaintiff's counsel's recent letters to you and we are submitting herewith our response to those letters.

Counsel has forwarded to you a copy of the Opinion of the Court in Holzschuh v. UNUM Life Ins. Co. of America. (E.D. Pa. 2002, 2002 WL 1609983), suggesting that it is similar to the present case. We submit to Your Honor that the facts of that case are entirely different from those presented by this case.

Holzschuh involved a claim for long-term disability benefits pursuant to a policy which was apparently a part of an ERISA Plan. The carrier initially paid benefits, then terminated those benefits after approximately 18 months. Plaintiff filed suit against the carrier and the carrier moved for Summary Judgment. The Court denied this Motion and entered Summary Judgment in favor of the Plaintiff.

In its decision, the Court considered the scope of review of the carrier's decision and determined that it should be viewed with "significant skepticism". *Id*. at 6. The court made this determination because it found a number of procedural anomalies in the handling of the case. These anomalies included the manner in which UNUM considered the medical records submitted by Plaintiff. It stated that UNUM had reversed its initial decision to award Plaintiff benefits based upon an incorrect reading of the medical information submitted by Plaintiff. It said that the carrier had based its decision upon the conclusion that no objective finding precluded the Plaintiff from the performance of full-time sedentary work. It said that this finding was simply

Honorable Yvette Kane
August 9, 2002
Page 2

wrong in that the Plaintiff's claim was supported by objective evidence such as MRI and CT reports, Plaintiff's doctors' observations and X-rays. (*Id.* at 6). The Court also noted other procedural anomalies including the dismissal of the report of one of the Plaintiff's attending physicians without confronting that report squarely and the reliance upon the use of nurses and non-treating/examining physicians to deny Plaintiff's claim after sustaining it for over a year. The Court appeared to express concern that a UNUM nurse had concluded that a treating physician's letter did not provide any new objective medical data to substantiate the deterioration of the Plaintiff's condition and it noted that it was difficult to accept the nurse's conclusion because UNUM had never examined the Plaintiff. (*Id.* at 7).

It is submitted that the facts of the present case are entirely different from the facts of the Holzschuh case. Initially, there was no reversal of the carrier's decision here. Furthermore, there is no issue in this case as to whether the reports of the Plaintiff's treating physician were considered carefully by the carrier. To the contrary, each report was carefully reviewed by the carrier. Its review of all reports which were in its possession at that time were summarized in its letter of July 25, 2000. (Exhibit D-1 pp. 171-175) Furthermore, when a subsequent report of Dr. Powers was received on July 26, 2000 by Liberty Life, that report was also carefully considered. That report stated an opinion which was contrary to the opinions which Dr. Powers had previously stated and, as a result, it was determined that a Functional Capacity Evaluation was required. This Functional Capacity Evaluation took place and it indicated that Mr. Howard was capable of sedentary work. Numerous efforts were made to discuss the report of the Functional Capacity Evaluation with Dr. Powers but these efforts were unsuccessful. There was absolutely no failure to reconsider the reports of the Plaintiff's treating physician in this case. The evidence is to the contrary.

Furthermore, in Holzschuh, Judge Newcomer expressed concern that a nurse employed by the carrier formed certain conclusions but that UNUM had never had the Plaintiff examined. In the present case, Mr. Howard was examined by an independent organization which performed a Functional Capacity Evaluation. Finally, in Holzschuh, the Court found that the carrier had selectively read medical reports. As stated above, there was no such selective reading here. To the contrary, each medical report was carefully considered by the carrier and efforts were made to speak to the Plaintiff's physician regarding objective testing results which were different from the doctor's opinions.

It is submitted that, for these reasons, the Holzschuh case lends no support to the Plaintiff's claim.

With regard to the additional matters raises in counsel's letter of August 5, 2002, we do not recall that the Claim Procedure Manual was introduced into evidence at the trial of this action. If it was introduced, there was no proof that it was not followed in the handling of this claim.

Honorable Yvette Kane
August 9, 2002
Page 3

      Plaintiff also objects to Proposed Finding of Fact No. 65 in that it was not introduced into evidence at trial. That proposed finding involves the definition of sedentary work which is set forth in the United States Department of Labor's Dictionary of Occupational Titles. It is submitted that this is the type of publication which can be judicially noticed by the Court. (See, e.g. Holzschuh v. UNUM, supra at fn. 5, 7 and 8, containing references to Webster's Dictionary and Stedman's Medical Dictionary).

      Finally, it has been asserted that the trial brief submitted by Liberty Life Insurance Company of Boston did not conform to the briefing rules promulgated by the United States District Court for the Middle District of Pennsylvania as it was not in 14-point font, nor was it double-spaced. We agree that the brief was not in 14-point font but we disagree that it is not double-spaced. Furthermore, we disagree with the assertion that, if it were in 14-point font, it would not comply with the Court's Rules.

We reviewed the Court's Rules in connection with the preparation of this brief. LR 39.7 states that a trial brief is to conform to the requirements of LR 7.8 with regard to content and length. We submit that our brief fully complied with all requirements of LR 7.8 except for the requirement that it be printed in 14-point font. We did not, but should have, recognized that the 14-point font rule also applied to briefs. If the brief had been printed in 14-point font, its length would have exceeded 15 pages. Its word count, however, would not have exceeded 5,000 words, as the word-processing software used to print the brief indicates that it contains 4,874 words. It would therefore have complied with LR 7.8(b)(2) if we had filed with it a Certificate that it complied with the word-count limit described in that subsection and provided the additional materials required by L.R. 7.8 (a).

      Our failure to fully comply with the Rules was unintentional and we apologize to the Court for our failure to follow them. Should Your Honor wish us to do so, we will promptly re-file the brief in compliance with the Rules.

      We appreciate the Court's consideration of this matter.

                                            Respectfully submitted,

                                            Kelly, McLaughlin, Foster,
                                            Bracaglia, Daly, Trabucco & White, LLP

                                            William C. Foster

WCF/ss

cc/John C. Dowling, Esquire