**ORIGINAL**

FILED
HARRISBURG, PA

NOV 0 4 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD | : |
| Plaintiff | : |
| v. | : CASE NO: 1:CV-01-797 |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : JUDGE KANE |
| Defendant | : JURY TRIAL DEMANDED |

## MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiff, Craig M. Howard, by and through counsel, Rhoads & Sinon LLP, files the within Motion For Leave to File an Amended Complaint as follows:

1. This action was instituted on March 5, 2001 in the Court of Common Pleas of Dauphin County, Pennsylvania.

2. On May 7, 2001, the action was removed to the District Court for the Middle District of Pennsylvania.

3. On July 12, 2001, Plaintiff filed an Amended Complaint in this matter, in which Plaintiff dismisses his claim against Defendant under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371, without prejudice.

4. The reason for dismissal of the bad faith claim was based upon potential preemption by ERISA.

5. After discovery, on July 22, 2002, this Court held a bench trial to resolve this dispute.

6. On July 29, 2002, Eastern District of Pennsylvania Senior Justice Newcomer decided Rosenbaum v. UNUM Life Insurance Co., 2002 U.S. Dist. LEXIS 14155 (E.D. Pa. 2002). A copy is attached hereto as Exhibit "A".

7. Based upon this decision and the recent decisions of the United States Supreme Court, Plaintiff seeks leave to file an amended complaint, in the form attached hereto as Exhibit "B".

8. In Rosenbaum, the Court ruled, for the first time, that, based upon two recent decisions of the United States Supreme Court, ERISA does not preempt a bad faith claim.

9. Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted, absent undue delay, bad faith, a dilatory motive, or futility, none of which are present here.

10. Defendant will not be prejudiced in allowing Plaintiff to advance such a claim.

11. However, Plaintiff will be substantially prejudiced if he is not affored an opportunity to pursue his bad faith claim.

**WHEREFORE**, Plaintiff requests this Honorable Court grant the within Motion and grant Plaintiff Leave to File an Amended Complaint.

Respectfully Submitted,
RHOADS & SINON LLP

_____
Robert J. Tribeck
Pa. I.D. #74486
One South Market Square
P.O. Box 1146
Harrisburg, Pa. 17108-1146
717.233.5731

Attorney for Plaintiff

LEXSEE 2002 u.s. dist lexis 14155

JOEL ROSENBAUM Plaintiff v. UNUM LIFE INSURANCE CO. OF AMERICA Defendant

CIVIL ACTION, NO. 01-6758

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 14155; 28 E.B.C. 2022

July 29, 2002, Decided

July 29, 2002, Filed

**DISPOSITION:**
Defendant's Motion to Dismiss granted, in part, and denied, in part. Specifically, Counts II, IV, VI and VII are dismissed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** After being denied disability insurance benefits, plaintiff insured sued defendant insurer, asserting, inter alia, various claims under state law. Arguing that the insured's claims were preempted by the Employee Retirement Income Security Act, the insurer moved to dismiss the insured's state-law claims.

**OVERVIEW:** The insured conceded that ERISA preempted all of his state-law claims but one, his bad faith claim under 42 Pa. Cons. Stat. § 8371. The key issue was whether § 8371 fell within ERISA's saving clause, ERISA § 514(b)(2)(A), 29 U.S.C.S. § 1144(b)(2)(A). Existing precedent held that the statute did not fall within the saving clause; however, recent United States Supreme Court decisions had modified the analysis for determining whether a statute fell within the saving clause. Based on that newer case law, the court concluded that the statute did fall within the saving clause and, thus, ERISA did not preempt the insured's bad faith claim. First, a common sense view of ERISA's saving clause established that 42 Pa. Cons. Stat. § 8371 regulated insurance. Second, § 8371 met two of the three McCarran-Ferguson factors. The statute did not appear to spread the policyholder's risk. Section 8371, however, played an integral role in the policy relationship between the insured and the insurer; authorized imposition of special damages, so it gave the insured a remedy not originally bargained for. Section 8371 also was limited to entities within the insurance industry.

**OUTCOME:** The court granted, in part, and denied, in part, the motion to dismiss. The court dismissed those claims the insured conceded were preempted, but the court declined to dismiss the insured's bad faith claim against the insurer.

