# ORIGINAL

*5-3*
*11/18/02*

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

NOV 15 2002

MARY E. D'ANDREA, CLERK
Per: _____ Deputy Clerk

| | | |
|---|---|---|
| CRAIG M. HOWARD | : | |
| Plaintiff | : | |
| v. | : | CASE NO: 1:CV-01-797 |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : | JUDGE KANE |
| Defendant | : | JURY TRIAL DEMANDED |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..:

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff, Craig M. Howard, by and through his attorneys, Rhoads & Sinon LLP, files this Brief in Support of Plaintiff's Motion for Leave to File Second Amended Complaint, and states as follows:

## I.    PROCEDURAL HISTORY

On March 5, 2001, Plaintiff Craig M. Howard (hereinafter "Howard") filed a Complaint against Liberty Life Assurance Company of Boston (hereinafter

449999.1

"Liberty") in the Court of Common Pleas of Dauphin County, Pennsylvania. Count I of the Complaint asserted Breach of Contract against Liberty. Count II of the Complaint asserted Bad Faith against Liberty. On May 7, 2001, Liberty had the action removed to the United States District Court for the Middle District of Pennsylvania. On July 12, 2001, Plaintiff filed an Amended Complaint, asserting a cause of action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et. seq. After discovery concluded, this Honorable Court held a bench trial to resolve this dispute on July 22, 2002.

In light of recent changes in the law, on November 4, 2002, Plaintiff filed a Motion for Leave to File an Amended Complaint. This Honorable Court entered judgment on the bench trial for Defendant on November 5, 2002.

## II.   **STATEMENT OF FACTS**

Plaintiff became employed at the Milton S. Hershey Medical Center (hereinafter "Hershey") in 1985 as a Staff Assistant. Hershey employees were covered under a group benefit plan issued by Liberty to Penn State Geisinger Health System, plan number GF3-810-252761-01 (hereinafter, "the Plan"). Among other coverages, the Plan offered coverage for long-term disability. Plaintiff, on May 5, 2000, made a claim for disability benefits under the Plan issued by Liberty asserting that he last worked on January 2, 2000. There is a 180-day elimination period for persons entitled to disability benefits. Thus, Howard

became entitled to benefits on July 2, 2000. The Plan for which Howard paid a premium provides for two/thirds of his basic monthly earnings but could not exceed a maximum monthly benefit of $15,000.00. Plaintiff has been totally and continuously disabled from his own occupation or any other occupation since January 2, 2000.

When deciding whether to accept Plaintiff's disability claim, the terms of the Plan between Liberty and Plaintiff placed Liberty under a duty to act in good faith. However, Defendant Liberty, in denying Plaintiff's claim, ignored extensive medical findings of Plaintiff's physicians attesting to his total disability, and opted to rely on the incomplete findings of its own doctors who merely reviewed Plaintiff's medical chart and failed to conduct any examination. Furthermore, Liberty failed to arrange for an independent medical examination, and ignored letters from Plaintiff's own employer supporting Plaintiff's claim of his inability to perform work. Liberty actually denied Plaintiff's coverage under the Plan before receiving the results of Plaintiff's physical capacity evaluation from a physical therapist.

Liberty both paid benefits from the Plan and determined benefit eligibility, an obvious conflict of interest. This conflict resulted in Liberty's arbitrary and capricious denial of benefits due to Plaintiff under the Plan.

The above actions constitute bad faith under 42 Pa. C.S.A. §8371.

## III.    STATEMENT OF QUESTIONS INVOLVED

A.    WHETHER PLAINTIFF SHOULD BE PERMITTED TO AMEND HIS COMPLAINT.

Suggested Answer:        Yes.

1.    Whether the Federal Rules of Civil Procedure Permit a Party to Amend a Complaint After Trial.

Suggested Answer:        Yes.

2.    Whether the Federal Rules of Civil Procedure Permit a Party to Amend a Complaint to Conform to Changes in the Law.

Suggested Answer:        Yes.

B.    WHETHER PLAINTIFF'S MOTION IS FUTILE.    (WHETHER ERISA PREEMPT PENNSYLVANIA'S BAD FAITH STATUTE, 42 Pa. C.S.A. §8371.)

Suggested Answer:        No.

## IV.    ARGUMENT

A.    **THIS HONORABLE COURT SHOULD PERMIT PLAINTIFF TO AMEND HIS COMPLAINT.**

1.    **The Federal Rules of Civil Procedure Permit a Party to Amend a Pleading After a Trial Concludes.**

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend its pleadings.  Under Rule 15(a), a party may amend its pleadings only by leave of court or by written consent of the adverse party.  Under either circumstance, leave

shall be freely given where justice so requires. Rule 15 has been interpreted to allow amendments to pleadings to be granted liberally. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment—the leave sought should be freely given." Thomas v. Smithkline Beecham Corp., 2002 U.S. Dist. LEXIS 17328 (E.D. Pa., Sept. 5, 2002, at *5) (attached hereto as "Exhibit 1").

The liberal standards governing Rule 15 are equally applicable even after a trial ends. In Seybold v. Dean, Inc, 628 F. Supp 912, 914 (W.D. Pa. 1986), the District Court for the Western District of Pennsylvania permitted plaintiff to amend his complaint after the trial concluded, stating that it would allow the amendment unless the non-moving party could demonstrate it did not have a fair opportunity to defend against the new issue raised and is deprived of a chance to offer additional evidence.

Defendant will not be unduly prejudiced by adding the Pennsylvania Bad Faith Statute to the Complaint. Defendant was put on notice of the Bad Faith claim in the original Complaint. Furthermore, although Plaintiff's Amended

Complaint removed the Bad Faith claim, the Amended Complaint still asserts Defendant conducted itself "not in good faith." (See Amended Complaint, ¶14).

Defendant will have every opportunity to defend the claim, both through dispositive motions and, if appropriate, at a jury trial. Given that almost no discovery whatsoever was conducted, Defendant cannot claim undue prejudice on that basis.

Put simply, Defendant has not been prejudiced by the delay and, even if prejudiced in some manner, such prejudice was not the fault of Plaintiff, because the caselaw relevant to the proposed amendment arose only after the trial had been conducted.

2. **The Federal Rules of Civil Procedure Permit a Party to Amend a Complaint to Reflect Subsequent Changes in the Law.**

Under Rule 15(a) of the Federal Rules of Civil Procedure, if a party moves to amend its pleadings to comply with recent changes in applicable law, the court should freely grant the motion. Vanguard Savings and Loan Ass'n v. Banks, 1995 U.S. Dist. LEXIS 8799, at *6 (E.D. Pa. 1995) (attached hereto as "Exhibit 2"). Furthermore, a court should deny the movant's motion to amend to reflect

subsequent changes in the law only upon a showing of bad faith, undue delay, or the amendment unduly prejudices the nonmoving party. Id.

Plaintiff's original Complaint included a claim under the Pennsylvania Bad Faith Statute. Once the case was removed to the Middle District of Pennsylvania, the Amended Complaint removed the bad faith claim to conform to the law of the Third Circuit. In light of Rush Prudential HMO, Inc. v. Moran, 122 S.Ct. 2151 (2002) and Rosenbaum v. UNUM Life Ins. Co., 2002 U.S. Dist. LEXIS 14155 (E.D. Pa., July 29, 2002) (both cases discussed infra), however, there has been a change that permits a party to pursue a Pennsylvania Bad Faith Claim, in addition to an ERISA claim. Accordingly, this Honorable Court should permit Plaintiff an opportunity to amend his Complaint to reflect the current law.

