ORIG

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG M. HOWARD | : |
| | : |
| **Plaintiff,** | : |
| | :     **Case No. 1:CV-01-0797** |
| **v.** | :     **(Judge Yvette Kane)** |
| | : |
| LIBERTY LIFE ASSURANCE | : |
| COMPANY OF BOSTON, | : |
| LIBERTY MUTUAL GROUP | : |
| | : |
| **Defendant.** | : |
| | : |

## ANSWER TO MOTION FOR LEAVE TO
## FILE AN AMENDED COMPLAINT

The Answer of Defendant Liberty Life Assurance Company of Boston,

(referred to herein as "Liberty Life") respectfully represents as follows:

1.     Denied.  This action was instituted on or about April 5, 2001 in the

Court of Common Pleas of Dauphin County, Pennsylvania.  A copy of that

Complaint is attached hereto and marked Exhibit "A."

2.    Admitted.  The action was timely removed in that it took place within thirty (30) days from the date of service of the Plaintiff's Complaint.

3.    Admitted in part.  Denied in part.  It is admitted that, on July 11, 2001, Plaintiff filed an Amended Complaint in this Court.  A copy of that Complaint is attached hereto and marked Exhibit "B."  The remaining allegations of paragraph 3 are denied.  There was no dismissal without prejudice of Plaintiff's claims for breach of contract and for bad faith.  To the contrary, the Amended Complaint requested that the Defendant be required to pay Long-Term Disability Benefits allegedly due to Plaintiff.  It made no reference to bad faith or to Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. §8371.

4.    Answering Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to the reasons why Plaintiff chose not to proceed on the theories which had previously been set forth by him.

5.    It is admitted that, on July 22, 2002, a bench trial was conducted by the Court.

6.    Admitted.

7.    Admitted that Plaintiff seeks Leave to file and Amended Complaint and admitted that a copy of Plaintiff's Proposed Amended Complaint is attached to his Motion as Exhibit "B."  It is denied that the Rosenbaum or any other decisions serve

as a basis for the Plaintiff's Motion for Leave to Amend his Complaint.

8.    The allegations of Paragraph 8 are conclusions of law to which no responsive pleading is required.  The <u>Rosenbaum</u> Opinion speaks for itself.

9.    The allegations of Paragraph 15 are conclusions of law which are denied.  Rule 15 of the Federal Rules of Civil Procedure states, <u>inter</u> <u>alia</u>, that Leave to Amend shall be freely given when justice so requires.  It is denied that an Amendment of this Complaint under Rule 15 should be permitted for the reasons set forth in Liberty Life's Brief in Opposition to Plaintiff's Motion for Leave to Amend Complaint.  Liberty Life's Brief is being filed with this Answer.  That Brief is incorporated herein by reference, as fully as though it were here set forth at length.

10.    Denied that an Amendment of this Complaint under Rule 15 should be permitted for the reasons set forth in Liberty Life's Brief in Opposition to Plaintiff's Motion for Leave to Amend Complaint.  Liberty Life's Brief is being filed with this Answer.  That Brief is incorporated herein by reference, as fully as though it were here set forth at length.

WHEREFORE, Liberty Life Assurance Company of Boston respectfully requests that this Honorable Court enter the Order which is attached hereto, denying Plaintiff's Motion for Leave to file an Amended Complaint.

**KELLY, MCLAUGHLIN, FOSTER,
BRACAGLIA, DALY, TRABUCCO &
WHITE, LLP**

By: _____
        William C. Foster, Esquire
        Attorneys for Defendants
        Employers Insurance of Wausau, Inc.
        formerly known as Employers Insurance of
        Wausau, a Mutual Company and Wausau
        Business Insurance Company

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CRAIG M. HOWARD**     :
    :
     **Plaintiff,**     :
    :     **Case No. 1:CV-01-0797**
     **v.**     :     **(Judge Yvette Kane)**
    :
**LIBERTY LIFE ASSURANCE**     :
**COMPANY OF BOSTON,**     :
**LIBERTY MUTUAL GROUP**     :
    :
     **Defendant.**     :
    :

FILED
HARRISBURG, PA

DEC 0 2 2002

MARY E. D'A_____ CLERK
Per _____

## BRIEF IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendant, Liberty Life Assurance Company of Boston (referred to herein as "Liberty Life") submits this Brief in Opposition to the Plaintiff's Brief in Support of his Motion for Leave to File Second Amended Complaint.