**CORE CONCEPTS**

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
The saving clause of the Employee Retirement Income Security Act (ERISA) exempts from preemption any law of any state which regulates insurance. ERISA § 514(b)(2)(A), 29 U.S.C.S. § 1144(b)(2)(A). The United States Supreme Court has applied the following two prong approach in determining whether a statute "regulates insurance." First, the Court considers whether from a "common-sense view of the matter," the state statute in question regulates insurance. Second, the Court considers the following three factors in determining whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U.S.C.S. § 1011 et seq.,: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; (3) whether the practice is limited to entities within the insurance industry.

Case 1:01-cv-00797-YK    Document 51    Filed 11/04/2002    Page 5 of 16

Page 2

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
A state statute need not meet each of the McCarran-Ferguson factors in order to qualify for the Employee Retirement Income Security Act's saving clause. Rather, the McCarran-Ferguson factors are "considerations to be weighed" in determining whether a state law regulates insurance.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
A common-sense view of 29 U.S.C.S. § 1144(b)(2)(A), the saving clause of the Employee Retirement Income Security Act, clearly establishes that Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, "regulates insurance" and is specific to the insurance industry.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, limits its application to actions arising under an insurance policy.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
The Pennsylvania Supreme Court has recognized a distinction between those remedies available at common law and those available through Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, with regard to bad faith claims.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
Regarding the McCarran-Ferguson Test for whether a statute falls within the Employee Retirement Income Security Act's savings clause, a statute plays an integral part in the policy relationship between the insurer and the insured where it affords the parties rights or remedies other than those originally bargained for, in effect creating a new mandatory contract term.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
42 Pa. Cons. Stat. § 8371 provides particular remedies for incidents of bad faith and was designed exclusively for use in the insurance industry. Specifically, it allows the court to award a particular amount of interest, assess attorney's fees and award punitive damages where breaches of insurance contracts are concerned.

**COUNSEL:**
[*1] For JOEL ROSENBAUM, M.D., PLAINTIFF: STEWERT L. COHEN, KESSLER, COHEN & ROTH, PHILADELPHIA, PA USA. WILLIAM D. MARVIN, KESSLER COHEN & ROTH, PHILADELPHIA, PA USA.

**JUDGES:**
Clarence C. Newcomer, S.J.

**OPINIONBY:**
Clarence C. Newcomer

**OPINION:**

NEWCOMER, S.J.

July 29, 2002

Presently before the Court is Defendant's Motion to Dismiss and Plaintiff's Answer. For the reasons outlined below, this Court will grant Defendant's motion, in part.

### BACKGROUND

Plaintiff brought suit after being denied long-term disability insurance benefits under the Defendant's employee benefit plan, which is governed by the Employee Retirement Income Security Act (ERISA). Defendant moves to dismiss Plaintiff's state law claims by arguing ERISA preemption. With the exception of Count X, a bad faith claim brought under 42 Pa.C.S. § 8371 (Pennsylvania's bad faith statute for insurance claims), the parties agree that Plaintiff's state law claims under the employee benefit plan are preempted.

### DISCUSSION

In his Answer to Defendant's Motion to Dismiss, Plaintiff concedes that, with the exception of his bad faith claim (Count X), his state law claims (Counts I, III, V, VII, IX) are preempted by ERISA. I, therefore, dismiss these claims [*2] without further discussion and turn to the key issue before this Court, that is, whether Pennsylvania's bad faith statute for insurance claims, 42 Pa.C.S. § 8371, is preempted by ERISA. While this issue has not been addressed by the Third Circuit, this Court has, in the past, consistently answered this question in the affirmative. In fact, no court has yet found to the contrary. However, a new trend in the federal law, led by the United States Supreme Court's decision in Unum Life Insurance Co. of America v. Ward, 526 U.S. 358, 143 L. Ed. 2d 462, 119 S. Ct. 1380 (1999), and its recent decision in Rush Prudential HMO, Inc. v. Moran, 153 L. Ed. 2d 375, 122 S. Ct. 2151 (2002), warrants a re-examination of this important question.

At the heart of this issue is ERISA's saving clause, which exempts from preemption "any law of any State which regulates insurance." ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has applied the following two prong approach in determining

Case 1:01-cv-00797-YK   Document 51   Filed 11/04/2002   Page 6 of 16

Page 3

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

whether a statute "regulates insurance." First, the Court considers whether from a "common-sense view of the matter," the state statute in question [*3] regulates insurance. UNUM, 526 U.S. at 367. Second, the Court considers the following three factors in determining whether "the regulation fits within the 'business of insurance' as that phrase is used in the McCarran-Ferguson Act," 59 Stat. 33, as amended, 15 U.S.C. § 1011 et seq.:

(1) Whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) Whether the practice is an integral part of the policy relationship between the insurer and the insured;

(3) Whether the practice is limited to entities within the insurance industry.