### B.    PLAINTIFF'S MOTION IS NOT FUTILE BECAUSE ERISA DOES NOT PREEMPT PENNSYLVANIA'S BAD FAITH STATUE

Defendant will assuredly assert that Plaintiff's Motion for Leave to File an Amended Complaint should be denied because the amendment is futile. An amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Nahc, Inc., 306 F.3d 1314 (3d Cir. 2002). In Plaintiff's situation, however, the claim is meritorious because

- 7 -

Rosenbaum v. UNUM Life Ins. Co. held ERISA does not preempt Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. §8371. 2002 U.S. Dist. LEXIS 14155 (E.D. Pa. July 29, 2002, at *9) (attached hereto as "Exhibit 3"). In reaching its conclusion, Rosenbaum relied on recent Supreme Court caselaw[1] announcing a two-prong test to determine whether a statute "regulates insurance," and thus falls within ERISA's savings clause.[2] See id. at *2.

The first prong evaluates whether, "from a common sense view of the matter," the State statute regulates insurance. See UNUM Life Insurance Co. of America v. Ward, 526 U.S. 358 (1999). The second prong weighs the three-factors of the McCarran-Ferguson Act, 15 U.S.C. §1011, et. seq.:

a.    whether the practice [statute] has the effect of transferring or spreading a policyholder's risk;

b.    whether the practice [statute] is an integral part of the policy relationship between the insurer and the insured; and

---

[1] The District Court characterized the recent decisions as "a new trend in federal law." See Rosenbaum, at *2. The first case was UNUM Life Insurance Co. of America v. Ward, 526 U.S. 358 (1999). In this case, the Supreme Court held a state statute need not meet all three McCarran-Ferguson Act factors to qualify for ERISA's saving clause. See id. at 373. Instead, the factors are merely "consideration to be weighed" in determining whether a state law regulates insurance. See id. The second case, Rush Prudential HMO, Inc. v. Moran, reaffirmed Ward by finding a state statute that only met two McCarran-Ferguson factors was nonetheless saved from preemption under ERISA's saving clause. 122 S.Ct. 2151, 2163 (2002).

[2] See 29 U.S.C. §1144(b)(2)(A) (exempting from preemption "any law of any State which regulates insurance").

    c.     whether the practice [statute] is limited to entities within the insurance

industry.

See Ward, 526 U.S. at 358.

Ward expressly held that all three factors of the McCarran-Ferguson Act need not be met in order for a State statute to qualify for ERISA's savings clause. See Ward, 526 U.S. at 373. Furthermore, neither the Supreme Court nor the Third Circuit has set any requirements for the number of factors that must be met. See Rosenbaum, 2002 U.S. Dist. LEXIS 14155, at *4, n.1. In short, no law states the number of factors that must be reached before a statute qualifies for ERISA's savings clause.

Applying the two-prong approach, Rosenbaum first noted that "the common sense view clearly establishes that Pennsylvania's bad faith statute regulates insurance and is specific to the insurance industry." See Rosenbaum, 2002 U.S. Dist. LEXIS 14155, at *5. Second, under the McCarran-Ferguson test, Rosenbaum found Pennsylvania's Bad Faith Statute "clearly plays an integral role in the policy relationship" between the insured and the insurance company by "creating mandatory contract terms requiring special damages." See id. at *7. Furthermore, the Pennsylvania Bad Faith Statute applies only to the insurance industry, thereby satisfying the final prong of the McCarran-Ferguson Act. See id. at *9. For these

reasons, the District Court concluded ERISA does not preempt Pennsylvania's Bad Faith Statute.

Plaintiff is aware that some criticism has been rendered against Rosenbaum by recent decisions within the Eastern District of Pennsylvania. However, the Rosenbaum decision remains good law and its analysis is consistent with the recent Supreme Court decisions in Ward and Rush Prudential. Moreover, it is important to call to this Court's attention three critical similarities between Rosenbaum and subsequent Eastern District cases. All of the cases agree on the following issues:

(1)   From a "common sense view," the Pennsylvania Bad Faith statute regulates insurance;[3]

(2)   The Pennsylvania Bad Faith Statute meets at least one McCarran Ferguson prong;[4] and

---

[3] See Bell v. UNUM Corp. et. al., 2002 U.S. Dist. LEXIS 17693 (E.D. Pa., Sept. 19, 2002, at *14) (finding the Pennsylvania Bad Faith Statute is never applied outside the insurance industry); Smith v. Continental Casualty Co., 2002 U.S. Dist. LEXIS 18312 (E.D. Pa., Sept. 16, 2002, at *6) (finding the Pennsylvania Bad Faith Statute applies only to "actions on insurance policies"); Kirkhuff v. Lincoln Technical Institute, Inc., 2002 U.S. Dist. LEXIS 17196 (E.D. Pa., Sept. 6, 2002, at *5) (holding the Pennsylvania Bad Faith Statute is "directed specifically towards the insurance industry"); Sprecher v. Aetna U.S. Healthcare, Inc., 2002 U.S. Dist. LEXIS 15571 (E.D. Pa., August 19, 2002, at *10) (concluding the Pennsylvania Bad Faith Statute only applies to the insurance industry).

(3)    Not all the McCarran-Ferguson prongs need to be met for a statute to

"regulate insurance."[5]

Furthermore, <u>Rosenbaum</u> follows decisions from District Courts in

Alabama, Oklahoma, Washington, and Colorado holding state Bad Faith Statutes,

only applicable to the insurance industry, are saved from ERISA preemption.[6]

In <u>Hill v. Blue Cross Blue Shield of Alabama</u>, the District Court for the

Northern District of Alabama concluded that a bad faith claim based on state

statutory law is saved when that law is part of the state's insurance regulatory

scheme.[7]    117 F. Supp. 2d 1209, 1212 (N.D. Ala. 2000).  In <u>Lewis v. Aetna U.S.</u>

---

[4] <u>See</u> <u>Bell</u>, 2002 U.S. Dist. LEXIS 17693, at *15 (finding the Pennsylvania Bad Faith Statute is limited to entities in the insurance industry); <u>Smith</u>, 2002 U.S. Dist. LEXIS 18312, at *7 (noting the Pennsylvania Bad Faith Statute's limitation to the insurance industry); <u>Kirkhuff</u>, 2002 U.S. Dist. LEXIS 17196, at *6 (agreeing with <u>Rosenbaum</u> that the Pennsylvania Bad Faith Statute is limited to the insurance industry); <u>Sprecher</u>, 2002 U.S. Dist. LEXIS 15571, at *17 (finding the Pennsylvania Bad Faith Statute is aimed at the insurance industry).

[5] <u>See</u> <u>Bell</u>, 2002 U.S. Dist. LEXIS 17693, at *11 (holding a state law need not meet all three McCarran-Ferguson factors to regulate insurance); <u>Smith</u>, 2002 U.S. Dist. LEXIS 18312, at *6 (noting the factors are "considerations to be weighed" to assess whether a state law regulates insurance); <u>Kirkhuff</u>, , 2002 U.S. Dist. LEXIS 17196, at *5 (describing the factors as "guideposts," and stating "none is necessarily determinative on the issue of preemption"); <u>Sprecher</u>, 2002 U.S. Dist. LEXIS 15571, at *10 (finding a state regulation need not satisfy all three McCarran-Ferguson factors).

[6] In 1987, the Supreme Court decided <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41 (1987).  This case stood for the proposition that all bad faith claims were preempted by ERISA.  However <u>Ward</u> limits <u>Pilot Life</u> to "common law" claims of bad faith, and not bad faith claims under state statutory law.  <u>See Ward</u>, 526 U.S. at 377, n.7.