## I.  COUNTER STATEMENT OF PROCEDURAL HISTORY

On or about April 5, 2001, Plaintiff Craig M. Howard  filed a Complaint against Liberty Life and Liberty Mutual Group[1] in the Court of Common Pleas of Dauphin County, Pennsylvania.  On April 11, 2001, the Complaint was served and, on May 7, 2001, Liberty Life removed the action to the United States District Court for the

---

[1] Liberty Mutual Group was also named as a Defendant in the original Complaint, "Liberty Mutual Group" is not an entity which is subject to suit but is a named used by a group of

Middle District of Pennsylvania.

The action filed by Plaintiff in Dauphin County included two Counts. Count I asserted a breach of contract and Count II alleged a claim for bad faith pursuant to 42 Pa C.S.A. § 8371. A copy of the Complaint filed by Plaintiff is attached hereto and marked Exhibit "A."

Following the removal of the action to this Court, Plaintiff filed an Amended Complaint. A copy of that Complaint is attached hereto and marked Exhibit "B." This Amended Complaint deleted all references to claims for bad faith. It was limited to a claim that there had been a breach of obligations under the Employee Retirement Security Income Act of 1974 (ERISA). Liberty Life filed an Answer to this Amended Complaint. A copy of that Answer is attached hereto, made a part hereof and marked Exhibit "C."

Discovery in the case proceeded and the matter was called for trial on July 22, 2002 before the Honorable Yvette Kane. On November 5, 2002, the Court filed its Memorandum and Decision and Judgment Order regarding this case. A copy of the Court's Memorandum and Decision and Judgment Order is attached hereto and marked Exhibits "D and E." respectfully.

On November 4, 2002, Plaintiff filed the within Motion for Leave to file an

companies.

Amended Complaint. Plaintiff's Brief in Support of that Motion was filed with the

Court on November 15, 2002. This Brief is filed in Opposition to that Brief.

## II.    COUNTER STATEMENT OF THE FACTS:

Many of the facts which are pertinent to this Motion are set forth in the Court's

Memorandum and Decision on November 5, 2002. As stated by the Court in that

document:

1.    Plaintiff started working for Hershey Medical Center in
      May, 1985. Claim Form, Def. Tr. Br. Exh. 1 ("claim file")
      at 247.

3.    Through his employment with Hershey Medical Center,
      Plaintiff enrolled in a group long term disability insurance
      plan sponsored by Geisinger Health Systems, effective
      August 1, 1998. Defendant funds and administers the
      plan. Def. Tr. Bri. Exh. 2 ("Plan").

4.    Plaintiff submitted a disability claim form on May 5, 2000.
      Claim file at 242-247. (Exhibit "D", p.1)

Contrary to the assertions of Plaintiff, Mr. Howard never became entitled to

benefits under the aforementioned disability insurance plan and Plaintiff has not been

totally and continuously disabled from his occupation or any other occupation since

January 2, 2002. To the contrary, the Court found that it was not unreasonable for

Liberty Life to conclude that Plaintiff did not qualify for disability benefits under the

plan. The Court determined that it would not disturb Liberty Life's interpretation or

4

application of its long-term disability plan because it is reasonable and supported by substantial evidence. (Exhibit "D," Pages 17, 18)

Plaintiff's allegations that Defendant, Liberty Life, in denying Plaintiff's claim, ignored extensive medical findings, opted to rely upon incomplete findings of its own doctors and failed to arrange for an Independent Medical Examination, ignored letters from Plaintiff's own employer and denied coverage before receiving the results of Plaintiff's Physical Capacity Evaluation from a Physical Therapist are denied. All claims of Plaintiff which were critical of the handling of this claim and which were made at the trial of this action were considered by the Trial Court and found to have no merit. The Court stated, inter alia, as follows in its Opinion.

> "Here, there is no evidence that Defendant's procedures were not followed or that they did anything but conduct a good faith, reasonable investigation. The assertions made by Plaintiff in its proposed findings of fact regarding supposed procedural irregularities based on its examination of the claims procedure manual are simply wrong. For example, Plaintiff asks this Court to find that "Defendant did not follow up with Plaintiff's treating physicians as to their conclusions of total disability." Pl Proposed Findings of Fact 1 (c ). The evidence in the claim file of repeated telephone calls and letters to Dr. Powers shows exactly the opposite. Plaintiff asserts that "[t]he employer's statement required [in claims manual at 25-26 of Claims Investigation section] was not obtained." Pl Proposed Findings of Fact 1 (e). The record shows that this form was in fact obtained.