UNUM, 526 U.S. at 367. UNUM marked a significant change in the application of the Common-sense/McCarran-Ferguson Test. For the first time, the Court explained that a state statute need not meet each of the McCarran-Ferguson factors in order to qualify for ERISA's saving clause. n1 Id. at 373 ("We reject UNUM's assertion that a state regulation must satisfy all three McCarran-Ferguson factors in order to 'regulate insurance.'") Rather, the UNUM Court found that the McCarran-Ferguson factors are "'considerations to be weighed' in determining [*4] whether a state law regulates insurance." Id. This decision clarified the Court's previous rulings (i.e., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985)), which have been solely interpreted to require compliance with each of the McCarran-Ferguson factors. UNUM, 526 U.S. at 373. Most recently, in Rush, the Supreme Court reaffirmed UNUM's holding by finding an Illinois State statute qualified under ERISA's saving clause by meeting two of the McCarran-Ferguson factors. Rush, 122 S. Ct. at 2163. We turn now to an application of the Common-sense/McCarran-Ferguson Test with regard to § 8371.

> n1 Despite the guidance offered by UNUM and Rush, it is not clear
>
> whether a statute must satisfy more than one of the McCarran-Ferguson factors in order to be covered by ERISA's savings clause. Further, the Third Circuit has not ruled on this issue.

[*5]

### I. Common-sense View

A common-sense view of ERISA's saving clause clearly establishes that Pennsylvania's bad faith statute "regulates insurance" and is specific to the insurance industry. In fact, one need look no further than the statute's title, "Actions on insurance policies," in discerning its scope. Furthermore, the statute limits its application to "actions arising under an insurance policy...." Finally, the Pennsylvania Supreme Court has recognized a distinction between those remedies available at common law and those available through the instant statute with regard to bad faith claims. The Birth Center v. St. Paul Companies, Inc., 787 A.2d 376, 403 2001 Pa. LEXIS 2759 (Pa. 2001). The Court's holding in Birth Center emphasizes the particular focus of this statute concerning the insurance industry. Thus, it is clear that the legislative intent behind § 8371 was to "regulate insurance."

### II. McCarran-Ferguson Test

*A. Spreading Policyholder's Risk*

Because it serves solely as a special damages section, it is doubtful that the provisions of § 8371 spread a policyholder's risk. Since the McCarran-Ferguson factors are mere guideposts [*6] and need not be unanimously met, we shall move on to a consideration of the second factor. Rush, 122 S. Ct. at 2163.

*2. Integral Part of the Policy Relationship*

This Court is mindful of its previous finding that § 8371 did not play an integral part in the policy relationship between the insurer and the insured. Zimnoch v. ITT Hartford, et al., 2000 U.S. Dist. LEXIS 2846, Civ.A. No. 99-6594 at *18 (E.D.Pa. March 14, 2000) (Newcomer, J.). However, in light of the Supreme Court's recent holding in Rush and this Court's subsequent re-examination of UNUM, this Court concludes that its previous finding is no longer suitable.

In UNUM, the Supreme Court found that a California statute requiring an insurer to "prove prejudice before enforcing a timeliness-of-claim provision" created a mandatory contract term between the two parties. UNUM, 526 U.S. at 375. In Rush, the Court examined an Illinois statute requiring HMOs to provide independent review of disputes with primary care physicians, and to cover any costs deemed medically necessary by the independent reviewer. The Court found that the statute provided a "legal [*7] right to the insured" and an "obvious" contractual requirement which was "an integral part of the policy relationship." Rush, 122 S. Ct. at 2164. These cases suggest that a statute plays an integral part in the policy where it affords the parties

Case 1:01-cv-00797-YK   Document 51   Filed 11/04/2002   Page 7 of 16

Page 4

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

rights or remedies other than those originally bargained for, in effect creating a new mandatory contract term.

Just as the statutory provisions in UNUM and Rush afford the parties rights or remedies other than those originally bargained for, § 8371 creates mandatory contract terms providing for special damages. Here, the insured gain the right to pursue the following remedies: punitive damages, attorney fees and a specified amount of interest. Therefore, the Court finds that the statute clearly plays an integral role in the policy relationship.