Footnote Continued on next Page…

Healthcare, Inc., the District Court for the Northern District of Oklahoma found a state tort action grounded in statutory policy specific to the insurance industry constitutes a state law that regulates insurance under ERISA's saving clause.[8]  78 F. Supp. 2d 1202, 1212 (N.D. Okla. 1999).    Norman v. Paul Revere Life Ins. Co. held Washington's Bad Faith statute[9] was exempt from ERISA preemption.[10]  2000 U.S. Dist. LEXIS 21478, at *5 (W.D. Wash. 2000).  Finally, in Colligan v. UNUM Life Ins. Co. of America, the District Court for the District of Colorado ruled Colorado's common law bad faith cause of action against insurer's was not preempted by ERISA.[11]  2001 U.S. Dist. LEXIS 8103 (D. Colo. 2001).  Therefore, Pennsylvania represents another state in a growing list that, based on recent

---

[7] Hill interprets footnote 7 of Ward as follows: "There is no way to read this footnote . . . except as an acknowledgement by the highest court that if Mississippi's cause of action for bad faith breach of an obligation to pay had been allowable only as to insurance policies, the action addressed in Pilot Life would have been saved from ERISA preemption by §1144(b)(2)(A)."  Hill, 117 F. Supp. 2d at 1211.

[8] As with Hill, the Lewis court drew a distinction between its case and Pilot Life by noting that Pilot Life dealt with a common law bad faith cause of action, while the Oklahoma law at issue was inapplicable beyond the insurance industry.

[9] See WASH. REV. CODE. § 48.01.030 (2002).

[10] As in Rosenbaum, the Norman court found Washington's Bad Faith statute played an integral part of the policy relationship between insurer and insured.  See Norman, 2000 U.S. Dist. LEXIS 21478, at *5.

[11] Although Colligen dealt with common law bad faith, and not statutory bad faith, the District Court found the law to not be preempted by ERISA because it only applied to the insurance industry.  See Colligen, 2001 U.S. Dist. LEXIS 8103, at *5.

interpretations of ERISA by the Supreme Court, is correctly finding ERISA does not preempt state statutory laws that regulate insurance.

## V.    **CONCLUSION**

Based upon the foregoing, Plaintiff's Motion to Leave to File an Amended Complaint should be granted.

Respectfully Submitted,

RHOADS & SINON LLP

By:    _____
Robert J. Tribeck, Esquire
Attorney I.D. No. 74486
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
717.233.5731

Attorneys for Plaintiff



EXHIBIT

LEXSEE 2002 U.S. Dist. LEXIS 17328

**LOUISE D. THOMAS, DENNIS D. DARDEN, and LINDA JEAN ALLEN, on behalf of themselves and all others similarly situated, Plaintiffs v. SMITHKLINE BEECHAM CORPORATION, et al., Defendants.**

**NO. 00-2948**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2002 U.S. Dist. LEXIS 17328*

**September 5, 2002, Decided**

**September 5, 2002, Filed; September 5, 2002, Entered**

**DISPOSITION:**
[*1] Plaintiffs' motion for leave to supplement amended class complaint was granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff members sued defendants, their employer, various employee benefit plans, and the administrators of such plans, seeking declaratory, equitable, and legal relief establishing their rights to receive benefits from the employer under the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq. The members moved to supplement their amended complaint. The suit was certified as a class action.

**OVERVIEW:** The suit was based on allegations that the employer engaged in a scheme to increase its corporate profitability whereby it classified individuals as temporary or leased employees or independent contractors instead of employees in order to deny or delay eligibility for benefits. The supplemental pleading alleged that the employer sent a "Dear Colleague" letter to employees which informed them that they had to provide detailed information as to their past service in order to be eligible for the plans, in breach of defendants' fiduciary duty, in violation of *29 U.S.C.S. § 1104*, and in interference with employee benefit rights, in violation of *29 U.S.C.S. § 1140*. Defendants argued that the supplemental pleading would be futile, but the court disagreed, holding that the claims were not new and did not create any conflict of interest as they just amplified earlier claims and sought relief on behalf of every class member, i.e., the appointment of an impartial fiduciary with undivided loyalties and to cure the improprieties of the "Dear Colleague" letter.

**OUTCOME:** The members' motion for leave to supplement their amended class complaint was granted.

## CORE CONCEPTS

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*
Pursuant to Fed. R. Civ. P. 15(d), plaintiffs may file supplemental pleadings to amplify previously alleged claims or to state additional claims. Fed. R. Civ. P. 15(d). In determining whether to allow a supplemental pleading, the court is governed by the same liberal standard as that which applies to motions to amend pleadings under Fed. R. Civ. P. 15(a). In the absence of any apparent or declared reason -- such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. -- the leave sought should be freely given. Thus, although the decision to grant or deny leave to supplement or amend a complaint is committed to the sound discretion of the district court, leave should, consistent with the command of Rule 15, be liberally granted.

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*

Case 1:01-cv-00797-YK    Document 53    Filed 11/15/2002    Page 15 of 30

Page 2
2002 U.S. Dist. LEXIS 17328, *

A complaint supplement is futile when it is not able to withstand a motion to dismiss. Thus, as with a motion to dismiss, when making the determination of whether a supplement would be futile, the court may only consider the allegations of the complaint and the proposed supplement. A proposed supplement should not be denied as futile unless it is clearly frivolous or advances a claim or defense that is legally insufficient on its face.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
Because *I.R.C. § 414(n)* is not incorporated into the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., a defendant's failure to properly award employee benefits cannot be litigated as an ERISA violation.

**COUNSEL:**
For LOUISE D. THOMAS, DENNIS D. DARDEN, LINDA JEAN ALLEN, PLAINTIFFS: PAULA R. MARKOWITZ, MARKOWITZ & RICHMAN, PHILA, PA USA.

For LOUISE D. THOMAS, DENNIS D. DARDEN, LINDA JEAN ALLEN, PLAINTIFFS: PHILIP STEPHEN FUOCO, HADDONFIELD, NJ USA.

For LOUISE D. THOMAS, DENNIS D. DARDEN, LINDA JEAN ALLEN, PLAINTIFFS: JOHN SHNIPER, PHOENIXVILLE, PA USA.

For LOUISE D. THOMAS, DENNIS D. DARDEN, LINDA JEAN ALLEN, PLAINTIFFS: JOSEPH A. OSEFCHEN, PHILIP STEPHEN FUOCO, HADDONFIELD, NJ USA.

For SMITHKLINE BEECHAM CORPORATION, DEFENDANT: LAURENCE Z. SHIEKMAN, PEPPER, HAMILTON & SCHEETZ, PHILA, PA USA.

For SMITHKLINE BEECHAM CORPORATION, SMITHKLINE BEECHAM HEALTH & WELFARE BENEFITS TRUST PLAN FOR U.S. EMPLOYEES, DEFENDANTS: MICHAEL H. ROSENTHAL, GREG A. ROWE, PEPPER HAMILTON, L.L.P., PHILADELPHIA, PA USA.

For KELLY SERVICES, INC., RESPONDENT: PATRICK J. HUGHES, CONNELL FOLEY, ROSELAND, NJ USA.

**JUDGES:**
William H. Yohn, Jr., Judge.

**OPINIONBY:**
William H. Yohn, Jr.

**OPINION:**

### MEMORANDUM and ORDER

YOHN, J.

September 5, 2002

Louise D. Thomas, Dennis D. Darden, and Linda Jean Allen (collectively, "named [*2] plaintiffs") brought this action on behalf of themselves and all other similarly situated persons (collectively, "class members") against SmithKline Beecham Corporation ("SB"), various SB employee benefit plans ("benefit plans"), and the administrators of those benefit plans ("administrators") (collectively, "defendants"). The plaintiffs seek declaratory, equitable and legal relief establishing their rights to receive benefits from SB under the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1001* et seq.

Presently before the court is the plaintiffs' motion to supplement the amended complaint pursuant to Federal Rule of Civil Procedure 15(d). This supplemental pleading is intended by the plaintiffs to amplify and clarify the factual and legal basis for the class claims of breach of fiduciary duty, in violation of *29 U.S.C. § 1104,* and interference with employee benefit rights, in violation of *29 U.S.C. § 1140* set forth in the amended complaint. For the reasons set forth below, the motion to supplement the amended complaint will be granted.