5

Claim file at 241. Plaintiff argues that Defendant was required by its internal procedures to conduct an Independent Medical Examination ("IME") of Plaintiff and failed to comply with procedures by not conducting the IME. Pl. Proposed Findings of Facts 1(h) and 8; Pl. Tr. Br. at 9. A closer reading of the claim manual reveals that an IME is not required, but that claims analysts may use an IME as a tool "to assist them in evaluating disability claims." Claims manual, Pl. Tr. Exh. 1, Claims Investigations at 50. The manual goes on to give examples of when an IME would be helpful and the procedures to follow when conducting an IME. Id. at 51-55. Nowhere is there a requirement that one be conducted, as Plaintiff asserts; in fact, the manual specifies that "[b]efore recommending an IME, all other ways of obtaining the necessary medical information need to be explored." Id. at 52. There are many other examples where Plaintiff's proffered "procedural anomalies" are simply mis-readings of the claims manual and claim file.

The only arguable irregularity in the claim procedure was the time it took Defendant to process the appeal, which should ordinarily be done in under 60 days, and in special circumstances, no more than 120 days. Summary Plan Description, Plan at 56. Thus, Defendant did not comply with its procedures in processing the appeal when it took 202 days, 82 days beyond the maximum allowed. Id. There is also no indication in the record that Plaintiff was notified of the reasons for the time extension beyond the regular 60 days, as required by the Plan. Id. However, the delay was almost entirely attributable to Defendant's diligence in attempting to contact Plaintiff's treating physician and giving him time to respond to the FCE results, re-scheduling the FCE due to a misunderstanding with Plaintiff, and waiting for Plaintiff to provide the results of a non-existent FCE report that was supposedly conducted by the SSA. Defendant kept Plaintiff, and later Plaintiff's

6

counsel, appraised of this situation.  Therefore, Plaintiff had the notice required by the Plan.  (Exhibit  "D," Pages 12-14)

It is admitted that Liberty Life paid benefits from the plan, in cases where plan participants were entitled to benefits, and that it determined benefit eligibility.  It is denied that these facts resulted in an arbitrary and capricious denial of benefits allegedly due to Plaintiff under the plan.  It is averred, to the contrary, that, following the trial of the case, at which both parties had a full and fair opportunity to present all of their evidence in support of their claims, the Court determined that it was not unreasonable for Liberty Life to conclude that Mr. Howard did not qualify for disability benefits under the plan.  (Exhibit "D," Page. 17)  Accordingly, the Court entered Judgment in favor of the Defendant, Liberty Life and against Plaintiff, Craig M. Howard.

It is denied that there was any improper conduct by Liberty Life and it is denied that  Liberty Life breached any obligation owed to Plaintiff.  It is furthermore denied that 42 Pa. C.S.A. §8371 has any application to the facts of this case.

## III.   COUNTER STATEMENT OF QUESTIONS INVOLVED:

A.    Whether Plaintiff should be permitted to Amend his Complaint, when his Motion to Amend would be futile, where the Motion would be highly prejudicial

to the Defendant and where the Motion has been filed more than three months after the trial of an action has been concluded.

Suggested Answer:      No.

## IV.   THERE IS NO BASIS TO ALLOW THIS PROPOSED AMENDMENT AND THE PLAINTIFF'S MOTION MUST BE DENIED:

### 1.   STANDARD OF REVIEW:

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings.  The Plaintiff appears to moving under Rule 15 (a) which provides, inter alia, as follows:

**Amendments...** (a) a party may amend the party's pleading only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires... The Federal Rules of Civil Procedure and the decisions construing them evince a philosophy that when a party has a valid claim, he should recover it regardless of his counsel's failure to proceed the true basis of his claim at the pleadings stage, provided that permitting this relief does not work to the prejudice of the opposing party.  Seybold v. Dean (W.D. Pa.) 628 F. Supp 912, 914.  (emphasis supplied)

A Motion for Leave to Amend may be denied where it will result in undue prejudice to the other party, is unduly delayed, is not offered in good faith, or where

the Proposed Amendment is legally insufficient and would therefore be futile. J. Moore's Federal Practice §15.15, 15.16 (Matthew Bender 3d ED.)