Although other Supreme Court cases, such as Pilot Life, address preemption of bad faith claim law, this Court cautions the reader not to confuse the case at hand with cases like Pilot Life. In Pilot Life the Supreme Court found that the Mississippi law of bad faith did not satisfy the second factor of the McCarran-Ferguson Test. Pilot Life, 481 U.S. at 51. [*8] However, Pilot Life dealt with common law claims of bad faith unspecific to the insurance industry, while the bad faith claim before this Court is derived from a statute specific to the insurance industry. Id. Consequently, the Pilot Life Court found the bad faith law's connection to the policy relationship to be "attenuated at best" based on the fact that it was "developed from general principles of tort and contract law available in any Mississippi breach of contract case." Id. In addition, "the common law of bad faith does not define the terms of the relationship ... it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." Id. In contrast, § 8371 provides particular remedies for incidents of bad faith and was designed exclusively for use in the insurance industry. Specifically, it allows the court to award a particular amount of interest, assess attorney's fees and award punitive damages where breaches of insurance contracts are concerned.

*C. Limited to Entities within the Insurance Industry*

The third factor, which requires [*9] the statute to be limited to entities within the insurance industry, is satisfied for many of the same reasons that the statute satisfies the requirements of the common-sense test. Rush, 122 S. Ct. at 2164.

**CONCLUSION**

In conclusion, this Court finds that the Common-sense View Test is easily satisfied by § 8371. Furthermore, factors two and three of the McCarran-Ferguson Test are also satisfied. Therefore, this Court holds that § 8371 is not preempted by ERISA as it falls under ERISA's saving clause.

AN APPROPRIATE ORDER WILL FOLLOW.

**ORDER**

AND NOW, this 29th day of July, 2002, upon consideration of Defendant's Motion to Dismiss (Document 2) and Plaintiff's Answer, it is hereby ORDERED that said motion is GRANTED, in part, and DENIED, in part. Specifically, Counts II, IV, VI and VII are DISMISSED.

AND SO IT IS ORDERED.

Clarence C. Newcomer, S.J.

B

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD | : |
| Plaintiff | : |
| v. | : CASE NO: 1:CV-01-797 |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : JUDGE KANE |
| Defendant | : JURY TRIAL DEMANDED |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Craig M. Howard, by and through his attorneys, Rhoads & Sinon LLP, files this Second Amended Complaint and states as follows:

## PARTIES

1. Plaintiff, Craig M. Howard (hereinafter "Howard") is an adult individual, 43 years of age, who resides at 25 South Lingle Avenue, Palmyra, Lebanon County, Pennsylvania.

2. Defendant, Liberty Life Assurance Company of Boston (hereinafter "Liberty") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, MA 02117.

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 et seq., and jurisdiction of this Court is invoked under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

4. Venue is proper in the jurisdiction pursuant to 28 U.S.C. § 1391 because Liberty regularly conducts business in Dauphin County selling health insurance throughout Central Pennsylvania.

## BACKGROUND

5. On or about August 1, 1998, Liberty issued to Penn State Geisinger Health System, a group benefits plan under plan number GF3-810-252761-01 (attached hereto and marked as Exhibit "1"), which policy provided coverage for the employees of the Milton S. Hershey Medical Center under Penn State Geisinger Health System. The Plan Identification Numbers are a.) Employer IRS Identification No. 23-2164794; b) Plan No. LTD-513.

6. Plaintiff became employed by the Milton S. Hershey Medical Center in 1987 as a Staff Assistant and as such was an employee of the employer Milton S. Hershey Medical Center under said insurance policy.

7. The Penn State Geisinger long-term disability provision under which Plaintiff is covered, provides:

> "Disability" or "Disabled" means:
>
> i. During the Elimination Period and the next 24 months of Disability you are unable to perform all of the material and substantial duties of your occupation on an Active Employment basis because of an Injury or Sickness; and
>
> ii. After 24 months of benefits have been paid, you are unable to perform, with reasonable continuity, all of the material and substantial duties of your own or any other occupation for which you are or become reasonably fitted by training, education, experience, age and physical and mental capacity.

8. Plaintiff has been totally and continuously disabled as said disability is defined above since January 1, 2000 and his long-term disability subject to 180 day elimination period was effective July 1, 2000.

9. Plaintiff as an active, fulltime employee is entitled to 2/3 of his basic bimonthly wage of $1,045.60 for such time as his disability shall continue.

10. Plaintiff has made claim upon Defendant for benefits due to date and continuing into the future until Plaintiff's disability ceases.