#### Background

This class action is based on the [*3] allegations of the named plaintiffs that SB has violated the rights of a large number of individuals to accrue benefits in SB employee benefit plans. Amended Compl. P 14. They claim that SB improperly engaged in a scheme to increase its corporate profitability whereby it classified individuals as "temporary" or "leased" employees or "independent contractors," instead of common law employees, in order to deny or delay these employees from attaining eligibility for SB employee benefits. Id. PP 31 - 33. Based on this practice, on June 9, 2000, Louise Thomas ("Thomas") and Dennis Darden ("Darden") brought this ERISA action against SB and the administrators of the SB employee benefit plan on behalf of themselves and all others similarly situated, seeking a declaratory judgment that the defendants include them as participants in the benefit plans (Count I) and requesting injunctive relief in the form of a court appointment of an independent fiduciary for each benefit plan (Count II). Also alleged in the complaint are claims that defendants violated *29 U.S.C. § 1140* by refusing to allow common

law employees to participate in the benefit plans (Count III), *29 U.S.C. § 1104* [*4] by breaching its fiduciary duties (Counts IV and V), *29 U.S.C. § 1024*(b)(1)(A) by failing to provide documents and information regarding the benefit plans to the plaintiffs (Count VI), and *29 U.S.C. § 1052* by instituting a de facto extension of the minimum service provision of each benefit plan (Count VII). On August 8, 2000, Thomas and Darden amended their complaint to add Linda Allen as a named plaintiff and the benefit plans as defendants. This suit was certified as a class action on July 3, 2001 pursuant to Rule 23 of the Federal Rules of Civil Procedure. n1

>    n1 Plaintiffs previously acknowledged that Allen never qualified as a class member under the definition of the class which was ultimately certified by the court.

**Standard of Review**

Pursuant to Federal Rule of Civil Procedure 15(d), plaintiffs may file supplemental pleadings to amplify previously alleged claims or to state additional claims. Fed. R. Civ. P. 15(d) "The purpose of this rule is to [*5] bring the action up to date by alleging new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought." *Thomas v. Ford Motor Co., 111 F. Supp.2d 529, 532 (D.N.J. 2000).* In determining whether to allow a supplemental pleading, the court is governed by the same liberal standard as that which applies to motions to amend pleadings under Rule 15(a). *Wolfson v. Lewis, 168 F.R.D. 530, 532 (E.D. Pa. 1996).* "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should ... 'be freely given.'" *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).* Thus, although the decision to grant or deny leave to supplement or amend a complaint is committed to the sound discretion of the district court, leave should, consistent with the command of Rule 15, be liberally granted.

**Discussion** [*6]

Based on facts that were revealed during discovery, plaintiffs now seek to supplement the amended class complaint. The proposed supplement provides greater specificity as to the factual basis for the claims of breach of fiduciary duty and violation of *29 U.S.C. § 1140* that were raised by plaintiffs in their amended class complaint. In particular, the proposed supplemental pleading alleges that SB, by sending the "Dear Colleague" letter to 1,100 individuals in April 2000, who like Thomas and Darden, formerly were classified by SB as temporary employees but were later hired by SB as regular employees, breached its fiduciary duty and prevented class members from obtaining eligibility for employee benefits in violation of ERISA. n2 Plaintiffs allege that the "Dear Colleague" letter informed class members that they were required to provide SB with detailed information about their past services as temporary employees as a condition precedent to any determination of their eligibility for employee benefits. This scheme allegedly shifted the burden of proving eligibility from SB to the participants of the plan, causing defendants to breach their fiduciary duties and [*7] preventing SB employees from obtaining the benefits they deserved. Supp. Compl. PP 220 - 24.

>    n2 Class members have been defined as "those persons, now officially classified by SB as employees of SB to whom SB sent the form letter entitled 'Dear Colleague' dated 'April, 2000.'"

Plaintiffs argue that defendants will not be prejudiced by the supplement since defendants have long been aware of plaintiffs' concerns regarding the "Dear Colleague" letter. In fact, plaintiffs argue that the supplement to the complaint benefits defendants by amplifying and highlighting the issues surrounding these claims so that there is no misunderstanding as to what is being alleged. Doc. 53 at 4. Defendants counter that the supplemental pleading should not be allowed, not because it will somehow prejudice them, but rather because allowing this pleading would be futile.

A complaint supplement is futile when it is not able to withstand a motion to dismiss. *Massarsky v. General Motors Corp., 706 F.2d 111, 125* (3d Cir. [*8] ), *cert. denied, 464 U.S. 937, 78 L. Ed. 2d 314, 104 S. Ct. 348.* Thus, as with a motion to dismiss, when making the determination of whether a supplement would be futile, the court may only consider the allegations of the complaint and the proposed supplement. A proposed supplement should not be denied as futile unless it is clearly frivolous or advances a claim or defense that is legally insufficient on its face. *Thomas v. Ford Motor Co., 111 F. Supp.2d 529, 533 (D.N.J. 2000).*

Defendants set forth three arguments that they claim establish the futility of allowing plaintiffs to supplement the class complaint here. However, none of these arguments is persuasive. As an initial matter, all of defendants' arguments are flawed by a misunderstanding of the allegations contained in the supplement and the

relief that is being sought based on these allegations. n3 Defendants interpret the supplement to the complaint as alleging new claims only on behalf of those class members who did not receive employee benefits from defendants, either because they failed to respond to the "Dear Colleague" letter or because defendants arbitrarily decided to deny their claims. [*9] However, although stylized as new claims the supplement to the complaint merely provides additional factual allegations as to how defendants' use of the "Dear Colleague" letter violated ERISA and constituted a breach of fiduciary duty as to all class members. In the supplement to the complaint, plaintiffs aver that the "Dear Colleague" burden shifting scheme was used to save SB money by denying class members the employee benefits they deserved. Supp. Compl. PP 239 - 43. By not acting with the interests of class members in mind when determining their eligibility for employee benefits under the SB benefit plans, plaintiffs allege that defendants breached their duty of care and loyalty to all class members. Id. All plan participants, even those who ultimately received a favorable eligibility determination, are entitled to have their retroactive benefits calculated by an individual concerned primarily with their best interests and not the interests of SB to save as much money as possible. The relief plaintiffs request in the complaint and proposed supplement, namely to have the court appoint an impartial fiduciary with undivided loyalties and to cure the improprieties of the "Dear Colleague" [*10] letter, is sought on behalf of every class member.

n3 This misunderstanding is not doubt caused by the rambling, repetitious and sometimes irrelevant nature of the allegations in the proposed supplement.

Defendants' futility arguments are also flawed in that they raise points that are either contrary to, or not evident from, the allegations of the amended complaint or the proposed supplement. First, defendants argue that plaintiffs aver that class members' eligibility for employee benefits is determined by *section 414(n) of the Internal Revenue Code* ("IRC") but because this section of the IRC is not incorporated into ERISA, defendants' failure to properly award employee benefits cannot be litigated as an ERISA violation. Although it may be true that section 414(n) does not create substantive rights under ERISA, this is irrelevant to the present action. The allegations contained in the proposed supplement to the complaint indicate that regardless of what the IRC requires, the benefit plans' [*11] own terms required SB to give employees performing "temporary" services credit for employee benefits. Supp. Compl. at PP 177,

202, 210(c). Thus, any failure to award employee benefit credit to class members was contrary to the terms of the benefit plans themselves. Plaintiffs' allegations that defendants failed to follow the explicit terms of the ERISA benefit plans in awarding benefits to class members may be properly litigated as a violation of ERISA.