A District Court cannot allow an amended pleading where a final Judgment has been rendered unless that Judgment is set aside or vacated pursuant to FRCP 59 or 60. <u>Mirpuri v. Act MFG., Inc.</u>, 212 F.3d 624, 628 (1st Cir. 2000), citing <u>Maldonado v. Dominguez</u>, 137 F.3d 1, 11 (1st Cir. 1998)  Though the within Motion to Amend was filed on November 4, 2002 and the Court's Judgment, Memorandum and Decision were filed on November 5, 2002, Plaintiff has continued to request leave to amend following the entry of final Judgment.

### 2.    <u>The proposed Amendment would be futile</u>

The Plaintiff asserts that he is relying upon the decision of the Court in the case of <u>Rosenbaum v. Unum Life Insurance Company of America</u>, 28 Employee Benefits Case. 2022, 2002 W.L. 1769899, 2002 U.S. Dist. LEXIS 14155 (E.D. Pa. 2002)  A copy of this Opinion is attached hereto and marked Exhibit "F."  That decision, however, does not establish any basis for the Plaintiff to recover under Pennsylvania's Bad Faith Statute.

Initially, the <u>Rosenbaum</u> case is a departure from prior decisions of Judges of the United States District Court for the Eastern District of Pennsylvania. The Court stated in that case stated that its decision is based upon a new trend in Federal Law,

9

led by the United States' Supreme Court's decision in UNUM Life Insurance Company of America v. Ward, 525 U.S. 358, 119 S. Ct. 13 (e) (1999) and Rush Prudential HMO, Inc. v. Moran,          U.S.          , 122 S. Ct. 2151 (2002) The Court stated in his Opinion that, at the heart of the issue is ERISA saving clause which exempts from preemption, any law of any state which regulates insurance. Id at *1. It said that the Supreme Court has applied the following two pronged approach in determining whether a Statute "regulates insurance":

First, the Court considers whether from a "common-sense view of the matter," the State Statute in question regulates insurance.

Second, the Court considers the following three factors in determining whether the "regulation" fits within the "form of business of insurance" as that phrase is used in the McCarran-Ferguson Act, 59 STAT. 33, as amended, 15 U.S.C. §1011 et. seq. Those factors are as follows:

    1.    Whether the practice has the effect of transferring or spreading a policyholder's risk;

    2.    Whether the practice is an integral part of the policy relationship between the insurer and the insured.

    3.    Whether the practice is limited to entities within the insurance industry.

The Court stated that the significance of UNUM is that, for the first time, the Supreme Court explained that a state statute need not meet each of the McCarran-

10

Ferguson factors in order to qualify for ERISA's saving clause.

The Court found that, from a common-sense view, the legislative intent behind 42 Pa. C.S.A. §8371 was to "regulate insurance."  In then applied the McCarran-Ferguson test and determined that 42 Pa. C.S.A. §8371 satisfied the second and third prongs of that test.  It found that the statute did play an integral part in the policy relationship between the insurer and the insured in that §8371 created mandatory contract terms providing for special damages in giving the insured the right to pursue claims for punitive damages, attorneys fees and a specified amount of interest.  The Court noted that the case was distinguishable from the decision of the Supreme Court in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549 (1987), where the Supreme Court found that Mississippi Law relating to bad faith was preempted by ERISA.  It said that Pilot Life dealt with common law claims of bad faith unspecific to the insurance industry.  It stated that, to the contrary, the bad faith claim presently before the Court was derived from a Statute specific to the insurance industry.  It noted that 42 Pa. C.S.A., §8371 provided particular remedies for incidents of bad faith and was designed exclusively for use in the insurance industry.

Finally, the Court found that the Statute was limited to entities within the insurance industry.  The Court therefore concluded that the claim for bad faith pursuant to 42 Pa. C.S.A. §8371 satisfied the common-sense view and two of the

11

McCarran-Ferguson Tests and that it was therefore a Statute which "regulates insurance" and was not preempted by ERISA as it fell under ERISA's saving clause.