11. Plaintiff has fully complied with all the conditions in order to receive such benefits.

12. Plaintiff has made proper demand upon Defendant for payment of the benefits due and to be due in the future.

13. Defendant through its authorized agent, servant or employee Chuck Johnson, (designated Appeal Review Consultant) through letter to Plaintiff's attorney of February 28, 2001, has denied Plaintiff's claim stating, "At this time, Mr. Howard's administrative rights to review have been exhausted and no further reviews will be conducted by Liberty Life Assurance Company of Boston", and concluding, "We have rendered our final determination of this claim and will now close our file".

**COUNT I – EMPLOYEE RETIREMENT INCOME SECURITY ACT
PLAINTIFF V. LIBERTY**

14. Plaintiff incorporates herein by reference paragraphs 1 through 13.

15. Defendant insurance company pays benefits out of its own funds.

16. Defendant insurance company determines benefit eligibility and administers plan funds.

17. Defendant insurance company both determines eligibility for benefits and pays the benefits out of its own funds.

18. Therefore, there is a conflict of interest and bias amounting to an arbitrary and capricious denial decision.

19. Defendant's decision as set forth above denies Plaintiff of the rights and benefits due under the above mentioned policy and was bias and prejudicial as the result of the inherent conflict of interest.

WHEREFORE, Plaintiff requests judgment be entered against Defendant as follows:

(a) Ordering Defendant to pay Plaintiff all benefits due under said policy for continuing long-term disability benefits;

(b) Awarding Plaintiff pre-judgment interest from the inception of Plaintiff's disability until the date of judgment;

(c) Awarding Plaintiff attorney's fees, court costs and all other reasonable costs incurred; and

(d) Granting Plaintiff such other and further relief as the court may deem just and proper.

## COUNT II - BAD FAITH
## <u>PLAINTIFF v. LIBERTY</u>

20. Plaintiff incorporates herein by reference paragraphs 1 through 19.

21. Pursuant to the insurance agreement between Plaintiff and Liberty, Liberty was under a duty at all times relevant hereto to act in good faith towards its insured, Howard.

22. The aforesaid duty included a requirement that Liberty consider the interests of Plaintiff as a factor in deciding whether to accept Howard's long-term disability claim.

23. Liberty materially breached the duty of good faith toward Howard, and, pursuant to 42 Pa. C.S.A. § 8371, Liberty's conduct in such breach was in bad faith against Plaintiff in that Liberty had no reasonable basis for denying benefits and Liberty knew or recklessly disregarded the lack of a reasonable basis for such denial in that Liberty:

 (a) Recklessly ignored the extensive medical findings of Plaintiff's treating physicians attesting to his total disability as defined within the parameters of Defendant's insurance policy;

 (b) Recklessly relied on the incomplete and invalid findings of its own Medical Director who did not examine Plaintiff but merely reviewed his medical file, and on incomplete and incorrect examination by a physical therapist;

(c) Failed to have Plaintiff examined by a physician of its choosing or to arrange for an independent medical examination;

(d) Refused to pay Plaintiff's physician, Dr. Powers, for additional medical documentation in support of Plaintiff's claim;

(e) Ignored a letter from Plaintiff's employer attesting to his inability to perform work allowing for hourly brakes as recommended by Plaintiff's doctor; and attesting to his inability to serve in his previous position at Hershey Medical Center; and

(f) Advised Plaintiff that his claim was denied before receiving its Medical Director's findings or the results of its functional capacity evaluation.

24. At all times relevant hereto, Plaintiff fully complied with all obligations, terms and conditions of the insurance policy with Liberty.

25. As a result of Liberty's bad faith, Plaintiff is entitled and hereby seeks damages pursuant to 42 Pa. C.S.A. § 8371 as follows:

(a) Interest on the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus three (3) percent;

(b) Punitive damages against Liberty; and

(c) Court costs and attorneys fees against Liberty.

Respectfully Submitted,

RHOADS & SINON LLP

By: _____
Robert J. Tribeck, Esquire
Attorney I.D. No. 74486
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
717.233.5731

Attorneys for Plaintiff

Date: _____

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD | : |
| Plaintiff | : |
| v. | : CASE NO: 1:CV-01-797 |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : JUDGE KANE |
| Defendant | : JURY TRIAL DEMANDED |

## CERTIFICATE OF NONCONCURRENCE

I, Robert J. Tribeck, certify that I have communicated with Defendant's counsel regarding Craig M. Howard's Motion to Leave to File an Amended Complaint, and that Defendant's counsel did not respond to Mr. Howard's request to file said Motion.

_____
Robert J. Tribeck

448831.1