Second, defendants argue that because the named plaintiffs have received employee benefits for the time they served as temporary employees, they do not adequately represent the interests of the class with regard to the claims raised in the proposed supplement. As stated above, this argument misconstrues the additional allegations of the proposed supplement as stating new claims on behalf of those class members who have not received employee benefits when in fact the supplement does not allege new claims, but rather it alleges only the particulars of the breach of fiduciary duties and violation of *29 U.S.C. § 1140* claims that were raised by plaintiffs on behalf of all class members in the amended class complaint. [*12] Additionally, there is no support in the amended class complaint or the proposed supplement for the defendants' statement that the named plaintiffs were not among the 800 class members who have yet to receive their employee benefits. n4 From those documents, to which I am presently restricted, there is no reason for the court to find that the named plaintiffs are not among those who were denied benefits. n5

n4 Of the 1,100 class members who were sent the "Dear Colleague" letter, 550 of them did not submit a response, and therefore were deemed by SB to have waived their entitlement to benefits for the time when they were employed for temporary services. Supp. Compl. P 235. For those who did respond to the letter, defendants found the failure of approximately 250 class members to comply with the unnecessary and arbitrary criteria set forth in the "Dear Colleague" letter reason to refuse their service credit eligibility. Id P 236. In total, plaintiffs allege that defendants' "Dear Colleague" scheme denied approximately 800 class members credit for their employment with temporary agency services. Id. P 237. [*13]

n5 Counts VIII, IX and X of the supplemental complaint raise allegations of ERISA violations on behalf of the entire class based on defendants' initial and continued failure to award class members the employee benefits to which they were entitled, to keep track of the class members' eligibility for employee benefits and for imposing a burden shifting scheme on all

class members to provide their own information regarding their entitlement to benefits. However, in counts XI, XII and XIII, named plaintiffs allege facts establishing that defendants breached their fiduciary duties to not all, but only part of the certified class. In particular, named plaintiffs allege that defendants use of the failure to respond to the "Dear Colleague" letter as a pretext for withholding employee benefit credits and its use of arbitrary criteria to deny benefits even when employees responded, amounted to a breach of fiduciary duty to the approximately 800 class members who were improperly denied benefits as a result of these actions. They further allege that defendants breached their fiduciary duties by not advising these class members of their right to appeal adverse decisions regarding their entitlement to employee benefits. Because the court here is to consider only the allegations of the complaint and there is no basis from the complaint for the court to infer that the named plaintiffs lack standing to raise these allegations, the court will not deny plaintiffs' motion to supplement their complaint based on defendants' unsupported assertions in its opposition brief. However, the court does not dismiss the possibility that if named plaintiffs were not in fact among those class members denied benefits, as defendants contend, they may not have standing to raise such allegations of breach of fiduciary duty on behalf of the other class members. Defendants may raise this argument in a future pleading.

[*14]

Finally, defendants claim that the proposed supplement contains allegations that create a conflict of interest between class members, and therefore this supplement cannot be allowed by the court. Defendants interpret the proposed supplement to the amended complaint to aver that some class members were improperly awarded employee benefits and to seek a recoupment of these benefits. This interpretation,

however, is not necessarily supported by the allegations contained in either the amended complaint or the proposed supplement. The allegations in the supplement provide that in order to avoid legal sanctions, SB arbitrarily awarded pension plan assets to hundreds of persons without making any determination as to their legal entitlement to such assets and that this conduct dissipated the assets of the benefit plans. Supp. Compl. PP 163 - 67. No where is it alleged that the individuals who wrongfully received these employee benefits were class members or that the wrongfully awarded employee benefits should be disgorged from certain class members. The inclusion of these allegations in the proposed supplement is somewhat mystifying, but they do not create any conflict of interest at this [*15] juncture such that the court must deny plaintiffs' motion for leave to supplement the amended class complaint.

**Conclusion**

Defendants have not demonstrated that allowing class counsel to supplement the amended class complaint would be futile. Nor have defendants demonstrated that such a supplement would cause them prejudice or be otherwise unfair. Because defendants have not shown undue prejudice, futility or some other misguided reason for plaintiffs' delay in alleging the facts contained in their proposed supplement to the complaint, I will grant plaintiffs' motion for leave to supplement the amended class complaint.

An appropriate order follows.

**ORDER**

And now this 5 day of September, 2002, upon consideration of plaintiffs' motion to file a supplement to the amended class action complaint (Doc. 53); defendants' response (Doc. 59); and plaintiffs' reply (Doc. 61); it is hereby ORDERED that the motion to supplement is GRANTED. It is further ORDERED that the supplement attached to the plaintiffs' motion as Exhibit A shall be filed as a supplement to the amended class action complaint.

William H. Yohn, Jr., Judge

1066NP

********** Print Completed **********

Time of Request:    November 13, 2002  02:46 PM EST

Print Number:      1821:0:71280463
Number of Lines:   326
Number of Pages:

Send To:  JARECKI, JAMES
          RHOADS & SINON LLP
          1 S MARKET SQ FL 12
          HARRISBURG, PENNSYLVANIA 17101-2132


EXHIBIT
2

LEXSEE 1995 U.S. Dist. LEXIS 8799

**VANGUARD SAVINGS AND LOAN ASSOCIATION AND VSL SERVICE CORP., Plaintiffs, v. BARTON M. BANKS, et al., Defendants**

CIVIL ACTION NO. 93-4627

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1995 U.S. Dist. LEXIS 8799*

June 26, 1995, Decided
June 27, 1995, FILED, ENTERED

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff savings and loan filed a motion to amend its complaint against defendant former employees so that the complaint would comply with a change in the law governing the Racketeer Influenced Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961* et seq.

**OVERVIEW:** The former employees contended that the savings and loan unreasonably delayed filing the motion. Specifically, the former employees argued that the savings and loan filed its RICO case statement after the change in law. The former employees further alleged that the savings and loan was unreasonably dilatory because it filed the motion four months after the change in law had been decided. Finally, the former employees argued that they would have been unduly prejudiced by an amendment to the complaint. The court granted the savings and loan's motion. The court held that the savings and loan filed its case statement nearly a year before the change in law. The court found that even if the savings and loan had waited four months to file the complaint, such a delay was not "undue" for purposes of a Fed. R. Civ. P. 15(a) motion to amend. The court further determined that the former employees would not be unduly prejudiced by the amendment because the central theory underlying the RICO claim was to remain the same.

**OUTCOME:** The court granted the savings and loan's motion to amend its complaint against the former employees so that the complaint would comply with a change in the law.

## CORE CONCEPTS

*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
The Racketeer Influenced Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1962*(c) prohibits any "person" employed by or associated with any "enterprise" from conducting or participating in the conduct of such enterprise's affairs through a pattern of racketeering activity.

*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
A Racketeer Influenced Corrupt Organizations Act enterprise is properly viewed as the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity. A victim corporation "drained of its own money" by pilfering officers and employees could not reasonably be viewed as the enterprise through which the persons carried out their racketeering activity. Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the *18 U.S.C.S. § 1962*(c) claimant.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
Under Fed. R. Civ. P. 15(a), if a party moves to amend its pleading to comply with a recent change in the applicable law, the court should freely grant the motion. A court should deny a motion to amend the pleadings only if: 1) the movant has acted in bad faith; 2) there has been undue delay; or 3) the amendment will unduly prejudice the nonmoving party.

1995 U.S. Dist. LEXIS 8799, *

**COUNSEL:**

[*1]  For For VANGUARD SAVINGS AND LOAN ASSOCIATION, VSL SERVICE CORPORATION, PLAINTIFFS: DAVID J. STUTMAN, IRA B. SILVERSTEIN, STEPHANIE RESNICK, LISA A. CARNEY, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, PHILA, PA.