Subsequent decisions in the United States District Court for the Eastern District of Pennsylvania have not agreed with the Rosenbaum analysis. In Sprecher v. Aetna US Health Care, Inc., 28 Employee Benefits C.A.S. 2321, 2002 W.L. 1917711 (E.D. Pa.) The Court considered the same issue in its Opinion and applied the same analysis which had been applied in Rosenbaum. The Court in that case agreed that Pennsylvania Bad Faith Statute appeared to satisfy the common-sense view of a state law that regulates insurance. The Plaintiff in Sprecher argued that the Bad Faith Statute did satisfy the first McCarran-Ferguson factor ("the risk spreading" factor) because it transferred the risk that the policyholder's claim will be improperly handled from the policyholder to the insured. The Court stated that this argument missed the mark because this is not the type of risk for which the parties initially contracted. It said that the availability of punitive damages and interest penalties to a policyholder whose insurer has improperly processed a claim for benefits does not allocate risk typical of medical insurance and that ERISA already accounts for the risk that a claim will be improperly handled through its exclusive remedial scheme without necessitating resort to state laws allowing alternative remedies. (Id at *4) The Court therefore reached the same conclusion as the Rosenbaum Court that 42 Pa.

C.S.A. §8371 did not satisfy the first McCarran-Ferguson factor.

In reviewing the second McCarran-Ferguson factor, however, the Court's findings were significantly different from the findings of the Court in <u>Rosenbaum</u>. The <u>Sprecher</u> Court stated that the requirement that the state statute in question serve as "an integral part of the policy relationship between the insurer and the insured" requires that the state statute in some manner control the terms of the insurance relationship by changing the bargain between the insurer and the insured. (Id at *4) It said that, in <u>UNUM Life Insurance</u>, <u>supra</u>. the United States Supreme Court had held that California's notice-prejudice rule met this factor because it effectively created a mandatory contract term and thus dictated the terms of the relationship between the insurer and the insured. In that case, the subject insurance policy contained a provision that required the insured to furnish proofs of claim within a specified time limit. All untimely claims would be strictly denied by the insurer. California's notice-prejudice rule, however, superceded this policy provision by providing that an insurer could not avoid liability in cases where a claim was not filed in a timely manner absent proof that the insurer was actually prejudiced because of the delay. The <u>Sprecher</u> Court found that the State Statute effectively barred enforcement of the policy's time limitations on submitting claims and that the California Rule served as an integral part of the policy relationship by forcing a

13

mandatory contract term upon the parties that had not otherwise been agreed upon. (Id at *5)

The Court in <u>Sprecher</u> found that the principle of <u>Rush Prudential</u>, <u>supra</u>., was similar in that the state law in dispute in that case required HMOs to provide a mechanism for review by an independent physician when the patient's primary care physician and HMO disagreed about the medical necessity of a treatment proposed by the primary care physician. It said that the Supreme Court found that this review process affected the "policy relationship" between HMO's and covered persons because it provided a legal right to the insured, enforceable against the HMO to obtain an authoritative determination of the HMO's medical obligations, a legal right which was not enforceable under the terms of the insurance contract above. It said that Pennsylvania's Bad Faith Statute, on the other hand, did not alter the terms of the contract between the insurer and the insured and that the deterrent effect of the statute does not change the bargain between the insurer and the insured that the insurer will act in good faith. The Court therefore found that the Pennsylvania Bad Faith Statute did not serve as an "integral part of the policy relationship between the insurer and the insured" and that it did not satisfy the second McCarran-Ferguson factor. (Id. at *6)

14

In _Sprecher_, the Court also mentioned a second and alternative theory regarding preemption. It stated that Congress intended ERISA to be the exclusive remedy for rights guaranteed under ERISA. It stated that ERISA had provided an enforcement scheme which authorized an action to recover benefits, obtain a Declaratory Judgment regarding entitlement to benefits and to enjoin an improper refusal to pay benefits. It said that ERISA's civil enforcement provision also authorizes suits to seek removal of a fiduciary as well as claims for attorneys fees. It said that, in contrast, punitive damages and interest penalties are not provided for in ERISA and it said that thus, Pennsylvania's Bad Faith Statute, authorizing punitive damages and interest penalties, would significantly expand the potential scope of ultimate liability imposed upon employers by the ERISA scheme. In short, the Court stated, the relief ultimately available would not be what ERISA authorizes in a suit for benefits. It found that, therefore, because Pennsylvania's Bad Faith Statute provides a form of ultimate relief in a judicial forum that adds to the judicial remedies provided by ERISA, it is incompatible with ERISA's exclusive enforcement scheme and falls within _Pilot Life's_ categorical preemption.