For BARTON M. BANKS, DAVID BANKS, DEBRA WEIDMAN, BANKS, BANKS & WEIDMAN, DEFENDANTS: WALTER WEIR, JR., JONATHAN J. BART, PATTERSON & WEIR, PHILA, PA. For ABNER GREEN, DEFENDANT: STEPHEN H. SKALE, PHILA, PA. For MURRAY D. LEVIN, MICHAEL GRADESS, DEFENDANTS: ROBERT S. GOLDSTEIN, MURLAND & ASSOC., PHILA, PA. For HARRIET R. BANKS, DEFENDANT: RICHARD M. ROSENBLEETH, GRANT S. PALMER, BLANK, ROME, COMISKY & MC CAULEY, PHILA, PA. For KOPPLE & GOTTLEIB, CPA, DEFENDANT: PHILIP B. TORAN, JAY S. ROTHMAN, MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, PHILA, PA.

For BARTON M. BANKS, DAVID BANKS, DEBRA WEIDMAN, BANKS, BANKS & WEIDMAN, KATHLEEN A. KUNYCZKA, THIRD-PARTY PLAINTIFFS: WALTER WEIR, JR., JONATHAN J. BART, PATTERSON & WEIR, PHILA, PA.  For HERBERT BASS, IRA SILVERSTEIN, CECIL MAIDMAN, THIRD-PARTY DEFENDANTS: JEFFREY B. MC CARRON, SWARTZ, CAMPBELL & DETWEILER, PHILA, PA.

**JUDGES:**
JUDGE JAMES MCGIRR KELLY

**OPINIONBY:**
JAMES MCGIRR KELLY

**OPINION:**

**MEMORANDUM**

**J.M. KELLY, J.**

[*2]  JUNE 26, 1995

Presently before the court is Plaintiff Vanguard Savings and Loan's ("Plaintiff" or "Vanguard") Motion to File an Amended Complaint pursuant to Federal Rule of Civil Procedure 15 (a). The motion seeks to amend three paragraphs of the original complaint to comply with a change in the law governing the Racketeer Influenced Corrupt Organizations Act ("RICO"). *18*

*U.S.C. § 1961*, et seq. This court has jurisdiction over the matter pursuant to *28 U.S.C. § 1331* and § 1367. For the following reasons, plaintiff's motion is granted.

**1. Factual Background and RICO Pleading Requirements**

Vanguard is a savings and loan institution organized and operating under the laws of the Commonwealth of Pennsylvania. Defendants Barton Banks, David Banks, Debra Weidman, Abner Green, Leonard Rosenfeldt, Murray Levin and Harriet Banks (the "Banks defendants") n1 are former officers, managers and employees of the plaintiff. In the complaint, plaintiff claimed the Banks defendants engaged in numerous schemes to drain Vanguard of its assets and use depositor funds for their own purposes. The complaint sought relief based on several legal theories including fraud, professional [*3] negligence, breach of contract, and breach of fiduciary duties. Plaintiff also sued the Banks defendants under section 1962(c) of the Racketeer Influenced Corrupt Organizations Act ("RICO"). See *18 U.S.C. § 1962*(c). The RICO claim is the subject of this motion to amend.

> n1 Banks, Banks & Weidman, a law firm whose principals are Barton Banks, David Banks and Debra Weidman, is also a defendant in the RICO claim.

"Section 1962(c) of RICO prohibits any 'person' employed by or associated with any 'enterprise' from conducting or participating in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Glessner v. Kenny, 952 F.2d 702, 710-14 (3d Cir. 1991).* At the time plaintiff filed its complaint, the Court of Appeals for the Third Circuit had held that in a RICO case where corporate officers allegedly victimized a corporation through pilfering and embezzlement, the plaintiff should designate the corporate officers as the defendant "persons" and the victimized corporation as [*4] the RICO "enterprise." *Glessner, 952 F.2d at 710-14;* see also *Petro-Tech, Inc. v. Western, 824 F.2d 1349, 1359 (3d Cir. 1987).*

As mentioned before, the complaint alleged the Banks defendants drained Vanguard of its resources through various fraudulent schemes. Therefore, based on the above cases, when plaintiff filed its complaint, it appeared the proper RICO "persons" were the Banks defendants and the appropriate "enterprise" was Vanguard. This is precisely how plaintiff framed its RICO claim in the complaint and RICO Case Statement. See Complaint at PP 86, 111 and 118.

1995 U.S. Dist. LEXIS 8799, *

After plaintiff filed its complaint and RICO Case Statement, the Third Circuit decided *Jaguar Cars v. Royal Oaks Motor Company, 46 F.3d 258 (3d Cir. 1995)*. In Jaguar, the court embraced a new definition of a RICO "enterprise." Following the United States Supreme Court opinions in *Reves v. Ernst & Young, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993)*, and *National Organization for Women v. Scheidler, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994)*, the court stated that a RICO enterprise "is properly viewed as the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." [*5] *Jaguar, 46 F.3d at 267*. To illustrate this rule, the court explained:

[A] victim corporation 'drained of its own money' by pilfering officers and employees could not reasonably be viewed as the enterprise through which the persons carried out their racketeering activity. Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962(c) claimant.

Id.

Obviously, this opinion significantly changed pleading requirements in RICO cases. Prior to Jaguar, if corporate officers victimized their own corporation through fraud, pilfering or embezzlement, the law required plaintiff to designate the corporation as the RICO "enterprise." In light of Jaguar, however, it is now clear the proper "enterprise" in such a case is not the victim corporation, but the association of employees through which the defendant persons conducted their racketeering activity. *Jaguar, 46 F.3d at 266*.

Plaintiff now seeks to amend its RICO claim to comply with this recent change in the law. Specifically, plaintiff wants to designate the [*6] association of the Banks defendants as the RICO "enterprise."

### 2. Plaintiff's motion to amend in granted.

Under Rule 15(a), if a party moves to amend its pleading to comply with a recent change in the applicable law, the court should freely grant the motion. *Gregory v. Harris-Teeter, 728 F. Supp. 1259 (W.D.N.C. 1990)*. A court should deny a motion to amend the pleadings only if: 1) the movant has acted in bad faith; 2) there has been undue delay; or 3) the amendment will unduly prejudice the nonmoving party. *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*.

It is clear that plaintiff seeks to amend its RICO claim to comply with a recent change in the law. When plaintiff filed its original complaint, Third Circuit law seemingly required it to label Vanguard as the RICO "enterprise." In light of Jaguar, however, it is obvious the Banks defendants are the proper "enterprise." Accordingly the court should grant the motion unless defendants can show bad faith, unreasonable delay or undue prejudice. *Foman, 371 U.S. at 182*.

Defendants argue plaintiff unreasonably delayed filing this motion. To support this contention, they set forth two arguments. First, they claim [*7] plaintiff filed its RICO Case Statement after Jaguar had been decided. Accordingly, they allege that any delay is unreasonable because plaintiff should have designated the Banks defendants as the "enterprise" in the first place. This argument is baseless. Contrary to defendants' contention, plaintiff filed its RICO Case Statement nearly one year before the Third Circuit decided Jaguar. Therefore, based on the applicable law at that time, it was appropriate for plaintiff to designate Vanguard as the RICO "enterprise."

Secondly, defendants claim plaintiff was unreasonably dilatory because it filed this motion four months after Jaguar had been decided. This argument is both factually incorrect an legally unpersuasive. The Third Circuit decided Jaguar on January 18, 1995. On February 14, 1995, that court denied a motion for rehearing en banc. Plaintiff filed this motion on April 7, 1995, which is less than two months after the final Jaguar decision. Moreover, even if plaintiff had waited four months, such a delay is not "undue" for purposes of a Rule 15(a) motion to amend. See e.g. *Morongo Band of Mission Indians v. Rose, 893 F.2d 1074 (9th Cir. 1990)*(a [*8] two year delay between complaint and motion to amend is not by itself sufficient to deny motion); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380 (2d Cir. 1968)*(three year delay is not alone a sufficient reason to deny motion to amend).