In the case of Kirkhuff v. Lincoln Technical Institute, Inc., 221 F.Supp 2nd 572, 2002 WL 31015204 (E.D. Pa.) The Court stated that it found the reasoning in

15

Sprecher persuasive that the Bad Faith Statute does not constitute an integral part of the relationship between the insurer and the insured and that it therefore did not satisfy the first McCarran-Ferguson criterion. It also agreed with both Sprecher and Rosenbaum that the statute is limited by its express terms to an action arising under an insurance policy and thus to entities within the insurance industry and therefore satisfied the third criterion. It went on to state, however, that, nonetheless, even if the statute would otherwise fit within the saving clause, preemptions still wins the day if the "state law permits claimants to obtain remedies that Congress rejected in ERISA." (Id at *2) The Court found that 42 Pa. C.S.A. §8371 supplied a remedy not authorized by Congress under ERISA and is preempted. (Id. at *3). (Accord: Bell v. UNUM PROVIDENT CORPORATION, 222 F. Supp. 2d 692 (2002)

The Opinion of the Court in Kirkhuff was written with regard to Motions to Amend Complaints to add claims for punitive damages under Pennsylvania's Bad Faith Statute. The Court found that the assertion that claims under 42 Pa. C.S.A. §8371 in these ERISA's actions would be futile and it therefore denied the Plaintiff's Motions to Amend their Complaints. (Id. at *4).

The same disposition should be made of the Motion to Amend in this case. This Motion would be futile and it should be denied for the reasons set forth by the Court in the Sprecher and Kirkhuff cases.

16

The bad faith claim sought to be raised here may also be futile based upon the Court's findings of facts in this case regarding the handling of this claim. As stated by the Court in its Opinion, there is no evidence that Defendant's procedures were not followed or that they did anything but conduct a good faith-reasonable investigation. (Exhibit "D," Page 12) No evidence was or could have been presented to establish a claim that Liberty Life acted without a reasonable basis or that it recklessly disregarded the lack of reasonable basis. To the contrary, its handling of the case was reasonable and proper and did not in any way violate Pennsylvania Bad Faith standards, if those standards were to be held to apply to this case. No Post-Trial Motions questioning these findings have been filed.

**B.    The Proposed Amendment would be highly prejudicial to the Defendant**

Though this case has already proceeded to Judgment, Plaintiff now seeks to add an additional theory of recovery under the Bad Faith statute. Such a theory would change the Plaintiff's entire case and could require the retrial of the case. Plaintiff has failed to present to the Court any authority which would justify the extroadinary relief requested by him. He relies upon the cases of <u>Seybold v. Dean, Inc.</u>, 628 F. Supp 912 (W.L. Pa. 1986) and <u>Vanguard Savings and Loan Ass'n et al. v. Barton M. Banks</u>, (E.D. Pa. 1995), U.S. Dist. LEXIS 8799 at *6 (E.D. Pa. 1995).

17

Neither of these cases, however, supports the relief which Plaintiff seeks here.

Vanguard involved an application to Amend the Complaint prior to trial. The Court found no prejudice to the Defendant in that the same allegations were required to be proven at the trial both before and after the amendment. Seybold was a case where the Plaintiff sought only to add a claim for counsel fees following the conclusion of a trial. The Court found that, though the claim was based upon a separate statute, the standards of proof would have been the same and that allowing the amendment would not have altered the Defendant's defense.

In the present case, the amendment sought in this action would be unduly prejudicial to the Defendant. Trials of Bad Faith cases are different from ERISA trials in that a jury trial is required of punitive damage issues, whereas ERISA cases are tried Non-Jury. Furthermore, many aspects of the claims are different.

Pennsylvania's Bad Faith Statute 42 Pa.C.S.A.§8371, which became effective on July 1, 1990, provides as follows:

In an action arising under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take all of the following actions:

1.    Award interest on the amount of the claim from the date the claim was
      made by the insured in an amount equal to the prime rate of interest plus

18

3%;

2.      Award punitive damages against the insurer;

3.      Assess court costs and attorneys' fees against the insurer.

Though the statute used the term "Bad Faith", it did not define this term.  It

was defined in the case of <u>Terletsky v. Prudential Property & Cas. Ins. Co.</u>, 437 Pa.

Super. 108, 112, 649 A.2d 680, 688 (1994), <u>app. den.</u>, 540 Pa. 641, 659 A.2d 560

(1995), where the Court stated as follows:

> In the insurance context, the term Bad Faith has acquired a
> particular meaning:
> <u>Insurance</u>. Bad Faith on part of insurer is any frivolous or
> unfounded refusal to pay proceeds of a policy; it is not
> necessary that such refusal be fraudulent.  For purposes of
> an action against an insurer for failure to pay a claim, such
> conduct imports a dishonest purpose and means a breach
> of a known duty (i.e., good faith and fair dealing), through
> some motive of self-interest or ill  will; mere negligence or
> bad judgment is not Bad Faith.
> Blacks' Law Dictionary 139 (6th Ed. 1990)(citations omitted).