Finally, defendants argue they will be unduly prejudiced by this amendment. They claim plaintiff is attempting to introduce a new theory into the case at the end of discovery. This argument also lacks merit. Although this amendment will technically change the designated "enterprise", the central theory underlying the RICO claim remains the same. Before the amendment, plaintiff needed to prove the Banks defendants fraudulently drained Vanguard of its assets through a pattern of racketeering activity. After the amendment, plaintiff must prove the same allegations to prevail on its RICO claim. Because there is no change in the substantive issues of this case, defendants will not be unduly prejudiced. Accordingly, plaintiff's motion is granted.

An appropriate Order follows.

**ORDER**

1995 U.S. Dist. LEXIS 8799, *

AND NOW, on this 26TH day of June, 1995, after careful consideration of Plaintiff Vanguard Savings and Loan's ("Plaintiff") Motion [*9]   to Amend the Complaint Pursuant to Federal Rule of Civil Procedure 15(a), the Responses of the Defendants, the Plaintiff's Reply, and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that Plaintiff's Motion is GRANTED.

BY THE COURT:

JAMES McGIRR KELLY, J.

1066NP

********** Print Completed **********

Time of Request:    November 13, 2002  02:48 PM EST

Print Number:      1821:0:71280668
Number of Lines:   204
Number of Pages:

Send To:  JARECKI, JAMES
          RHOADS & SINON LLP
          1 S MARKET SQ FL 12
          HARRISBURG, PENNSYLVANIA 17101-2132



EXHIBIT

3

LEXSEE 2002 U. S. Dist. LEXIS 14155

**JOEL ROSENBAUM Plaintiff v. UNUM LIFE INSURANCE CO. OF AMERICA Defendant**

**CIVIL ACTION, NO. 01-6758**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2002 U.S. Dist. LEXIS 14155; 28 E.B.C. 2022*

**July 29, 2002, Decided**

**July 29, 2002, Filed**

**DISPOSITION:**
Defendant's Motion to Dismiss granted, in part, and denied, in part. Specifically, Counts II, IV, VI and VII are dismissed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** After being denied disability insurance benefits, plaintiff insured sued defendant insurer, asserting, inter alia, various claims under state law. Arguing that the insured's claims were preempted by the Employee Retirement Income Security Act, the insurer moved to dismiss the insured's state-law claims.

**OVERVIEW:** The insured conceded that ERISA preempted all of his state-law claims but one, his bad faith claim under 42 Pa. Cons. Stat. § 8371. The key issue was whether § 8371 fell within ERISA's saving clause, ERISA § 514(b)(2)(A), *29 U.S.C.S. § 1144*(b)(2)(A). Existing precedent held that the statute did not fall within the saving clause; however, recent United States Supreme Court decisions had modified the analysis for determining whether a statute fell within the saving clause. Based on that newer case law, the court concluded that the statute did fall within the saving clause and, thus, ERISA did not preempt the insured's bad faith claim. First, a common sense view of ERISA's saving clause established that 42 Pa. Cons. Stat. § 8371 regulated insurance. Second, § 8371 met two of the three McCarran-Ferguson factors. The statute did not appear to spread the policyholder's risk. Section 8371, however, played an integral role in the policy relationship between the insured and the insurer;

authorized imposition of special damages, so it gave the insured a remedy not originally bargained for. Section 8371 also was limited to entities within the insurance industry.

**OUTCOME:** The court granted, in part, and denied, in part, the motion to dismiss. The court dismissed those claims the insured conceded were preempted, but the court declined to dismiss the insured's bad faith claim against the insurer.

## CORE CONCEPTS

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
The saving clause of the Employee Retirement Income Security Act (ERISA) exempts from preemption any law of any state which regulates insurance. ERISA § 514(b)(2)(A), *29 U.S.C.S. § 1144*(b)(2)(A). The United States Supreme Court has applied the following two prong approach in determining whether a statute "regulates insurance." First, the Court considers whether from a "common-sense view of the matter," the state statute in question regulates insurance. Second, the Court considers the following three factors in determining whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act, 59 Stat. 33, as amended, *15 U.S.C.S. § 1011* et seq.,: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; (3) whether the practice is limited to entities within the insurance industry.

Page 2

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
A state statute need not meet each of the McCarran-Ferguson factors in order to qualify for the Employee Retirement Income Security Act's saving clause. Rather, the McCarran-Ferguson factors are "considerations to be weighed" in determining whether a state law regulates insurance.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
A common-sense view of 29 U.S.C.S. § 1144(b)(2)(A), the saving clause of the Employee Retirement Income Security Act, clearly establishes that Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, "regulates insurance" and is specific to the insurance industry.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, limits its application to actions arising under an insurance policy.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
The Pennsylvania Supreme Court has recognized a distinction between those remedies available at common law and those available through Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, with regard to bad faith claims.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
Regarding the McCarran-Ferguson Test for whether a statute falls within the Employee Retirement Income Security Act's savings clause, a statute plays an integral part in the policy relationship between the insurer and the insured where it affords the parties rights or remedies other than those originally bargained for, in effect creating a new mandatory contract term.

*Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties*
42 Pa. Cons. Stat. § 8371 provides particular remedies for incidents of bad faith and was designed exclusively for use in the insurance industry. Specifically, it allows the court to award a particular amount of interest, assess attorney's fees and award punitive damages where breaches of insurance contracts are concerned.

**COUNSEL:**
[*1]  For JOEL ROSENBAUM, M.D., PLAINTIFF: STEWERT L. COHEN, KESSLER, COHEN & ROTH, PHILADELPHIA, PA USA. WILLIAM D. MARVIN,

KESSLER COHEN & ROTH, PHILADELPHIA, PA USA.

**JUDGES:**
Clarence C. Newcomer, S.J.

**OPINIONBY:**
Clarence C. Newcomer

**OPINION:**

NEWCOMER, S.J.

July 29, 2002

Presently before the Court is Defendant's Motion to Dismiss and Plaintiff's Answer. For the reasons outlined below, this Court will grant Defendant's motion, in part.

**BACKGROUND**

Plaintiff brought suit after being denied long-term disability insurance benefits under the Defendant's employee benefit plan, which is governed by the Employee Retirement Income Security Act (ERISA). Defendant moves to dismiss Plaintiff's state law claims by arguing ERISA preemption. With the exception of Count X, a bad faith claim brought under 42 Pa.C.S. § 8371 (Pennsylvania's bad faith statute for insurance claims), the parties agree that Plaintiff's state law claims under the employee benefit plan are preempted.

**DISCUSSION**

In his Answer to Defendant's Motion to Dismiss, Plaintiff concedes that, with the exception of his bad faith claim (Count X), his state law claims (Counts I, III, V, VII, IX) are preempted by ERISA. I, therefore, dismiss these claims [*2] without further discussion and turn to the key issue before this Court, that is, whether Pennsylvania's bad faith statute for insurance claims, 42 Pa.C.S. § 8371, is preempted by ERISA. While this issue has not been addressed by the Third Circuit, this Court has, in the past, consistently answered this question in the affirmative. In fact, no court has yet found to the contrary. However, a new trend in federal law, led by the United States Supreme Court's decision in *Unum Life Insurance Co. of America v. Ward, 526 U.S. 358, 143 L. Ed. 2d 462, 119 S. Ct. 1380 (1999)*, and its recent decision in *Rush Prudential HMO, Inc. v. Moran, 153 L. Ed. 2d 375, 122 S. Ct. 2151 (2002)*, warrants a re-examination of this important question.