The Court applied a two-part test, that (1) the insurer lacked a reasonable basis

for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of

reasonable basis.  <u>Id.</u>, 437 Pa. Super. at 125; 649 A.2d at 688.  See also <u>Adamski v.

Allstate Ins. Co.</u>, 738 A.2d 1033, 1036 (1999).

In <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230 (3rd Cir. 1997), the

court adopted the definition of Bad Faith set forth in <u>Terletsky</u> but predicted that the

Pennsylvania Supreme Court would not adopt that part of the <u>Terletsky</u> opinion

19

which was based upon the Black's Law Dictionary Definition.

To establish a bad faith claim, Plaintiff must prove, by clear and convincing evidence, that representatives of the defendant acted without a reasonable basis or with reckless disregard for their lack of a reasonable basis.

The present case is in sharp contrast to those cases. Here, the entire character of the case would have changed if a bad faith claim were permitted to be presented. The requested amendment would be extremely prejudicial to the Defendant and would be disruptive of the orderly administration of justice.

### C.    The Plaintiff's Proposed Amendment is not timely

Plaintiff seeks to rely upon a theory of recovery which was initially asserted but was subsequently withdrawn prior to trial. In his initial Complaint, Plaintiff asserted a theory of bad faith under Pennsylvania's "Bad Faith" Statute 42 Pa C.S.A. §8371. Following the removal of this action to Federal Court, however, this Plaintiff's Complaint was amended to assert claims of breach of obligations under ERISA. Discovery and other trial preparation took place based upon that theory. Plaintiff has offered no authority for the proposition which would allow him to reject a theory of recovery, proceed to trial on another theory of recovery, then seek to reassert one of his original theories of recovery three months after the trial of the case has been concluded and final Judgment has been entered..

20

## III.   **CONCLUSION**

WHEREFORE, Liberty Life Assurance Company of Boston respectfully requests that the Court enter the Order which is attached hereto, denying the Plaintiff's Motion for Leave to Amend his Complaint.

Respectfully submitted,

**KELLY, MCLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: _____
William C. Foster, Esquire
Attorneys for Defendants
Employers Insurance of Wausau, Inc.
formerly known as Employers Insurance of
Wausau, a Mutual Company and Wausau
Business Insurance Company

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CRAIG M. HOWARD**  :
                                      :
   **Plaintiff,**  :
                                        :    **Case No.  1:CV-01-0797**
   **v.**  :    **(Judge Yvette Kane)**
                                        :
**LIBERTY LIFE ASSURANCE**  :
**COMPANY OF BOSTON,**  :
**LIBERTY MUTUAL GROUP**  :
                                        :
   **Defendant.**  :
                                        :

## CERTIFICATE OF SERVICE

I, William C. Foster, Esquire, hereby certify that a true and correct copy of Defendant's Answer to Motion for Leave to file an Amended Complaint together with its Brief in Opposition to that Motion was served this 2nd day of December 2002, via U.S. Regular Mail, postage pre-paid, upon the following individual:

Robert J. Tribeck, Esquire
James J. Jarecki, Esquire
RHOADS & SINON LLP
One South Market Square, 12th Floor
P.O. Box 1146
Harrisburg, PA  17108-1146

**KELLY, McLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By:_____
        WILLIAM C. FOSTER, ESQUIRE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG M. HOWARD** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.  1:CV-01-0797** |
| **v.** | : | **(Judge Yvette Kane)** |
| | : | |
| **LIBERTY LIFE ASSURANCE** | : | |
| **COMPANY OF BOSTON,** | : | |
| **LIBERTY MUTUAL GROUP** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)

I certify that Defendants Liberty Life Assurance Company of Boston's Brief in support of their Answer to Plaintiff's Motion for Leave to Amend Complaint Judgment complies with the word count requirement contained in Local Rule 7.8(b)(2).  The aforementioned brief, according to the word count feature contained in the word processing system, contains 4766 words.

**KELLY, MCLAUGHLIN, FOSTER,
BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: _____

William C. Foster, Esquire
Attorneys for Defendants