At the heart of this issue is ERISA's saving clause, which exempts from preemption "any law of any State which regulates insurance." ERISA § 514(b)(2)(A), *29 U.S.C. § 1144(b)(2)(A)*. The Supreme Court has applied the following two prong approach in determining whether a statute "regulates insurance." First, the Court

Case 1:01-cv-00797-YK    Document 53    Filed 11/15/2002    Page 27 of 30

Page 3

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

considers whether from a "common-sense view of the matter," the state statute in question [*3] regulates insurance. *UNUM, 526 U.S. at 367.* Second, the Court considers the following three factors in determining whether "the regulation fits within the 'business of insurance' as that phrase is used in the McCarran-Ferguson Act," 59 Stat. 33, as amended, *15 U.S.C. § 1011* et seq.:

(1) Whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) Whether the practice is an integral part of the policy relationship between the insurer and the insured;

(3) Whether the practice is limited to entities within the insurance industry.

*UNUM, 526 U.S. at 367.* UNUM marked a significant change in the application of the Common-sense/McCarran-Ferguson Test. For the first time, the Court explained that a state statute need not meet each of the McCarran-Ferguson factors in order to qualify for ERISA's saving clause. n1 *Id. at 373* ("We reject UNUM's assertion that a state regulation must satisfy all three McCarran-Ferguson factors in order to 'regulate insurance.'") Rather, the UNUM Court found that the McCarran-Ferguson factors are "'considerations to be weighed' in determining [*4] whether a state law regulates insurance." Id. This decision clarified the Court's previous rulings (i.e., *Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985))*, which have been solely interpreted to require compliance with each of the McCarran-Ferguson factors. *UNUM, 526 U.S. at 373.* Most recently, in Rush, the Supreme Court reaffirmed UNUM's holding by finding an Illinois State statute qualified under ERISA's saving clause by meeting two of the McCarran-Ferguson factors. *Rush, 122 S. Ct. at 2163.* We turn now to an application of the Common-sense/McCarran-Ferguson Test with regard to § 8371.

n1 Despite the guidance offered by UNUM and Rush, it is not clear

whether a statute must satisfy more than one of the McCarran-Ferguson factors in order to be covered by ERISA's savings clause. Further, the Third Circuit has not ruled on this issue.

[*5]

**I. Common-sense View**

A common-sense view of ERISA's saving clause clearly establishes that Pennsylvania's bad faith statute "regulates insurance" and is specific to the insurance industry. In fact, one need look no further than the statute's title, "Actions on insurance policies," in discerning its scope. Furthermore, the statute limits its application to "actions arising under an insurance policy...." Finally, the Pennsylvania Supreme Court has recognized a distinction between those remedies available at common law and those available through the instant statute with regard to bad faith claims. *The Birth Center v. St. Paul Companies, Inc., 787 A.2d 376, 403 2001 Pa. LEXIS 2759 (Pa. 2001).* The Court's holding in Birth Center emphasizes the particular focus of this statute concerning the insurance industry. Thus, it is clear that the legislative intent behind § 8371 was to "regulate insurance."

**II. McCarran-Ferguson Test**

*A. Spreading Policyholder's Risk*

Because it serves solely as a special damages section, it is doubtful that the provisions of § 8371 spread a policyholder's risk. Since the McCarran-Ferguson factors are mere guideposts [*6] and need not be unanimously met, we shall move on to a consideration of the second factor. *Rush, 122 S. Ct. at 2163.*

*2. Integral Part of the Policy Relationship*

This Court is mindful of its previous finding that § 8371 did not play an integral part in the policy relationship between the insurer and the insured. *Zimnoch v. ITT Hartford, et al., 2000 U.S. Dist. LEXIS 2846,* Civ.A. No. 99-6594 at *18 (E.D.Pa. March 14, 2000) (Newcomer, J.). However, in light of the Supreme Court's recent holding in Rush and this Court's subsequent re-examination of UNUM, this Court concludes that its previous finding is no longer suitable.

In UNUM, the Supreme Court found that a California statute requiring an insurer to "prove prejudice before enforcing a timeliness-of-claim provision" created a mandatory contract term between the two parties. *UNUM, 526 U.S. at 375.* In Rush, the Court examined an Illinois statute requiring HMOs to provide independent review of disputes with primary care physicians, and to cover any costs deemed medically necessary by the independent reviewer. The Court found that the statute provided a "legal [*7] right to the insured" and an "obvious" contractual requirement which was "an integral part of the policy relationship." *Rush, 122 S. Ct. at 2164.* These cases suggest that a statute plays an integral part in the policy where it affords the parties

Case 1:01-cv-00797-YK    Document 53    Filed 11/15/2002    Page 28 of 30

Page 4

2002 U.S. Dist. LEXIS 14155, *; 28 E.B.C. 2022

rights or remedies other than those originally bargained for, in effect creating a new mandatory contract term.

Just as the statutory provisions in UNUM and Rush afford the parties rights or remedies other than those originally bargained for, § 8371 creates mandatory contract terms providing for special damages. Here, the insured gain the right to pursue the following remedies: punitive damages, attorney fees and a specified amount of interest. Therefore, the Court finds that the statute clearly plays an integral role in the policy relationship.

Although other Supreme Court cases, such as Pilot Life, address preemption of bad faith claim law, this Court cautions the reader not to confuse the case at hand with cases like Pilot Life. In Pilot Life the Supreme Court found that the Mississippi law of bad faith did not satisfy the second factor of the McCarran-Ferguson Test. *Pilot Life, 481 U.S. at 51.* [*8] However, Pilot Life dealt with common law claims of bad faith unspecific to the insurance industry, while the bad faith claim before this Court is derived from a statute specific to the insurance industry. Id. Consequently, the Pilot Life Court found the bad faith law's connection to the policy relationship to be "attenuated at best" based on the fact that it was "developed from general principles of tort and contract law available in any Mississippi breach of contract case." Id. In addition, "the common law of bad faith does not define the terms of the relationship ... it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." Id. In contrast, § 8371 provides particular remedies for incidents of bad faith and was designed exclusively for use in the insurance industry. Specifically, it allows the court to award a particular amount of interest, assess attorney's fees and award punitive damages where breaches of insurance contracts are concerned.

*C. Limited to Entities within the Insurance Industry*

The third factor, which requires [*9] the statute to be limited to entities within the insurance industry, is satisfied for many of the same reasons that the statute satisfies the requirements of the common-sense test. *Rush, 122 S. Ct. at 2164.*

**CONCLUSION**

In conclusion, this Court finds that the Common-sense View Test is easily satisfied by § 8371. Furthermore, factors two and three of the McCarran-Ferguson Test are also satisfied. Therefore, this Court holds that § 8371 is not preempted by ERISA as it falls under ERISA's saving clause.

AN APPROPRIATE ORDER WILL FOLLOW.

**ORDER**

AND NOW, this 29th day of July, 2002, upon consideration of Defendant's Motion to Dismiss (Document 2) and Plaintiff's Answer, it is hereby ORDERED that said motion is GRANTED, in part, and DENIED, in part. Specifically, Counts II, IV, VI and VII are DISMISSED.

AND SO IT IS ORDERED.

Clarence C. Newcomer, S.J.

```
                                                              1066NP

********** Print Completed **********

Time of Request:    November 13, 2002  02:43 PM EST

Print Number:      1821:0:71280047
Number of Lines:   249
Number of Pages:
```

```
Send To:  JARECKI, JAMES
          RHOADS & SINON LLP
          1 S MARKET SQ FL 12
          HARRISBURG, PENNSYLVANIA 17101-2132
```

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2002, a true and correct copy of the foregoing "Plaintiff's Brief in Support of Motion for Leave to File Second Amended Complaint" was served by United States Mail, upon the following:

William C. Foster, Esquire
Kelly, McLaughlin & Foster, LLP
1617 J.F.K. Boulevard, Suite 1690
Philadelphia, PA 19103

**Lynne Ritter**

449999.1